Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for Baltimore Harlem Park Investment, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 21-249-ELG |
| | ) | (Chapter 11) |
| BALTIMORE HARLEM PARK | ) | |
| INVESTMENT, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION TO STAY *ZTY INVESTMENT LLC, et al. v. XIN TAO, et al.***

Comes now Baltimore Harlem Park Investment, LLC (the "Debtor" or "BHPI"), by and through undersigned counsel, pursuant to Sections 362 and 105 of Title 11 of the United States Code, and moves this Honorable Court to stay the matter of *ZTY Investment LLC, et al. v. Xin Tao, et al.*, Case No. 482027-V (Cir. Ct. Mont. Co. Md. 2020) (the "State Court Litigation"), and in support thereof states as follows:

## I. Introduction

This bankruptcy follows years of litigious infighting between and amongst the various members and creditors of BHPI. A nearly month-long jury trial in Baltimore City, Maryland did not finally resolve the intricate disputes marring the Debtor's existence, nor did myriad demands and negotiations, nor did an initial lawsuit in Montgomery County, Maryland, nor has the now-pending State Court Litigation. The members and creditors of BHPI seemingly all feel wronged by some combination of one or more other members/creditors, the various holding companies

carrying interests in BHPI are all controlled by natural persons who have yet to find a way to move beyond claims of tortious conduct and contractual breaches, and the majority of BHPI's temporal existence has been highlighted by trips to various courthouses and missives from various attorneys.

Yet, after years of fighting, a final resolution appears to be temptingly near. The numbers discussed in confidential negotiations between counsel are no longer so far apart as to be comically non-correlative, and there exists a genuine sense that with a little help from a subchapter V trustee, a global resolution may be reachable. Such a deal would save BHPI from the perils of insolvency, would quell the infighting amongst its members and creditors, and would allow for a productive reorganization.

In order for that resolution to be reached, however, the State Court Litigation needs to be stayed. Two reasons chiefly guide this reality: First, the State Court Litigation cannot actually proceed without the Debtor, since the causes of action between and amongst the parties thereto will all turn upon adjudication of a declaratory judgment claim seeking to establish if certain monies tendered to the Debtor were in the nature of a loan or an equity investment. And, second, even if the State Court Litigation could proceed, doing so would serve to diminish the resources of the third parties who will likely be willing to partially fund a plan of reorganization herein, while also dampening judicial inefficiency by compelling parties to litigate related issues in multiple courts.

The relief sought in this motion has been agreed to by the plaintiffs in the State Court Litigation. Bankruptcy is meant to provide a cooling off period and a forum in which disputes can be amicably resolved; all implicated parties appear to favor both of these objectives and the Debtor looks forward to cooperatively working toward these objectives in this Honorable Court.

## II. Standard

As noted by the United States District Court for the District of Columbia, "The authority of the bankruptcy court to enjoin a suit against a non-debtor co-defendant or extend the automatic stay to the non-debtor co-defendant where 'unusual circumstances' exist is well-established." *Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens*, 245 B.R. 180, 182 (D.D.C. 2000).

In considering a non-debtor stay, guiding precedent instructs attention is to be paid to the degree, *vel non*, to which the interests of the debtor are "inextricably intertwined" with those of others. *See*, *e.g.*, *Lukas*, 245 B.R. at 183 n.2 ("Some jurisdictions have held that in unusual circumstances, particularly where a third party's interests 'are so inextricably intertwined with those of the debtor that the latter may be said to be the real party in interest,' a bankruptcy court may use its statutory powers under § 362 to stay proceedings against a non-bankrupt co-defendant. In addition, courts have repeatedly held that 11 U.S.C. § 105, which provides that a bankruptcy court 'may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [ ] title [11],' enables the bankruptcy court 'to enjoin parties other than the bankrupt' from commencing or continuing litigation.") (quoting *A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (citing *Johns–Manville Corp.*, 26 B.R. 405, 410 (S.D.N.Y. 1983)); citing *A.H. Robins, Inc.*, 788 F.2d at 1002–03 (citing *In re Otero Mills, Inc.*, 25 B.R. 1018, 1020 (D. N.M. 1982); *Carabetta Enterprises v. City of Asbury Park*, 162 B.R. 399 (D. Conn. 1993) (citing *Chase Manhattan Bank v. Third Eighty–Ninth Assocs.*, 138 B.R. 144, 147 (S.D.N.Y.1992))). *See also, In re Midway Airlines Corp*., 283 B.R. 846, 852 (E.D.N.C. 2002) ("The bankruptcy court properly concluded that the interests of the Individuals are so intimately intertwined with those of the Debtor that the Debtor is the real party in interest with respect to the action taken against the Individuals").

