TT 11
Admitted

Pinehills
EXHIBIT NO. 5
6-22-18

OPERATING AGREEMENT

OF

BALTIMORE HARLEM PARK INVESTMENT LLC
A MARYLAND LIMITED LIABILITY COMPANY

Effective Date: 9th, December, 2014

**BALTIMORE HARLEM PARK INVESTMENT LLC**
**OPERATING AGREEMENT**

THIS BALTIMORE HARLEM PARK INVESTMENT LLC OPERATING AGREEMENT (this "Agreement") is made and entered into effective as of the 9th day of December, 2014, by and among the Members listed on Exhibit A hereto.

RECITALS:

A. BALTIMORE HARLEM PARK INVESTMENT LLC (the "LLC") was formed by the filing of Articles of Organization with the Secretary of State of Maryland on April 21, 2014.

B. The Members desire to set forth the terms and conditions on which the management, business, and financial affairs of the LLC shall be conducted as set forth below.

C. The Members have agreed that this Agreement shall serve as an "operating agreement" within the meaning of the Act (as defined below).

NOW, THEREFORE, it is mutually agreed as follows:

1. Definitions.

(a) General Interpretive Principles. For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires, (i) the terms defined in this Section have the meanings assigned to them in this Section and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other genders; and (ii) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles.

(b) Defined Terms. As used in this Agreement, the following terms shall have the following respective meanings:

Act: The Maryland Limited Liability Company Act, as it may be amended from time to time, and any successor to the Maryland Act, as amended and in force from time to time.

Additional Capital Contribution: Any property (including cash) from time to time contributed by a Member to the LLC above such Member's Initial Capital Contribution.

Additional Funding: The making of Additional Capital Contributions in excess of those agreed to initially by the Members.

Adjusted Basis: The basis for determining gain or loss for federal income tax purposes from the sale or other disposition of property, as defined in Section 1011 of the Code.

Affiliate: When used with reference to any Person, any Person that, directly or indirectly, through one or more intermediaries controls, is controlled by, or is under common control with, the specified Person (the term "control" for this purpose, shall mean the ability, whether by the ownership of shares or other equity interest, by contract or otherwise, to elect a majority of the directors of a corporation, independently to select the managing partner of a partnership, or otherwise to have the power independently to remove and then select a majority of those Persons exercising governing authority over an entity, and control shall be conclusively presumed in the case of the direct or indirect ownership of 50% or more of the equity interests).

Agreement: This Operating Agreement in its present form or as amended, modified, supplemented or restated from time to time in the future.

Articles of Organization: The Articles of Organization filed with the Maryland Secretary of State on April 21, 2014 as amended from time to time, pursuant to Section 2(a).

Bankruptcy Law: Title 11, U.S. Code, or any similar federal or state law for the relief of debtors.

Capital Account: The capital account of a Member maintained in accordance with Section 3(f).

Capital Contribution: Any property (including cash) from time to time contributed by a Member to the LLC.

Capital Transaction: A transaction in which the LLC (i) borrows money, (ii) sells, exchanges or otherwise disposes of any substantial part of its property, including a sale or other disposition pursuant to a condemnation, or (iii) receives the proceeds of property damage insurance, or (iv) any other transaction that, in accordance with generally accepted accounting principles, is considered capital in nature.

Code: The Internal Revenue Code of 1986, as amended.

Contributions Account: An account established with respect to each Member, which account shall equal the difference between (i) the sum of (a) the Member's original Capital Contribution plus (b) any Additional Capital Contributions made by such Member pursuant to Section 3(c) of this Agreement and (ii) any amount distributed to a Member pursuant to Section 7(c) as a result of a Capital Transaction.

Custodian: A receiver, trustee, assignee, liquidator or similar official under any Bankruptcy Law.

Fiscal Year: The period beginning on the date of this Agreement and ending on December 31 of the same calendar year, and each 12-month period (or such portion thereof during which the LLC is in existence) thereafter.

LLC: The limited liability company governed by this Agreement and any successor LLC which continues the business of this limited liability company and is a reformation or reconstitution of the LLC governed by this Agreement.

Major Decisions: The sale, leasing or development of the Property, the placement of a loan secured by a deed of trust or any other form of security on the Property or Additional Funding (as described in Section 3(c) below).

Managers: Haiyi Huang and Xin Tao, and any successors chosen pursuant to Section 5.

Members: Those Persons identified as such on Exhibit A and any additional or successor Member admitted pursuant to this Agreement.

Membership Interest: With respect to a Member, the Member's entire membership interest in the LLC, including the Member's (i) right to a distributive share of the Profit and Loss of the LLC and (ii) right to receive distributions of Net Cash Flow and Capital Proceeds. Each Member's Membership Interest is shown on Exhibit A.

Net Cash Flow: For any specified period, an amount equal to the sum of (i) all cash revenues received by the LLC during the period as a result of the operation of the LLC's business, and (ii) amounts set aside out of operations (as distinguished from a Capital Transaction) by the Managers as reserves during earlier periods where and to the extent the Managers determine during the period that such reserves are no longer reasonably necessary in the efficient conduct of the LLC's business, reduced by (x) all costs and expenses of operating the LLC's business and managing the LLC during the period (including, without limitation, payment of debt service in connection with any financing which the LLC undertakes and payment of principal and interest on any loan by any Members pursuant to Section 3(c) below), and (y) such reserves for maintenance, repairs, replacements, capital improvements, contingent or unforeseen liabilities or obligations and to meet anticipated expenses as are reasonably necessary in the efficient conduct of the LLC's business.