## III. Background Facts

The Debtor was formed in 2014 "[t]o engage in real estate investment and management." *See* Articles of Organization, attached hereto as Exhibit A. This purpose was intimately tied to the contemplated acquisition of Ruby Jude City, LLC ("RJC"), an entity that, in turn, is the holder of a defaulted promissory note secured by scores of real estate assets in Baltimore, Maryland. *See* Operating Agreement, attached hereto as Exhibit B, at pp. 4-5.

The idea was simple: gather funding from various investors to acquire, indirectly, a defaulted debt instrument, foreclose on the secured assets, and then use title to those assets to revitalize a tragically-blemished corner of one of America's most historic cities. BHPI sought to both find profit in its strategic acquisitions and to help gentrify blighted quarters sitting in the shadow of Francis Scott Key's fabled perch.

Idealism was soon supplanted by infighting, however. One of the members of BHPI – Insight Investments LLC – together with its two respective equity holders, who are husband-and-wife, brought suit against both BHPI and various related parties for, *inter alia*, securities fraud (the "First State Court Lawsuit"). *See Mao, et al. v. Baltimore Harlem Park Investment, et al.*, Case No. 24C17002188 (Cir. Ct. Balt. Cty. Md. 2017). That litigation simmered for more than a year, before a four week jury trial ran through September and October 2019. *Id*.

The First State Court Lawsuit ended with judgment being entered against BHPI as well as one of its members, Pinehills Properties LLC ("Pinehills"), and the two principals of Pinehills. *Id.* That judgment was soon satisfied. *Id.*

Another member of BHPI, ZTY Investments LLC ("ZTY"), and its principal, Haiyi "Nina" Huang ("Ms. Huang"), soon followed course and brought their own suit against BHPI, Pinehills, the principals of Pinehills, and entities ZTY contends to be related. *See ZTY Investment LLC, et al.*

*v. Tao, et al.*, Case No. 466701V (Cir. Ct. Mont. Co. Md. 2019) (the "Second State Court Litigation"). That suit sought declaratory relief against BHPI and also pursued claims against alleged insiders of BHPI for various claimed tort wrongs including, *inter alia,* fraud.

The Second State Court Litigation ended with a stipulated dismissal, but such was not for long. With no resolution of the underlying issues between Ms. Huang, ZTY, BHPI, and others being at hand, a third lawsuit followed – which is the State Court Litigation giving rise to this motion.

In short, ZTY and Ms. Huang seek a declaration as to whether monies they contributed to BHPI were in the nature of one or more loans, or in the nature of equity investments. *See* State Court Complaint, attached hereto as Exhibit C. Based on whether the obligation is in the nature of debt or equity, ZTY and Ms. Huang also seek relief from Pinehills, Xin Tao ("Ms. Tao"), William Weiss ("Mr. Weiss"), and two separate entities both known as Premiere Realty LLC ("Premiere") for, *inter alia*, fraud, negligence and conspiracy.

The State Court Litigation is, in reality, a dispute between ZTY and Ms. Huang on one side, and the Debtor, Pinehills, Ms. Tao, Mr. Weiss, and Premiere on the other side. The manner in which the monies given to the Debtor, by ZTY and Ms. Huang, is construed will, in turn, dictate the manner in which other obligations are assessed and judged. If the monies are loans, an obligation will be readily-discernable; if the monies are equity investments, there may be no obligation whatsoever (or, if fiduciary obligations were breached, an even greater obligation may be extant).