Person: An individual, estate, trust, corporation, association, governmental entity, unincorporated association, partnership or joint venture.

Property: One hundred percent (100%) of the membership interests of Ruby Jude City, LLC, and its assets, which include, but are not limited to the assets listed in the Purchase and Sale Agreement between Ruby Jude City, LLC and Baltimore Harlem Park Investment, LLC, dated April 23, 2014, as purchased by and assigned to the LLC, as well as any other real or personal property, tangible or intangible, acquired by the LLC.

Transfer: A sale, assignment, transfer or other disposition (voluntarily or by operation of law) of, or the granting or creating of a lien, encumbrance or security interest in, a Membership Interest.

Unrealized Gain: The excess, if any, of the fair market value of any property of the LLC on the date of determination over the Adjusted Basis of the property on the same date.

Unrealized Loss: The excess, if any, of the Adjusted Basis of any property of the LLC on the date of determination over the fair market value of the property on the same date.

2. Formation, Purposes and Powers of the LLC.

(a) Formation of LLC. The LLC has been organized as a Maryland limited liability company by the filing of its Articles or Organization and the issuance of a certificate of organization for the LLC by the Secretary of State of Maryland.

(b) Name of LLC. The name of the LLC is "BALTIMORE HARLEM PARK INVESTMENT LLC" and such name shall be used at all times in connection with the conduct of the LLC's business.

(d) Principal Office and Place of Business. The principal office of the LLC shall be located at 9912 Willow Tree Terrace, Rockville, Maryland 20850. The Managers, in their discretion, may change the location of the principal office of the LLC from time to time. The Managers shall make any filing and take any other action required by applicable law in connection with the change and shall give notice to the Members of the new location of the principal office of the LLC promptly after the change becomes effective. The principal place of business shall be at the principal office.

(e) Registered Agent. The address of the registered office of the LLC in the State of Maryland is 9912 Willow Tree Terrace, Rockville, Maryland 20850 and the registered agent of the LLC is Haiyi Huang. The Managers, in their discretion, may select any Person permitted by applicable law to act as registered agent for the LLC in each jurisdiction in which it is necessary or appropriate for the LLC to have a registered agent, and may replace any such Person from time to time.

(f) Business. The purpose and business of the LLC shall be (i) to purchase, own, finance, manage, lease and sell all or any portion of the Property, (ii) to carry on all activities necessary, incidental or related to the foregoing, including borrowing money and securing such borrowing with the assets of the LLC, and (iii) to carry out such other purposes, activities and businesses as the Members shall, in their sole discretion, determine.

(g) Powers. The LLC shall have the power to do any and all acts and things necessary, appropriate, proper, advisable, incidental to, or convenient for, the furtherance and accomplishment of its purpose and business, including the following powers:

(1) To incur expenses and to enter into and carry out contracts and agreements of every kind necessary to accomplish the purposes of the LLC;

(2) To raise and provide such funds as may be necessary to further the business and purposes of the LLC and to borrow money and issue promissory notes and other evidences of indebtedness subject to the approval rights of the Members as set forth in Section 4(a);

(3) To employ or retain, on behalf of the LLC, such Persons as may be necessary or appropriate for the conduct of the business of the LLC, including permanent, temporary and part-time employees and agents, accountants, brokers, consultants, attorneys and experts;

(4) To collect, receive and deposit all sums due or to become due to the LLC;

(5) To pay any and all taxes, charges and assessments that may be levied, assessed or imposed upon any property of the LLC;

(6) To demand, sue for, collect, recover and receive all goods, claims, debts, moneys, interest and demands whatsoever now due or that may hereafter become due or belong to the LLC, including the right to institute any action, suit, or other legal proceedings for the recovery of any land, building, other property, or any part or parts thereof, to the possession of which the LLC may be entitled, and to make, execute and deliver receipts, releases and other discharges therefor under seal or otherwise;

(7) To make, execute, endorse, accept, collect and deliver any and all bills of exchange, checks, drafts and notes of the LLC;

(8) To defend, settle, adjust, compound, submit to arbitration and compromise all actions, suits, accounts, reckonings, claims and demands whatsoever that now are or hereafter shall be pending between the LLC and any Person (other than disputes between or among Members), at law or in equity, in such manner and in all respects as the Members, shall deem fit;

(9) To secure and maintain insurance against liability and property damage with respect to the activities of the LLC;

(10) To do and perform all such other things as may be in furtherance of the purposes and objectives of the LLC and necessary, appropriate or convenient to the conduct of its business.

(h) Term. The term of the LLC shall continue until such date on which the LLC is terminated in accordance with the provisions of Section 13.

(i) Limitations on Scope of Business. This Agreement shall not be deemed to, and does not, create a partnership or relationship between the Members with respect to any activity whatsoever other than activities within the limited scope and business purposes of this LLC. Except for the authority expressly granted to the Managers and Members in this Agreement, no Member shall have any authority to bind or act for the other Members or the LLC. Except as expressly permitted by this Agreement, no Member shall, directly or indirectly, (i) voluntarily withdraw from the LLC, (ii) dissolve, terminate or liquidate the LLC, or (iii) petition a court for the dissolution, termination or liquidation of the LLC.

3. Membership Interests and Capital Contributions.

(a) Identity of Members and Membership Interests.

(1) Members and Membership Interests. The Members and Membership Interests of the Members shall be set forth on Exhibit A attached hereto. The address of each Member is as set forth in Exhibit A. New members may only be admitted to the LLC upon the unanimous written consent of all current Members and the Managers, and upon the new members' written consent to abide by the terms of this Agreement, as it may be amended.