## IV. Argument: A Stay is Appropriate

Quite plainly, the State Court Litigation cannot proceed without the Debtor, and very real prospects of successful reorganization herein will be compromised if the State Court Litigation

were to proceed. Without a ruling as to whether the monies given to the Debtor by Ms. Huang and ZTY are loans or equity investments, the State Court Litigation is at a procedural quagmire through which standards of care cannot be properly assessed or measured. Equally, however, if the State Court Litigation consumes the allocated resources of ZTY, Ms. Huang, Mr. Weiss, Ms. Tao, Pinehills, and Premiere, the monies that could be used to help fund this bankruptcy – including a plan of reorganization herein – will be lost.

The first reality guides handily the "unusual circumstances" test promulgated by the *Lukas* Court and its supporting authorities. It is literally impossible to assess the claims against the Debtor's co-defendants without assessing the declaratory claim against the Debtor, since the declaration will directly inform the standards by which tort claims are assessed, the instructions tendered to a jury, and the arguments of counsel. If ZTY and Ms. Huang are mere promissory note creditors of the Debtor, the relationship between them and the Debtor is simple one of debtor/creditor, and the relationship between them and the Debtor's insiders is more legally attenuated. By contrast, if they invested monies in exchange for equity, they will be able to argue the existence of certain potentially-fiduciary relationships, and be able to argue for a greater swath of obligations to be imposed.

It will be for this Honorable Court to determine the relationship between the Debtor, Ms. Huang and ZTY. Section 362 of Title 11 of the United States Code already precludes the state court from making this assessment, and the claims procedures of this venue will prove both more economical and better suited to handle this core issue. If an adversary proceeding needs to be brought, it can be handled in a streamlined an unburdened fashion; if a proof of claim is filed and no objection is made thereto, the same may well prove dispositive until itself. But, either way, this issue is now soundly entrusted to the mechanisms and discretion of this Honorable Court.

Secondly, and more pragmatically, there is an enormous issue with claims being intertwined in this case. Ms. Tao, Mr. Weiss, Pinehills, and Premiere are being sued by Ms. Huang and ZTY because of their respective alleged relationships with the Debtor. If Pinehills – a member of the Debtor – is found liable, it will have an indemnification claim against the Debtor. If anyone else is found liable, it will be because of actions they took on behalf of – or for the benefit of – the Debtor. This web simply cannot be untangled in multiple courts in any manner that even vaguely abides by prevailing norms of judicial efficiency.

That reality also impacts how a plan in this case will potentially be funded. The Debtor is without liquid assets; its retainer has been paid by a third-party entity under the control of Ms. Tao and Mr. Weiss. Yet Ms. Tai, Mr. Weiss, Pinehills, and/or Premiere may be well motivated to help fund this case – including a plan herein – if the same provides for a release of the claims being pursued in the State Court Litigation. And the willingness of all impacted parties to pursue strategic negotiations helmed by a subchapter V trustee suggests such a plan model may well prove viable. But those funds available to make such a plan viable will be lost if the State Court Litigation proceeds, and the expectations of Ms. Huang and ZTY will no doubt only increase if they are compelled to continue funding their case before the state court.

This case is, thusly, cloaked in the "unusual circumstances" contemplated by the *Lukas* Court, and the State Court Litigation is mired in the sort of intertwined claims equally contemplated by myriad courts. It is accordingly appropriate to stay the State Court Litigation while reorganization is pursued *sub judice*.

## V. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) order the provisions of Section 362 of Title 11 of the United States Code to extend to the whole of the State Court

Litigation; (ii) alternatively, enjoin further pursuit of the State Court Litigation pending closure of this bankruptcy case; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: October 7, 2021 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of October, 2021, a copy of the foregoing was served electronically upon filing via the ECF system, with copies also being sent via US Mail, postage prepaid, to all parties on the attached matrix.

/s/ Maurice B. VerStandig
Maurice B. VerStandig