(2) Dealing with Successors. Unless named in this Agreement or unless admitted to the LLC as provided in this Agreement, no Person shall be considered a Member; and the LLC, each Member, and any other Persons having business with the LLC need deal only with the Members so named and/or so admitted, and they shall not be required to deal with any other Person by reason of an assignment by a Member or by reason of the death of a Member, except as otherwise provided in this Agreement. In the absence of substitution (as provided in this Agreement) of a Member for an assigning, deceased or dissolved Member, any payment to a Member or to his executors, administrators, successors or assigns shall acquit the LLC of all liabilities to any other Persons who may be interested in such payment by reason of an assignment by such Member or by reason of his/its death or dissolution.

(b) Initial Capital Contribution. Each of the Members is deemed to have contributed capital to the LLC in the amount specified on Exhibit A, which shall be credited to such Member's Capital Account.

(c) Additional Funding. The Members shall be responsible for supplying additional funds required by the LLC, on a pro rata basis between them based upon each Member's respective Membership Interest. The amount of and purposes for such additional funds shall be proposed by the Managers and approved by a majority in interest of the Members, but shall at a minimum be sufficient to satisfy the obligations of the LLC, which cannot be satisfied by any funds which the Managers may be able to borrow from third parties on behalf of the LLC. The approval of a majority in interest of the Members is not required for Additional Capital Contributions that are required due to a measurable external necessity ("Necessity") which Necessity would cause a quantifiable financial hardship on the LLC in the event Additional Capital Contributions were not made. The determination of a Necessity shall be in the reasonable discretion of the Managers. Examples of a Necessity are insufficient funds to make a mortgage loan payment, to pay a judgment against the LLC or to pay real estate taxes prior to a penalty being imposed.

(d) Failure to Provide Additional Funding. If any Member shall fail to make the Additional Capital Contributions so required (the "Non-Contributing Member") within thirty (30) days of approval by a majority in interest of the Members (or within thirty (30) days notice of a Necessity), then the remaining Members may make such required Additional Capital Contributions (the "Contributing Member(s)"). In the event the Contributing Member(s) make(s) such required Additional Capital Contributions, then such Contributing Member(s) may elect to pursue any one or more of the following remedies:

(1) Loan to the LLC such portion of the amount which any Non-Contributing Member failed to contribute as the Contributing Member(s) may determine. The Contributing Member(s) may elect to treat any loan pursuant to this Section 3(d) as a loan to the Non-

Contributing Member, in which event such loan shall bear interest at the rate of twenty percent (20%) per annum compounded annually and, notwithstanding anything to the contrary contained in this Agreement, all principal and accrued interest on such loans shall be repaid out of any distribution to which the Non-Contributing Member would otherwise be entitled, in the inverse order in which such loans were made, prior to any other distributions being made to the Non-Contributing Member.

(2) Pay the Non-Contributing Member's unpaid portion of the required Additional Capital Contributions to the LLC. The Non-Contributing Member's Membership Interest shall be reduced by 125% of: (A) the Non-Contributing Member's Membership Interest prior to such required Additional Capital Contribution minus (B) (i) the Non-Contributing Member's Contributions Account to date divided by (ii) the sum of all Members' Contributions Accounts to date including the required Additional Capital Contributions of all Members.

(e) Loans. The terms of any Loans shall be satisfactory to a majority in interest of the Members.

(f) Capital Accounts.

(1) The LLC shall establish and maintain a separate Capital Account for each Member in accordance with the provisions of Section 704(b) of the Code and the regulations promulgated thereunder.

(2) For purposes of computing the amount of any item of income, gain, deduction or loss to be reflected in the Members' Capital Accounts, the determination, recognition and classification of each such item shall be the same as its determination, recognition and classification for federal income tax purposes, subject to the following qualifications:

(A) Any deductions for depreciation, cost recovery, amortization or expense in lieu of depreciation attributable to contributed property shall be determined as if the Adjusted Basis of the contributed property on the date it was acquired by the LLC was equal to the carrying value of the contributed property on such date;

(B) Any income, gain or loss attributable to a taxable disposition of contributed property shall be determined as if the Adjusted Basis of the contributed property on the date of disposition was equal to the carrying value of such contributed property on such date, and any such income, gain or loss shall be allocated in accordance with the provisions of Section 7;

(C) If the LLC's Adjusted Basis in any depreciable property is reduced pursuant to Section 48(q) of the Code, or any similar provision, the amount of such reduction shall be treated as an expense for the Fiscal Year in which such reduction occurs and shall be allocated among the Members in the ratio in which depreciation with respect to such property is allocable. Any restoration of any such reduction in Adjusted Basis shall be allocated among the Members to whom the expense was chargeable; and

(D) Immediately before the distribution of any property of the LLC in liquidation of the LLC pursuant to Section 12, any Unrealized Gain or Unrealized Loss attributable to the distributed property shall, for purposes of this Agreement, be deemed to be gain or loss recognized by the LLC and shall be allocated among the Members in accordance with Section 7.

(g) Return of Capital Contributions. No Member shall have the right to demand the return of all or any part of such Member's Capital Account or Capital Contribution at any particular time, except upon termination of the LLC. In no event shall a Member be entitled to demand or receive property other than cash. None of the Members nor the Managers shall be personally liable for the return or repayment of all or any part of any Member's Capital Account or Capital Contribution, it being expressly agreed that any such return of capital pursuant to this Agreement shall be made solely from the assets of the LLC. .

(h) Guaranty. The Members shall jointly and severally guarantee (the "Guaranty") a loan taken on behalf of the LLC if required by the Lender. In the event the lender issuing a loan ("Lender") pursues any Member ("Pursued Member") and the Pursued Member is required to pay to the Lender any amount pursuant to the Guaranty, all other Members shall pay to the Pursued Member their pro-rata share of such amount in accordance with their Membership Interests.

4. Rights, Powers and Obligations of Managers.

(a) Management and Control of LLC Business. Subject to the terms of this Agreement, the Managers shall have the power and authority to act in connection with the management and control of the LLC and the conduct of the business and affairs of the LLC, except for Major Decisions. The vote and agreement of a majority in interest of the Members shall be required for the implementation of Major Decisions. Subject to the terms of this Section 4, the signatures of the Managers shall be sufficient to bind the LLC in all matters, including the implementation of Major Decisions.

The Members hereby authorize the Managers to take all action necessary to implement the LLC's plan to foreclose on the notes and deeds of trust owned by the LLC (via its ownership of noteholder, Ruby Jude City, LLC), and to protect the LLC's interests in the real property securing the notes ("Baltimore Harlem Park Properties"), and to acquire, sell, manage, lease, improve, and otherwise act in the LLC's best interests with regard to the Baltimore Harlem Park Properties.

(b) Election and Authority of the Managers. Except as otherwise provided in subsection (c), the Managers shall have full and exclusive power and authority to manage, control, supervise, administer and operate the business and affairs of the LLC, to exercise all powers conferred upon the LLC, and to do and perform all acts deemed by the Managers to be necessary, appropriate or convenient for the conduct of the LLC's business and the furtherance of its purposes. All acts of the Managers within the scope of his authority shall bind the LLC. The Managers need not be Members of the LLC.

(c) Compelling the Managers to Act. If Members owning a majority in interest of the Membership Interests in the LLC determine that the Managers shall take a specific action, then such action shall be taken by the Managers on behalf of the LLC, notwithstanding that the Managers disagree with such action.

(d) Managers' Compensation. Neither the Members nor the Managers or their Affiliates shall be compensated, as such, for their services as Members or Managers, except as specifically provided herein. The Managers shall be reimbursed by the LLC for out-of-pocket expenses paid or incurred by the Managers in the performance of its duties under this Agreement, including (without limitation) the costs and expenses incurred by the Managers in connection with the organization of the LLC.

(e) Dealing with Related Persons. The Managers, on behalf of the LLC, may employ a Member or an Affiliate of a Member to render or perform a service; may contract to buy property from, or sell property to, any such Member or Affiliate; or may otherwise deal with any such Member or Affiliate; provided that any such transaction shall be fully disclosed to all Members, and shall be on terms that are fair and equitable to the LLC.

(f) Outside Activities. The Managers shall devote such time and attention to the LLC business as may be necessary for the proper performance of their duties. The Managers and Members, and any Affiliates of the Managers and Members, may, however, engage in or hold interests in other business ventures of every kind and description, including the ownership and operation of other real property, for their own account, whether or not such business ventures are in direct or indirect competition with the business of the LLC and whether or not the LLC also has an interest therein. Except as otherwise mutually agreed, neither the LLC nor any of the Members shall have any rights by virtue of this Agreement in such other business ventures or to the income or profits derived therefrom.

(g) Liability of Members and Managers to Other Members. Neither the Members nor the Managers shall be liable to the LLC or to any Member for any loss suffered by the LLC which arises out of any action or inaction of the Members or Managers if they acted in good faith and in a manner they reasonably believed to be in, or not opposed to, the best interests of the LLC and such course of conduct did not constitute actual fraud, willful misconduct, gross negligence or a breach of fiduciary duty.

(h) Indemnification.

(1) The LLC shall indemnify, defend and hold harmless the Members and the Managers and any officer, director, employee, member or partner of the Members and Managers (hereinafter referred to collectively as the "Indemnified Parties") from and against all loss, damage, liability, cost and expense for which the Indemnified Parties have not otherwise been reimbursed (including reasonable attorneys' fees, judgments, fines and amounts paid in settlement of actual or threatened litigation, whether civil, criminal, administrative or investigative) arising out of, or by reason of, the acts or omissions of the Indemnified Parties as Members or Managers, or as officers, directors, employees, members or partners of the Members or Managers, on behalf of the LLC or in furtherance of the interests of the LLC, so long as the Indemnified Parties acted in good faith and in a manner the Indemnified Parties reasonably

believed to be in, or not opposed to, the best interests of the LLC and such conduct did not constitute actual fraud, willful misconduct, gross negligence or a breach of a fiduciary duty on the part of the Indemnified Parties. The termination of any action, suit or proceeding by judgment, order, settlement or upon a plea of nolo contendere or its equivalent shall not of itself (except insofar as such judgment, order, settlement or plea shall itself specifically provide) create a presumption that the Indemnified Parties acted fraudulently or in bad faith, were grossly negligent or acted with willful misconduct or in breach of a fiduciary duty.

(2) Expenses incurred by an Indemnified Party in defending any claim, demand, action, suit or proceeding subject to this subsection shall, from time to time, be advanced by the LLC prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the LLC of an undertaking by or on behalf of the Indemnified Party to repay such amount if it shall be finally determined by a court of competent jurisdiction that the Indemnified Party is not entitled to be indemnified as authorized in this subsection.

(3) Any indemnification under this subsection shall be satisfied solely out of and to the extent of the assets of the LLC. Neither the Managers nor the Members shall be subject to personal liability by reason of these indemnification provisions.

(4) An Indemnified Party shall not be denied indemnification, in whole or in part, under this subsection solely by reason of the fact that the Indemnified Party had an interest in the transaction with respect to which the indemnification applies, provided that the transaction was permitted by this Agreement and indemnification is otherwise permitted under paragraph (1).

(i) Tax Matters Member. Both Managers shall be the Tax Matters Member of the LLC as provided in Section 6231 of the Code and shall be authorized to represent the LLC (at the expense of the LLC) in connection with all examinations of the affairs of the LLC by any federal, state or local tax authorities, including any resulting administrative and judicial proceedings, and to expend funds of the LLC for professional services and costs associated therewith. The Tax Matters Member shall take all actions necessary to preserve the rights of the Members with respect to audits and shall provide all Members with notices of all proceedings and other information as required by law. The Tax Matters Member shall keep the Members timely informed of its activities under this subsection. The Tax Matters Member may prepare and file protests or other appropriate responses to such audits. The Tax Matters Member shall select counsel to represent the LLC in connection with any audit conducted by the Internal Revenue Service or by any state or local authority. All costs incurred in connection with the foregoing activities, including legal and accounting costs, shall be borne by the LLC. Any additional expenses with respect to judicial review of adverse determinations in connection with any such tax audits or the defense of any Member against any claim asserted by the Internal Revenue Service or state or local tax authority of additional tax liability arising out of the Member's ownership of its Membership Interest shall only be incurred by the Member(s) who have authorized the Tax Matters Member in writing, to proceed with such judicial review or defense. Each Member agrees to cooperate with the Tax Matters Member and to do or refrain from doing any or all things reasonably required by the Tax Matters Member in connection with the conduct of all such proceedings.

(j) Right to Rely on Authority of Managers. No Person dealing with the Managers shall be required to determine the Managers' authority to make any undertaking on behalf of the LLC, or to determine any fact or circumstance bearing upon the existence of its authority. Every contract, agreement, lease, promissory note, deed, mortgage or other instrument or document executed by the Managers shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that:

(1) At the time of the execution or delivery thereof, the LLC was in full force and effect;

(2) Such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the LLC and all of the Members; and

(3) The Managers were duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the LLC.

5. Election of Managers.

There shall at all times be two Managers of the LLC. The initial Managers shall be Haiyi Huang and Xin Tao. Each Manager shall serve as such until a Manager resigns or is replaced. The Managers need not be a Member of the LLC. The Managers may be replaced at any time, with or without cause, by the written consent of a majority in interest of the Members.

6. Management of Business by Members.

No Member in his capacity as a Member shall take part in the management or control of the LLC business except as provided in Section 4(c) above.

7. Cash Distributions.

(a) Computation of Net Cash Flow. All distributions of Net Cash Flow made within a Fiscal Year shall be subject to adjustment by reference to the LLC's financial report for such Fiscal Year. If any additional amount is to be distributed by reason of such financial report, such additional amount shall be deemed a distribution for such Fiscal Year; and if any excess amount was distributed during such Fiscal Year, as reflected by such financial report, the excess amount shall be taken into account in reducing subsequent distributions.

(b) Distribution of Net Cash Flow. So far as practicable, the Net Cash Flow for each Fiscal Year shall be distributed among the Members, subject to the provisions of Subsection 7(a) and at annual or more frequent intervals, in the discretion of the Managers, to all Members, pro rata in proportion to their respective Membership Interests.

(c) Distributions of Proceeds of Capital Transactions. The proceeds of any Capital Transaction available for distribution after payment of all loans, expenses, returns of Capital Contributions as provided in Subsection 3(g), and retention of such reserves as the Managers shall deem appropriate, shall be distributed to all Members, pro rata in proportion to their respective Membership Interests.

8. Allocation of Profits and Losses.

(a) Determination of Profits and Losses. For purposes of this Agreement, the Profit or Loss of the LLC for each Fiscal Year shall be the net income or net loss of the LLC for such Fiscal Year as determined for Federal income tax purposes, but computed (i) by excluding any item allocated to a Member pursuant to subsection (b); (ii) without regard to any adjustment to basis pursuant to Section 743 of the Code; (iii) by taking into account items of gain, loss and deduction attributable to any property of the LLC based upon the carrying value of the property; (iv) by including as an item of gross income any tax-exempt income received by the LLC; (v) by treating as a deductible expense any expenditure of the LLC described in Section 705(a)(2)(B) of the Code; (vi) by excluding any item of income, gain, loss or deduction which is required to be specially allocated to Contributing Members pursuant to Section 704(c) of the Code, the regulations promulgated thereunder and subsection (k); and (vii) after making the special allocations (if any) required hereunder.

(b) Allocation of Expenses Incurred by Members. Expenses incurred by a Member in connection with his activities as a Member and not reimbursed by the LLC shall, to the extent they are accounted for as LLC expenses, be allocated to the Member who incurred the expense.

(c) Allocation of Profits and Losses. The Profits and Losses of the LLC for each Fiscal Year (except upon the dissolution of the LLC) shall be allocated among, and credited (or debited) to the Capital Accounts of, the Members, pro rata, in proportion to their respective Membership Interests.

(d) Allocation on Dissolution. The net profits incurred in the winding up of the affairs of the LLC (including profits incurred in connection with the disposition of LLC assets in liquidation) shall be credited to the Members' Capital Accounts as follows: first, proportionately among the Members who have negative Capital Accounts until all negative Capital Accounts have been increased to zero, second, among the Members until the Members' respective Capital Accounts are in proportion to their Membership Interests, and third, among the Members in accordance with their respective Membership Interests. The net losses incurred in the winding up of the affairs of the LLC (including losses incurred in connection with the disposition of LLC assets in liquidation) shall be charged to the Members' Capital Accounts as follows: first, among the Members until the Members' respective Capital Accounts are reduced so as to be in proportion to their Membership Interests, second, proportionately among the Members who have positive Capital Accounts until all positive Capital Accounts have been decreased to zero, and third, among the Members in accordance with their respective Membership Interests. The Managers may determine whether and to whom properties should be distributed in kind rather than liquidated. The value of property distributed in kind shall be determined by a qualified independent appraiser selected by the Managers. Any property distributed in kind shall be treated as though the property was sold for its appraised value at the time of distribution and the cash proceeds were distributed. The difference between the appraised value of property distributed in kind and its book value shall be treated as a profit or a loss on sale of the property and shall be credited or charged to the Members' Capital Accounts in accordance with their interests in such profits or losses. Any Member with a deficit in its Capital Account after the distribution of liquidation proceeds shall be required to restore the amount of such deficit by contributing cash

in such amount to the LLC, which cash shall be distributed to the Members who have positive Capital Accounts.

(e) Income Tax Allocations. For purposes of Sections 702 and 704 of the Code, or the corresponding sections of any future Federal internal revenue law, or any similar tax law of any state or other jurisdiction, LLC profits, gains and losses for Federal income tax purposes, and each item of income, gain, loss or deduction entering into the computation thereof, shall be allocated among the Members in the same proportions as the corresponding "book" items are allocated pursuant to this Section, except as otherwise provided in subsection (h).

(f) Transfers during Fiscal Year. In the event of the transfer of all or any part of a Membership Interest (in accordance with the provisions of this Agreement) at any time other than the end of a Fiscal Year, the share of Profit or Loss (in respect of the Membership Interest so transferred) shall be allocated between the transferor and the transferee in the same ratio as the number of days in such Fiscal Year before and after such transfer. The provisions of this subsection shall not apply to extraordinary non-recurring items. Extraordinary non-recurring items of gain or loss shall be allocated on the basis of the Membership Interests on the date the gain is realized or the loss incurred, as the case may be. If during any Fiscal Year the interests of the Members in an item are adjusted, the shares of the item for such Fiscal Year shall be allocated among the Members in the same manner as provided in this subsection in the case of a transfer of a Membership Interest. All legal expenses of transfer or sale shall be paid by the transferring Member.

(g) Amortization and Allocation of Organization and Start-Up Expenses. The LLC shall elect to amortize over a period of 60 calendar months: (i) all organization expenses in accordance with the provisions of Section 709(b) of the Code; and (ii) all start-up expenses in accordance with the provisions of Section 195 of the Code.

(h) Special Allocations to Comply with Section 704 Regulations.

(1) General Rule. Notwithstanding the provisions of subsections (b), (c), (d) and (e), if the allocation of a Loss to a Member for any Fiscal Year pursuant to this Section would cause or increase a negative balance in the Member's Capital Account on the last day of the Fiscal Year which exceeds the sum of the Member's share of Minimum Gain on Non-recourse Liability as of the last day of the Fiscal Year, then the portion of the Loss that would have such effect shall instead be specially allocated among the Members who have positive balances in their Capital Accounts on the last day of the Fiscal Year and the Members who have negative balances in their Capital Accounts on the last day of the Fiscal Year which do not exceed the sum of their respective shares, on the last day of the Fiscal Year, of Minimum Gain on Non-recourse Liability. For purposes of this Section, a Member's share of Minimum Gain shall be determined pursuant to Treas. Reg. Sections 1.704-2(g)(1) and 1.704-2(i)(5) and a Member's share of excess non-recourse liabilities (as described in Treasury Reg. Section 1.752-3(a)(3)) shall be based upon the Member's Membership Interest.

(2) Minimum Gain Chargeback Non-recourse Liability. If there is a net decrease in the Minimum Gain on Non-recourse Liability during any Fiscal Year, the Members shall be allocated items of income and gain for the Fiscal Year, before any other allocation of

LLC items described in Section 704(b) of the Code is made for the Fiscal Year (and, if necessary, subsequent Fiscal Years), in the amounts and in the proportions required by Treasury Reg. Sections 1.7042(f) and 1.704-2(j)(2)(i), or any amendment or successor provision thereto. The allocations referred to in this paragraph shall be interpreted and applied to satisfy the requirements of, and be subject to the exception contained in, Treasury Reg. Section 1.7042(f), or any amendment or successor provision thereto.

9. Books of Account and Reports.

(a) Books and Records. The Managers shall keep, or cause to be kept, at the principal office of the LLC (or at such other office as the Managers may designate) true and correct books of account, in which shall be entered fully and accurately each and every transaction of the LLC. Each Member or his designated agent shall at all reasonable times have access thereto. The books shall be kept on the method of accounting selected by the Managers, in accordance with accepted federal income tax accounting principles, consistently applied, and for a fiscal period which is the calendar year. Any Member shall have the right to a private audit of the books and records of the LLC, provided such audit is made at the expense of the Member desiring it and is made at reasonable times after due notice. The Managers shall cause to be prepared and distributed to each Member (i) unaudited financial statements (including a balance sheet and income statement) of the LLC for the Fiscal Year then ended within 90 days after the close of each Fiscal Year, and (ii) information necessary to complete his or her federal income tax return within 90 days after the close of each Fiscal Year.

(b) Banking. All funds of the LLC shall be deposited in its name in a commercial bank or invested in a federally-insured savings and loan account or accounts, in U.S. Treasury obligations, in bank certificates of deposit, repurchase agreements, money market accounts or such other investments and accounts as the Managers in their discretion may determine. All withdrawals from any such account shall be made upon a check or order signed by the Managers, or by an agent or agents designated by the Managers from time to time; but the Managers may restrict the amounts that can be withdrawn by any such agent. All such withdrawn funds shall only be used for LLC purposes as provided in this Agreement and in accordance with the terms hereof.

10. Assignability of Membership Interests. A Member may not Transfer all or any part of the Member's Membership Interest (including the Member's right to receive a share of the profits and a return of the Member's Capital Account), without first giving to the other Members notice (the "Transfer Notice") and the right of first refusal to purchase the Membership Interests intended to be transferred. The Transfer Notice shall contain the percentage of Membership Interest to be transferred, the price to be paid, terms of payment and the identity of the proposed transferee. The terms set forth in the Transfer Notice shall be based upon a bona fide offer to purchase from a third party. The other Members shall have a period of thirty (30) days in which to respond and to elect to purchase on the same terms and conditions set forth in the Transfer Notice. If no Member responds within thirty (30) days after receipt of the Transfer Notice, the transferring Member may proceed with the intended transfer. If any Members respond in the affirmative, such Members shall purchase the interest proposed to be transferred on a pro rata basis among such Members electing to purchase. If other Members elect to purchase, the closing of the purchase and sale of the Membership Interests shall be held in accordance with the terms

set forth in the transferring Member's notice, but the closing date shall be no sooner than thirty (30) days after the election of the Members to so purchase. An assignee shall not become a Member unless (i) the assigning Member so provides in the instrument of assignment and (ii) the assignee agrees in writing to be bound by the provisions of this Agreement. If the assigning Member so provides in the instrument of assignment, the assignee shall have the right to become a Member at the time of delivery to the Managers of the assignee's written agreement to be bound by the provisions of this Agreement. Notwithstanding the foregoing, any Member may transfer any or all of his or her Membership Interest to a spouse, sibling or any linear descendants or a trust established for the benefit of a spouse, sibling or linear descendant without providing the other Members with a right of first refusal. This limited transferability is subject to the express condition that the transferee, as a condition to becoming a Member, agrees to be bound by the provisions of this Agreement and will execute this Agreement acknowledging acceptance of the terms and provisions of the agreement. All legal expenses of transfer or sale shall be paid by the transferring Member.

11. Death, Insanity, Incompetency, Liquidation, Dissolution, Termination or Bankruptcy of a Member. The death, adjudication of insanity or incompetency, liquidation, dissolution, termination or bankruptcy of a Member (a "Defunct Member") shall not terminate the LLC. In such event, the successor of the Defunct Member, the executors or administrators of the estate of the deceased Member, the committee or other legal representatives of the estate of the insane or incompetent Member or the successors in interest of the bankrupt Member, shall (i) have all the rights of the Defunct Member, including the same right (subject to the same limitations) as the Defunct Member would have had under the provisions of Section 10 to assign the Membership Interest (including the right to receive a share of profits and a return of the Capital Account) of the Defunct Member and to provide in the instrument of assignment that the assignee, if the Members consent in writing, may become a Member, and (ii) be subject to all obligations and restrictions of a Member, including the restrictions contained in Section 10.

12. Legal Title to LLC Property. Except as permitted by written agreements to which the LLC or all Members may be a party, legal title to all property now owned or in the future acquired by the LLC, whether real or personal, tangible or intangible, shall be taken and held in the name of the LLC as an entity.

13. Dissolution and Liquidation.

(a) Events Causing Dissolution. The LLC shall be dissolved upon the occurrence of any of the following events:

(1) An event of withdrawal (as defined in the Act) of a Member unless within ninety (90) days thereafter Members owning 50% of the Membership Interests elect to continue the LLC and its business. In the event such Members so elect, the LLC shall not be dissolved. In the event such Members do not so elect, the LLC shall be dissolved and subsection (b) shall apply.

(2) The sale or other disposition of all or substantially all LLC's property; except that if, in connection with a sale, the LLC receives a promissory note or notes evidencing

a part of the purchase price of such property, the LLC shall continue until such promissory note(s) is (are) satisfied, sold or otherwise disposed of.

(3) The determination in writing by all the Members that the LLC shall be dissolved.

(4) Any other event under the Act that would cause the dissolution of the LLC or that would make it unlawful for the business of the LLC to be continued.

(b) Winding Up. If the LLC is dissolved pursuant to subsection (a), then the Managers or, if there is no Manager, a Person selected by Members owning a majority in interest of the Membership Interests, shall be the Liquidating Trustee. The Liquidating Trustee shall proceed with dispatch and without any unnecessary delay to sell or otherwise liquidate all property of the LLC. Any act or event (including the passage of time) causing a dissolution of the LLC shall in no way affect the validity of, or shorten the term of, any lease, deed of trust, mortgage, contract or other obligation entered into by or on behalf of the LLC. The Liquidating Trustee, if other than a Member, shall be entitled to receive fair and reasonable compensation for its services as Liquidating Trustee. The Liquidating Trustee shall agree not to resign at any time without giving 60 days advance written notice. Except as expressly provided in this Section, the Liquidating Trustee appointed in the manner provided herein shall have and may exercise, without further authorization or consent of any of the parties hereto, all of the powers conferred upon the Managers under the terms of this Agreement (but subject to all of the applicable limitations, contractual and otherwise, upon the exercise of such powers) to the extent necessary or desirable in the good faith judgment of the Liquidating Trustee (including the establishment of reserves for liabilities that are contingent or uncertain in amount) for and during such period of time as shall be reasonably required in the good faith judgment of the Liquidating Trustee to complete the winding up and liquidation of the LLC as provided for herein. If no Person is selected to be the Liquidating Trustee as herein provided within 120 days following the event of dissolution, any Member may make application to a court of competent jurisdiction in the State of Maryland to wind up the affairs of the LLC and, if appropriate, to appoint a Liquidating Trustee.

(c) Application of Assets in Winding Up. In winding up the LLC, after paying or making provision for payment of all LLC liabilities, the remaining net proceeds and liquid assets shall be distributed among the Members in accordance with the provisions of Section 7(c).

(d) Termination. The LLC shall terminate when all of its property shall have been disposed of and converted into cash; and the net proceeds from the disposition and any other liquid assets of the LLC, after payment of or making due provision for all debts and liabilities of the LLC, shall have been distributed among the Members as provided herein. As soon as practicable after the termination of the LLC, a final statement of its assets and liabilities shall be prepared and furnished to the Members and the Certificate shall be terminated in the manner required by the Act.

14. Miscellaneous Provisions.

(a) Agency. Except as provided herein, this Agreement shall not be construed to constitute any Member as the agent of any other Member or to limit in any manner the Members in the carrying on of their respective businesses or activities.

(b) Notices. All notices provided for in this Agreement shall be in writing and delivered personally by private courier service or sent by certified or registered mail, return receipt requested, first class postage prepaid, to the Member at his address set forth on Exhibit A to this Agreement (or, in the case of a Person who becomes a Member after the date of this Agreement, at the address for notices furnished by such Person to the LLC at the time of his admission), unless notice of a change of address is given to the LLC and all Members pursuant to the provisions of this subsection. Time periods shall commence on the date of mailing of a notice sent by mail or on the date of receipt of a notice delivered by courier. Any notice sent by mail which is required to be given within a stated period of time shall be considered timely if postmarked before midnight of the last day of such period.

(c) Bankruptcy. The term "bankruptcy" and "bankrupt," and derivations thereof, shall be deemed to refer not only to an adjudication of bankruptcy under the Federal Bankruptcy Code, but also to an adjudication of insolvency under any state or local insolvency procedure.

(d) Integration. This Agreement sets forth all (and is intended by all parties hereto to be an integration of all) of the promises, agreements, conditions, understandings, warranties and representations among the parties hereto with respect to the LLC, the LLC business and the property of the LLC, and there are no promises, agreements, conditions, understanding, warranties, or representations, oral or written, express or implied, among them other than as set forth herein.

(e) No Third Party Beneficiaries. No provision in this Agreement, including any provision requiring Members to restore Capital Account deficits, shall affect the Members' insulation from personal liability for LLC debts that is provided for in the Act. No provision of this Agreement shall inure to the benefit of, or be enforceable by, any third party, including, without limitation, any creditor of the LLC or any creditor of a Member.

(f) Governing Law. It is the intention of the parties that all questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of Maryland.

(g) No Partition. Each Member hereby irrevocably waives any and all rights he or she may have to maintain an action for partition with respect to any property of the LLC.

(h) Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective spouses, heirs, executors, administrators, personal and legal representatives, successors and assigns.

(i) Dispute Resolution. All Members agree to enter into mediation and attend and participate, in good faith, in at least one full mediation session before filing suit in any court against any other Member, Manager, or the LLC, for any dispute arising out of this Agreement

or the LLC. If one party fails to attend and participate in such mediation, the party who attended and made a good faith effort to participate in mediation may file suit.

(Signatures on following page)

IN WITNESS WHEREOF, the undersigned parties have signed this Agreement as of the day and year first above written.

MEMBERS:

**PINEHILLS PROPERTIES LLC,** a Virginia limited liability company

By: [signature]
Name: Xin Zhao
Title: member

**ZTY INVESTMENT, LLC,** a Virginia limited liability company

By: [signature]
Name: Haiyi Huang
Title: Member

**SGL HOLDINGS, LLC,** a Maryland limited liability company

By: ______________________
Name: ______________________
Title: ______________________

**495 PROPERTIES, LLC,** a Virginia limited liability company

By: ______________________
Name: ______________________
Title: ______________________

**Insight Investment LLC,** a Virginia limited liability company

By: Dongyun Mao Ting Tang
Name: DONGYUN MAO Ting Tang
Title: Member member

# EXHIBIT A

| Members | Initial Capital Contribution | Membership Interest |
|---|---|---|
| **Insight Investment LLC**<br>306 Broadleaf Dr NE<br>Vienna, VA 22180 | $300,000.00 | 21% |
| **Pinehills Properties LLC,**<br>1960 Gallows Road, Suite 110<br>Vienna, Virginia 22182 | __________ | 37% |
| **ZTY Investment, LLC,**<br>1960 Gallows Road, Suite 220B<br>Vienna, Virginia 22182 | __________ | 37% |
| **SGL Holdings, LLC,**<br>2 Wisconsin Circle, #700<br>Chevy Chase, Maryland 20815 | __________ | 2.5% |
| **495 Properties, LLC,**<br>8800 Mirador Place<br>McLean, Virginia 22102 | __________ | 2.5% |
| Totals | $ __________ | 100% |