IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY
(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

**DIRECTIONS**

***Plaintiff***: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

***Defendant***: You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒PLAINTIFF ☐DEFENDANT CASE NUMBER ______ (Clerk to insert)

**CASE NAME:** ZTY Investment, LLC, et al (Plaintiff) vs. Xin Tao, et al. (Defendant)

PARTY'S NAME: ZTY Investment, llc PHONE: 202 237-6600

PARTY'S ADDRESS: 9912 Willow Tree Terrace, Rockville, MD 20850

PARTY'S E-MAIL: Larry@LKirschlaw.com

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Larry H. Kirsch, Esquire PHONE: 202 237-6600

PARTY'S ATTORNEY'S ADDRESS: 402 Long Trail Terrace, Rockville MD 20850

PARTY'S ATTORNEY'S E-MAIL: Larry @LKirschlaw.com

**JURY DEMAND?** ☒Yes ☐No

**RELATED CASE PENDING?** ☐Yes ☒No If yes, Case #(s), if known: ______

**ANTICIPATED LENGTH OF TRIAL?:** ______ hours 10 days

**PLEADING TYPE**

**New Case:** ☒Original ☐Administrative Appeal ☐Appeal

**Existing Case:** ☐Post-Judgment ☐Amendment

***If filing in an existing case***, skip Case Category/ Subcategory section - go to Relief section.

**IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)**

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☒ Fraud
☐ Lead Paint - DOB of Youngest Plt: ______
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
☐ Commercial
☐ Residential
☐ Currency or Vehicle
☐ Deed of Trust
☐ Land Installments
☐ Lien
☐ Mortgage
☐ Right of Redemption
☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Workers' Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Liability | ☐ Specific Performance |
| ☐ Arbitration | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Asset Determination | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Attachment b/f Judgment | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Cease & Desist Order | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Condemn Bldg | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Contempt | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☐ Court Costs/Fees | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Compensatory | ☒ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |
| ☒ Damages-Punitive | ☐ Judgment-Default | ☐ Reinstatement of Employment | |

*If you indicated **Liability** above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☐ Liability is not conceded, but is not seriously in dispute. ☒ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000 ☐ $10,000 - $30,000 ☐ $30,000 - $100,000 ☒ Over $100,000

☐ Medical Bills $__________ ☐ Wage Loss $__________ ☐ Property Damages $__________

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | | | | |
|---|---|---|---|---|---|
| A. Mediation | ☒ Yes | ☐ No | C. Settlement Conference | ☒ Yes | ☐ No |
| B. Arbitration | ☐ Yes | ☒ No | D. Neutral Evaluation | ☒ Yes | ☐ No |

## SPECIAL REQUIREMENTS

☒ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*

***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less ☐ 3 days of trial time

☐ 1 day of trial time ☒ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions**, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of Defendant's response

☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response ☐ **Standard** - Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

## CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff ______________. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

## CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

April 24, 2020
Date

402 Long Trail Terrace
Address

Rockville | MD | 20850
City | State | Zip Code

[signature]
Signature of Counsel / Party

Larry H. Kirsch, Esquire
Printed Name

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

ZTY INVESTMENT LLC.
9912 Willow Tree Terrace
Rockville, MD 20850

and

HAIYI HUANG
9912 Willow Tree Terrace
Rockville, MD 20850

Plaintiffs,

vs.

XIN TAO
9416 Atwood Rd,
Vienna, VA 22182
Serve:
Maurice VerStandig, Esquire
9812 Falls Road #114-160
Potomac, Maryland 20854

and

PINEHILLS PROPERTIES, LLC
6888 Elm St, Suite 100
McLean, VA 22101
Serve:
Maurice VerStandig, Esquire
9812 Falls Road #114-160
Potomac, Maryland 20854

and

WILLIAM WEISS
9416 Atwood Road
Vienna, VA 22182
Serve:
Maurice VerStandig, Esquire
9812 Falls Road #114-160
Potomac, Maryland 20854

and

PREMIERE REALTY, LLC :
751 Rockville Pike, Suite 4-A :
Rockville, Maryland 20852 :
Serve: :
Maurice VerStandig, Esquire :
9812 Falls Road #114-160 :
Potomac, Maryland 20854 :
:
and :
:
PREMIERE REALTY, LLC :
688 Elm Street, Suite 100 :
McLean, Virginia 22101 :
Serve: :
Maurice VerStandig, Esquire :
9812 Falls Road #114-160 :
Potomac, Maryland 20854 :
:
and :
:
BALTIMORE HARLEM :
PARK INVESTMENT, LLC :
9912 Willow Tree Terrace :
SERVE ON: :
Serve: :
Maurice VerStandig, Esquire :
9812 Falls Road #114-160 :
Potomac, Maryland 20854 :
:
Defendants. :

**COMPLAINT**

COME NOW, Plaintiffs, ZTY Investment, LLC ("Plaintiff ZTY") and Haiyi Huang ("Plaintiff Huang") [Plaintiff ZTY and Plaintiff Huang may hereinafter be collectively referred to as "Plaintiffs"], by and through their counsel, Larry H. Kirsch, Esquire and the Law Office of Larry H. Kirsch and file their First Amended Complaint against Defendant Xin Tao ("Defendant "Tao"), Defendant Pinehills Properties, LLC ("Defendant Pinehills"), Defendant William Weiss ("Defendant Weiss"), Defendant Premiere Realty, LLC, a Virginia Company ("Defendant First Premiere"), Defendant Premiere Realty, LLC, a Maryland Company ("Defendant Second

Premiere") and Defendant Baltimore Harlem Park Investment, LLC ("Defendant BHPI"). [Defendant Tao, Defendant Pinehills, Defendant Weiss, Defendant First Premiere, Defendant Second Premiere and Defendant BHPI may hereinafter also be collectively referred to as "Defendants"].

## STATEMENT OF FACTS AND NATURE OF THE ACTION

1. All matters complained of herein except for those alleged at Count I are subject to a Tolling Agreement executed by Plaintiffs and Defendants in this action (the "Tolling Agreement"). The Tolling Agreement states, *inter alia,*

> [Defendants] waive and are estopped from asserting any statute of limitations defenses, laches or any other defense to the potential litigation based on the passage of time which may arise during the period of May 1, 2017 through and including December 30, 2020, and the period of any written extension of this Tolling Agreement.

2. Pursuant to paragraph 6 of the Tolling Agreement Maurice VerStandig, Esquire agreed to accept service of the Summons and Complaint for Defendants.

3. The matters alleged at Count I occurred within three (3) years of the filing of this Complaint and are not governed by the Tolling Agreement.

4. Plaintiff ZTY is a Virginia limited liability company registered and authorized to conduct business in the State of Maryland.

5. The business address for Plaintiff during the time of the matters alleged herein and at the time of the filing of this Complaint is 9912 Willow Terrace, Rockville, Montgomery County, Maryland

6. Plaintiff Huang is the sole member of Plaintiff ZTY.

7. Plaintiff Huang is a Maryland resident who resides at 9912 Willow Tree Terrace, Rockville, MD 20850 and 7356 Dartford Drive, Apartment 2, McLean, Virginia 22102.

8. Defendant Tao is a resident of the Commonwealth of Virginia who resides at 9416 Atwood Road, Vienna, Virginia 22182.

9. Defendant First Premiere, during the time of the events alleged in the Complaint, was a real estate company organized and existing under the laws of the Commonwealth of Virginia, qualified to or, in fact, conducting business in the State of Maryland.

10. Defendant Second Premiere, during the time of the events alleged in the Complaint, was organized and existing under the State of Maryland conducting business in the State of Maryland.

11. Defendant Pinehills is a Virginia limited liability company registered and authorized to conduct business in the State of Maryland.

12. Defendant Pinehills is owned solely by Defendant Weiss.

13. Defendant Weiss is the husband of Defendant Tao.

14. Defendant Tao and Defendant Weiss regularly participated in real estate ventures together including, without limitation, the real estate related venture that is the subject of this lawsuit.

15. Baltimore Harlem Park Investment, LLC is a Maryland limited liability company with a business address of 9912 Willow Tree Terrace, Rockville, Maryland 20850.

16. Jurisdiction over this matter is proper under Md. Code Ann., Cts. & Jud Proc. §1-501,§ 6-102 and § 6-103.

17. Venue over this matter is proper under Md. Code Ann., Cts. & Jud Proc. §6-201(a) and § 6-202(a) or § 6-201(b).

18. Plaintiff Huang is a naturalized citizen of the United States who immigrated to the United States in December, 2001 from the Peoples Republic of China ("China"). Plaintiff Huang has no formal education in the English language and requires the aid of an interpreter for many daily interactions and for business interactions that are conducted in English.

19. Based upon information and belief, Defendant Tao is also an immigrant from the Peoples Republic of China and is a naturalized citizen of the United States.

20. Based upon their shared background, Plaintiff Huang and Defendant Tao share a natural cultural affinity.

21. Defendant Tao was the registered real estate broker of Defendant First Premiere in the State of Maryland during the time of the matters alleged in Plaintiffs' Complaint, as amended. A copy of the Department of Labor, Licensing and Regulation search results is attached hereto as Exhibit "A" and incorporated herein by reference

22. Based upon information and belief, Defendant Tao was the registered real estate broker of Defendant Second Premiere in the State of Maryland during the time of the matters alleged in Plaintiffs' Complaint as amended.

23. Defendant Tao is a sophisticated real estate investor..

24. Plaintiff Huang had the means for, and an expressed interest in, investing large amounts of money in residential and commercial properties in the United States, particularly in Virginia and Maryland, but had only a basic background and minimal experience in real estate investing.

25. Plaintiff Huang met Defendant Tao in 2013, at which time, Defendant Tao introduced Plaintiff Huang to Defendant Tao's real estate company, which she referred to and called "Premiere Realty". Defendant Tao represented to Plaintiff Huang that Defendant Tao

and her Company, "Premiere Realty", had information on some "really great" real estate projects.

26. At no time during the time of the matters complained of herein did Defendant Tao disclose to Plaintiffs that there were two (2) separate companies called "Premiere Realty". In fact, Plaintiff Huang believed she was dealing with only one (1) company called "Premiere Realty" when she was being presented with real property purchase opportunities by Defendant Tao. Plaintiff Huang only learned there were two (2) separate entities sometime after the business relationship between Plaintiff Huang and Defendant Tao and her related Defendant parties ended.

27. Defendant Tao represented to Plaintiff Huang that Defendant Tao had special expertise in real estate investing and gained Plaintiff Huang's confidence that Defendant Tao could provide investment expertise, real estate investing and related real estate services to Plaintiff Huang to increase her success in real estate investing and would protect Plaintiff Huang's interests with regard to the purchase of and investment in properties.

28. Upon learning that Plaintiff Huang had the ability to invest large sums of money in real estate in Virginia and Maryland, Defendant pursued a personal and business relationship with Plaintiff Huang. Thereafter, Defendant Tao began regularly introducing real estate investment opportunities to Plaintiff Huang.

29. When cultivating the relationship with Plaintiff Huang, Defendant Tao was aware that Plaintiff Huang was not fully conversant in the English language and that Plaintiff Huang would rely upon Defendant Tao's expertise in the field of real estate investing.

30. Relying on Defendant Tao's representations as to Defendant Tao's expertise in real estate investing and because of their ethnic and cultural affinity, Plaintiff trusted and relied

upon Defendant Tao. Plaintiff Huang began using Defendant Tao as a real estate broker, consultant and advisor to find and help acquire real estate investments in Virginia and Maryland.

31. Defendant Tao cultivated and established a relationship with Plaintiff Huang whereby Plaintiff Huang relied upon Defendant Tao as a professional real estate broker, consultant and advisor, Defendant Tao's representation that she was experienced in real estate investment, and the cultural and ethnic affinity between Plaintiff Huang and Defendant Tao.

32. A relationship of trust, confidence and reliance developed between Plaintiff Huang and Defendant Tao with Defendant Tao owing fiduciary duties to Plaintiff Huang including those of loyalty, independence and confidence.

33. All conduct alleged of Defendant Tao was done in her individual capacity and as agent and representative of and for Defendant First Premiere Defendant Second Premiere, Defendant Weiss and Defendant Pinehills.

34. From the period of March, 2014 up through the second week of May, 2014 (the "Presentation Period"), Defendant Tao, individually and as a representative of Defendant First Premiere and Defendant Second Premiere presented Plaintiffs with a real estate opportunity to purchase a package of real estate properties located in Baltimore City, Maryland.

35. Defendant Tao represented to Plaintiffs during the Presentation Period that the real estate properties could be purchased by buying an unrelated company, Ruby Jude City, LLC that owned a non-performing secured promissory note in the original principal amount of $3,650,000.00 (the "Note") [the "Baltimore Harlem Park Venture"]. The Note was secured and recorded as a lien against thirty-three (33) properties by an Indemnity Deed of Trust recorded among the Land records of Baltimore City, Maryland in Liber 10844, folio 361. A copy of the

Indemnity Deed of Trust is attached hereto as Exhibit "B" and incorporated herein by reference.

36. To entice Plaintiffs to purchase the interest in Ruby Jude City, LLC, during the Presentation Period, Defendant Tao provided Plaintiffs with a document entitled "Harlem Park Portfolio". A copy of the Harlem Park Portfolio is attached hereto as Exhibit "C" and incorporated herein by reference. The Harlem Park Portfolio was provided by Defendant Tao to Plaintiffs prior to the time Plaintiffs agreed to proceed with Baltimore Harlem Park Venture.

37. Based upon representations made by Tao, Plaintiffs believed the information contained in the Harlem Park Portfolio had been reviewed by Defendant Tao and was accurate.

38. When Defendant Tao presented the Harlem Park Portfolio to Plaintiffs, Defendant Tao acted in such a manner that Plaintiff Huang reasonably believed that Defendant Tao was acting as an agent for the company marketing the sale of the assets listed in the Harlem Park Portfolio, that Defendant Tao had special knowledge about the assets listed in the Harlem Park Portfolio and as agent for Defendant First Premiere and Defendant Second Premiere.

39. During the Presentation Period, Defendant Tao, acting individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, represented to Plaintiffs that the investment was a safe and appropriate investment for Plaintiffs; that the investment would generate immediate rental income (i.e. cash flow), the unpaid taxes and property conditions could be easily remedied and that in less than two (2) years Plaintiffs could expect to double their investment. Such representations were continuously made by Defendant Tao up through the second week of May, 2014. Defendant Tao knew, or should have known, at the time that such representations were made that they were untrue, false and misleading and omitted material facts.

40. During the Presentation Period, Defendant Tao, acting individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, knew that the Baltimore Harlem Park Venture properties were in tax sale and had unpaid taxes and other liens for housing code violations and were otherwise in disrepair but failed to disclose the actual condition of the Baltimore Harlem Park Venture properties as described herein to Plaintiffs.

41. During the Presentation Period, Defendant Tao, acting individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, knew that to secure ownership of the Baltimore Harlem Venture properties, the business venture that purchased the Baltimore Harlem Venture properties would have to institute foreclosure proceedings to obtain title to the Baltimore Harlem Park Venture properties but failed to disclose this fact to Plaintiffs or failed to disclose the true cost and expense of obtaining title to said properties through foreclosure proceedings. All that Defendant Tao represented to Plaintiffs was that they would have to buy the Note to obtain title to the Harlem Park Venture properties, but Defendant Tao never explained to Plaintiffs how title to the properties would be obtained.

42. During the Presentation Period, Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, knew that the Baltimore Harlem Park Venture was undercapitalized and would require Plaintiffs to contribute substantial additional funds after the purchase but failed to disclose this fact to Plaintiffs.

43. During the Presentation Period, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, knew that

Defendant Tao, or her designated party, would obtain an equal ownership interest in the venture formed to purchase Ruby Jude City LLC but contribute considerably less for the equal ownership, but failed to disclose this fact to Plaintiffs.

44. The representations made by Defendant Tao as described in this Complaint, as amended, were made with the consent and knowledge of Defendant Weiss and for the benefit of Defendant First Premiere, Defendant Second Premiere, Defendant Weiss, Defendant Pinehills.

45. Based upon the documentation provided and representations made by Defendant Tao, Plaintiff Huang, through Plaintiff ZTY agreed to purchase an interest in the Baltimore Harlem Park Venture.

46. To effect the purchase of Ruby Jude City, LLC, at the request of Defendant Tao, on April 24, 2014 an entity known as Baltimore Harlem Park Investment, LLC (previously identified herein as Defendant BHPI) was organized with the Maryland State Department of Assessments and Taxation. A copy of the Articles of Incorporation is attached hereto as Exhibit "D" and incorporated herein by reference. The initial members of Defendant BHPI were Plaintiff ZTY - 45%; Pinehills Properties, LLC – 45%; 495 Properties – 5%; and SGL Holding, LLC - 5%.

47. Although the Articles of Organization for Defendant BHPI name Plaintiff Huang as an authorized person and Resident Agent of Defendant BHPI, Plaintiff Huang had minimal involvement in the organization of Defendant BHPI and minimal involvement in the day-to-day operations and activities of Defendant BHPI. Plaintiff Huang relied upon Defendant Tao to conduct the day-to-day operations and to instruct Plaintiff Huang as to what duties to perform.

48. In fact, Defendant BHPI was managed by Defendant Tao.

49. Although the Operating Agreement for Defendant BHPI that was drafted in December 2014 (approximately 7 months after the purchase of Ruby Jude City, LLC) named Plaintiff Huang as a Manager, Plaintiff Huang's role as a manager was limited to taking action based upon instructions and requests by Defendant Tao, who *de facto* was the manager of Harlem Park, LLC.

50. On April 25, 2014, a purchase contact between Ruby Jude City, LLC and Defendant BHPI was executed (the "Purchase Agreement"). The purchase price to be paid for Ruby Jude City, LLC was $750,000.00. A settlement date for the purchase was set to be no later than May 9, 2014. The Purchase Agreement contained a due diligence period until May 6, 2014. By Addendum Number One, the due diligence period was extended until May 7, 2014. By Addendum Number Two, the purchase price for Ruby Jude, LLC was reduced to $660,000.00 and the closing date was extended until May 14, 2014. A copy of the Purchase Agreement (without Exhibits) and Addendums are attached hereto as Exhibit "E" and incorporated herein by reference.

51. At no time prior to Closing did Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills disclose to Plaintiffs the true facts regarding the financial condition of the Baltimore Harlem Park Venture or how Defendant Tao or her designated purchaser would fully fund her/its share of the monetary contribution to the Harlem Park Venture.

52. During the Presentation Period up to the date of Closing, Defendant Tao solicited $660,000.00 in investment funds from Plaintiffs for their interest in Defendant BHPI ("Plaintiffs' Initial Contribution").

53. On May 13, 2014, Plaintiff Huang, based upon Defendant Tao's continuing solicitation, agreed to provide personal funds for the investment, most of which Plaintiff Huang obtained from a loan secured by her personal residence.

54. Thereafter, Plaintiff ZTY, Plaintiff Huang's company, based upon instruction from Defendant Tao, wired Plaintiffs' Initial Contribution into the law firm escrow account of Arnold Politzer, Esquire. A copy of the two (2) wire confirmations are attached hereto as Exhibit "F" and incorporated herein by reference.

55. Closing and purchase of Ruby Jude City, LLC occurred on or about May 14, 2014 ("Closing").

56. Based upon information and belief, at Closing, Defendant Tao and the other party defendants contributed no more than $15,000.00 at the time of Closing, an amount materially less than the personal funds contributed by Plaintiff Huang through her company Plaintiff ZTY at Closing.

57. Plaintiffs agreed to this arrangement because during the Presentation Period up to the time that Plaintiff ZTY provided Plaintiff's Initial Contribution and at times thereafter, Defendant Tao represented that she, or her designated party, would later obtain a loan and contribute the loan proceeds as to the business venture after the parties obtained title to the Harlem Park Venture properties.

58. During the Presentation Period up to the time that Plaintiff ZTY provided Plaintiffs' Initial Contribution, Defendant Tao represented, individually and as agent for Defendant Weiss, Defendant First Premiere, Defendant Second Premiere and Defendant Pinehills, that the Plaintiffs' Initial Contribution would be considered a loan to be repaid to Plaintiffs upon sale of or obtaining title to underlying properties secured by the Note.

59. No portion of Plaintiffs' Initial Contribution has been repaid to Plaintiffs.

60. At Closing, 100% of the membership interest in Ruby Jude City, LLC was assigned to Defendant BHPI. See Assignment attached hereto as Exhibit "G" and incorporated herein by reference.

61. After making Plaintiffs' Initial Payment, Plaintiffs obtained no less than 47.5% membership interest in Defendant BHPI. Based upon information and belief, Defendant Pinehill also obtained no less than a 47.5% membership interest in Defendant BHPI despite disproportionate or no financial contribution or disclosure of same. The exact ownership interest was never disclosed to Plaintiffs at the time of the purchase and no operating agreement was signed until December, 2014, approximately seven (7) months after Closing.

62. Based upon the relationship between Plaintiff Huang and Defendant Tao, the documents provided by Defendant Tao during the Presentation Period up to the date of Closing and Defendant Tao's continuous affirmation and representations that this was a conservative and prudent real estate investment opportunity, Plaintiffs reasonably believed that the investment in Defendant BHPI was a safe investment, suitable for their investment objectives and would produce the income and profit as represented by Defendant Tao both prior to and after Plaintiffs made their Initial Contribution.

63. Only after Closing and Plaintiffs had provided significant funds, did Plaintiffs learn that Defendant BHPI was undercapitalized and would be unable to purchase the Baltimore Harlem Park Venture properties without additional capital. Prior to being told this fact post-Closing, Plaintiffs had no knowledge of these facts and in fact, relied upon Defendant Tao's prior representations that there were sufficient funds to obtain title to the properties secured by the Note.

64. Only after Closing and Plaintiffs had provided significant funds, did Plaintiffs learn that the Baltimore Harlem Park Venture would not generate the income as represented to Plaintiffs during the Presentation Period. Prior to being told this fact post Closing, Plaintiffs had no knowledge of these facts.

65. Only after Closing, did Defendant Tao advise Plaintiffs that they would need to find additional investors to provide the needed capital to Defendant BHPI to fund the costs to purchase the Baltimore Harlem Park properties in the foreclosure proceedings. Prior to being told that Harlem LLC would need additional investors post Closing, Plaintiffs had no knowledge of this fact.

66. After Closing, Plaintiffs were required to and given the precarious circumstance they were placed in by Defendant Tao, did in fact, contribute more than $65,000.00 in additional capital contributions to Defendant BHPI ("Plaintiffs Additional Contribution") to fund Defendant BHPI expenses.

67. At some point in the latter part of 2014, Plaintiffs was advised by Defendant Tao that Defendant Tao had found investors willing to invest $300,000.00 in Harlem Park LLC. The investors were Dongyun (Mary) Mao and Tin (David) Tang (collectively the "Investors").

68. Plaintiff Huang had no role in locating the Investors or involvement in negotiating the terms of the investment by the Investors.

69. It was Defendant Tao who retained Jennifer Banks of the law firm of Duncan Black & Associates to prepare the Operating Agreement to reflect that the Investors, through their company, Insight Investment, were to receive a 21% interest in Defendant BHPI for the Investors $300,000.00 investment.

70. Defendant Tao arranged to have the Investors wire the $300,000.00 investment directly to Plaintiff ZTY's account, for the purpose of having ZTY Investments, LLC remit the monies to Arnold Politzer, Esquire to pay Defendant BHPI property expenses, such as real property taxes, for the Baltimore Harlem Park Venture properties and other expenses related to Defendant BHPI.

71. Plaintiffs agreed to accept the wire from the Investors when asked to do so by Defendant Tao and did not question Defendant Tao's request because of the relationship of trust and confidentiality between Plaintiff Huang and Defendant Tao that Defendant Tao had cultivated.

72. After the Investors paid the $300,000.00 investment, the ownership of Defendant BHPI was adjusted to - 39.5% Plaintiff Huang; 39.5% Defendant Pinehills; and 21% Insight Investment (Investors' Company).

73. It was no earlier than October, 2014 when Plaintiff Huang learned that Defendant Tao was seeking additional monies from investors to pay Defendant BHPI expenses.

74. It was no earlier than October, 2014, that Plaintiff Huang learned that the representations made by Defendant Tao to solicit Plaintiffs' Initial Contribution as set forth in this Complaint were false and misleading and that Defendant Tao had concealed and omitted material financial terms of the investment.

75. Subsequent to October, 2014, Plaintiffs also discovered and learned that Defendant Tao and Defendant Pinehills continued to contribute materially less money than Plaintiffs for the eventual 39.5% interest in Defendant BHPI that was assigned to Defendant Pinehills. Prior to this time, Plaintiffs had no reason to suspect that material disparity in contributions would continue because of Plaintiff Huang's trust of Defendant Tao.

76. Based upon information and belief, Plaintiffs believe that Defendant Tao and/or Defendant Pinehills contributed no more than $165,000.00 for Defendant Pinehills' r initial 39.5% membership interest, as thereafter adjusted.

77. Plaintiffs, on the other hand, paid more than $720,000.00 for the same initial 39.5% interest, as thereafter adjusted, in Baltimore Harlem Park, LLC, an amount that is approximately $555,000.00 greater than the contribution made by Defendant Tao or Defendant Pinehills for the same interest in Harlem Park LLC.

78. Based upon representations made by Defendant Tao during the Presentation Period up through the date Plaintiffs provided funds and after Plaintiffs made the Initial Contribution and Additional Contribution, Plaintiffs were misled to believe that Defendant Tao, or her designated purchaser, Defendant Pinehills would make additional contributions to bring their contribution in parity with Plaintiffs' Initial Contribution and Plaintiffs' Additional Contribution or to repay Plaintiff Huang funds she had advanced.

79. In addition to Plaintiffs' Initial Contribution and Plaintiffs' Additional Contribution, Plaintiffs incurred additional costs related to obtaining loans to fund Plaintiff Huang's Initial Contribution and Plaintiffs' Additional Contribution and continue to incur monthly carrying costs related thereto, all of which Defendant Tao, individually and on behalf of the other named defendants agreed to reimburse to Plaintiff Huang.

**COUNT I - Declaratory Relief**
**(As to Defendants BHPI, Pinehills, Tao and Weiss)**

80. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 79 as though fully set forth herein.

81. An actual controversy of a justiciable issue exists between Plaintiffs and Defendant BHPI, Defendant Pinehills, Defendant Tao and Defendant Weiss within the jurisdiction of this

Court involving whether Plaintiff's Initial Contribution and Plaintiff's Additional Contribution were loans or capital contributions and if a loans, the terms of repayment of the loan.

82. Plaintiffs requested Defendant BHPI clarify whether it considered Plaintiff's Initial Contribution or Plaintiff's Additional Contribution to be loans, but Defendant BHPI refused, and continue to refuse to respond to Plaintiff. A copy of Plaintiffs' April 5, 2019 letter to Defendant BHPI's counsel is attached hereto as Exhibit "H" and is incorporated herein by reference.

83. Antagonistic claims are present between these parties. These claims indicate imminent and inevitable litigation.

84. There exists a dispute between Plaintiffs and Defendants BHPI, Pinehills, Tao and Weiss as described in paragraph 81 hereinabove.

85. Defendant BHPI, Defendant Pinehills, Defendant Tao and Defendant Weiss deny such allegations.

86. Plaintiffs hereby seek a declaratory judgment from this Court so as to obtain a determination of Plaintiffs' and Defendants' right and liabilities related to the matters outlines in paragraph 80 hereinabove.

87. A declaratory judgment by this Court will terminate the controversy regarding the parties' various rights, obligations and liabilities related to the matters outlined in paragraph 81 hereinabove.

WHEREFORE, Plaintiffs request the following relief:

The Court enter a declaratory judgment determining the following matters:

a. Whether Plaintiff's Initial Contribution and/or Plaintiff's Additional Contribution, or any portion thereof, was/were a loan and if a loan, a determination of

the terms of the loan(s) including, without limitation, repayment terms and Plaintiff ZTY's membership interest in Defendant BHPI;

b. If this Court determines that Plaintiff's Initial Contribution and/or Plaintiffs' Additional Contribution was/were a loan, whether the failure to repay the loan constitutes a breach of contract by Defendant Tao, Defendant BHPI, Defendant Weiss or Defendant Pinehills.

c. Ordering that Defendants BHPI, Pinehills, Tao and Weiss, jointly and severally, be ordered to pay the fees and costs of this action; and

d. For such other and further relief as this Court may deem appropriate.

**Count II - Intentional Misrepresentation – Fraud and Deceit**
**(As to Defendants Tao, Weiss, First Premiere, Second Premiere and Pinehills)**

88. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 87 as though fully set forth herein.

89. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills falsely represented to Plaintiffs matters related to the Baltimore Harlem Portfolio, namely, the investment was a safe and appropriate investment for Plaintiffs; that the investment would generate immediate rental income (i.e. cash flow), the unpaid taxes and property conditions could be easily remedied and that in less than two (2) years Plaintiffs could expect to double her investment.

90. Defendant Tao, individually and as a representative of Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills knew that the facts as represented to Plaintiffs were false, that the omissions were necessary and material or in the alternative, the representations and omission were made such with reckless disregard for the truth

that knowledge of the falsity of the representations can be imputed to Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills.

91. The misrepresentations and omissions were made by Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills for the purpose of defrauding Plaintiffs in investing no less than Seven Hundred Twenty-Five Thousand and 00/100 Dollars ($725,000.00).

92. Plaintiffs relied with justification upon the misrepresentations as alleged hereinabove.

93. As a direct and proximate result of these misrepresentations and omissions, Plaintiffs have suffered damages of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00).

WHEREFORE, Plaintiffs request the following relief:

a. The Court enter an Order awarding Plaintiffs compensatory damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

b. The Court enter an Order awarding Plaintiffs punitive damages in the amount of One Million and 00/100 Dollars ($1,000,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

c. at Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally, be ordered to pay all attorney fees and costs of this action; and

d. Such other and further relief as this Court may deem appropriate.

**COUNT III – Non-Disclosure – Concealment and Deceit**
**(As to Defendants Tao, Weiss, First Premiere, Second Premiere, Pinehills)**

94. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 93 as though fully set forth herein.

95. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills had a duty to disclose to Plaintiffs all facts and provide material facts regarding the capitalization of the Harlem Park Venture, Harlem Park LLC, the unpaid taxes and other expenses; the general conditions of the properties and the risk of the Baltimore Harlem Park Venture including, without limitation the risk and cost of obtaining title to the various properties through foreclosure proceedings.

96. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills failed to disclose material facts, that is, the investment would not generate immediate rental income (i.e. cash flow), that Defendant BHPI was undercapitalized, and that Defendant BHPI would require additional contributions from Plaintiffs, that Defendant BHPI would have to find additional investors, causing a dilution of Plaintiffs interest in Harlem Park, LLC, in order to satisfy the unpaid property taxes and other liens and that Plaintiffs would not double their investment in less than two (2) years.

97. Defendant Tao's failure to disclose, which was done individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, as alleged herein was done with the intent to deceive Plaintiffs and Defendant Tao, individually and in her representative capacity as described herein knew or should have known that Plaintiffs would have acted differently had Plaintiffs known of the existence of the undisclosed facts.

98. The non-disclosures and concealments made by Defendant Tao as alleged above were made with intention to defraud or deceive Plaintiffs.

99. Plaintiffs acted in justifiable reliance upon the concealment of the facts as alleged hereinabove.

100. Plaintiffs have suffered damages as a result of the concealment as alleged hereinabove.

WHEREFORE, Plaintiffs request there following relief:

a. The Court enter an Order awarding Plaintiffs compensatory damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

b. The Court enter an Order awarding Plaintiffs punitive damages in the amount of One Million and 00/100 Dollars ($1,000,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

c. That Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally, be ordered to pay all attorney fees and costs of this action; and

d. Such other and further relief as this Court may deem appropriate.

**COUNT IV – Constructive Fraud**
**(As to Defendants Tao, Weiss, First Premiere, Second Premiere and Pinehills)**

101. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 100 as though fully set forth herein.

102. There existed a legal or equitable duty owed to Plaintiffs by Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, arising out of a relationship where trust and confidence existed. By way of example, and not limitation, Defendant Tao was a licensed real estate agent and

owner/broker of Defendant First Premiere and Defendant Second Premiere, who cultivated a relationship with Plaintiff Huang and held herself out as a sophisticated real estate investor to convince Plaintiff Huang to invest substantial personal funds in real estate investments.

103. There existed a legal or equitable duty owed to Plaintiffs by Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, arising out of a relationship where trust and confidence existed. By way of example, and not limitation, Defendant Tao was a licensed real estate agent and owner/broker of Defendant First Premiere and Defendant Second Premiere, who cultivated a relationship with Plaintiff Huang and held herself out as a sophisticated real estate investor to convince Plaintiff Huang to invest substantial funds in real estate investments

104. Based upon Defendant Tao's conduct as alleged in this Complaint, Plaintiff Huang placed a special trust and confidence in Defendant Tao.

105. Defendant Tao breached this duty when she made material misrepresentation and omissions regarding the Baltimore Harlem Portfolio and Defendant BHPI as alleged in this Complaint including that the investment would generate immediate rental income (i.e. cash flow), that Defendant BHPI was properly capitalized, that Plaintiffs would double their investment in less than two (2) years when, in fact, Defendant Tao knew these facts not to be true and the risk and costs related to obtaining title to the Baltimore Harlem Park properties.

106. The conduct of Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills as alleged in this Complaint was deceptive and violated the confidence that Plaintiffs placed in said Defendant.

107. Plaintiffs have suffered damages as a result of Defendant Tao's conduct as alleged herein.

WHEREFORE, Plaintiffs request there following relief:

a. The Court enter an Order awarding Plaintiffs compensatory damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

b. The Court enter an Order awarding Plaintiffs punitive damages in the amount of One Million and 00/100 Dollars ($1,000,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

c. That Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally, be ordered to pay all attorney fees and costs of this action; and

d. Such other and further relief as this Court may deem appropriate.

**Count V – Negligent Misrepresentation**
**(as to Defendants Tao, Weiss, First Premiere, Second Premiere and Pinehills)**

108. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 107 as though fully set forth herein.

109. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, owed a duty of care to Plaintiffs to provide true statements about the condition of the Baltimore Harlem Park Venture.

110. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills breached this duty by making false statements and making material omissions regarding the investment quality of the Baltimore Harlem Park Venture, the undercapitalization of Harlem Park LLC, the amount of rental income

that would be generated and the investment appreciation and the cost and expense of the foreclosure proceedings required to obtain title to the Baltimore Harlem Park properties.

111. Defendant Tao individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, intended that Plaintiffs would act upon said statements.

112. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills knew that Plaintiffs would rely upon said statements which, if erroneous, would cause loss or injury to Plaintiffs.

113. Plaintiffs justifiably acted in reliance upon said statements by investing in excess of Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00) in the Baltimore Harlem Park Venture.

114. As a direct and proximate cause of Defendant Tao's negligent conduct as alleged herein, Plaintiffs suffered damages of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00).

WHEREFORE, Plaintiffs request there following relief:

a. The Court enter an Order awarding Plaintiffs compensatory damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

b. The Court enter an Order awarding Plaintiffs punitive damages in the amount of One Million and 00/100 Dollars ($1,000,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

c. That Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally, be ordered to pay all attorney fees and costs of this action; and

d. Such other and further relief as this Court may deem appropriate.

**Count VI – Negligence**
**(as to Defendants Tao, Weiss, First Premiere, Second Premiere and Pinehills)**

115. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 114 as though fully set forth herein.

116. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, owed Plaintiffs a duty to provide accurate information about the Baltimore Harlem Park Venture.

117. Defendant Tao, individually and as agent for Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills, breached this duty when she failed to provide accurate information about the Baltimore Harlem Park Venture as alleged in this Complaint.

118. As a direct and proximate cause of Defendant Tao's negligent conduct as alleged herein, Plaintiffs suffered damages of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00).

WHEREFORE, Plaintiffs request there following relief:

a. The Court enter an Order awarding Plaintiffs compensatory damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

b. The Court enter an Order awarding Plaintiffs punitive damages in the amount of One Million and 00/100 Dollars ($1,000,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

c. That Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally, be ordered to pay all attorney fees and costs of this action; and

d. Such other and further relief as this Court may deem appropriate.

**COUNT VII – Civil Conspiracy**
**(As to Defendants Tao, Weiss, First Premiere, Second Premiere and Pinehills)**

119. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 118 as though fully set forth herein.

120. Defendant Tao, Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills conspired to unlawfully and fraudulently obtain capital from Plaintiffs to purchase Ruby Jude City, LLC so as to obtain a financial interest in said assets for a minimal investment.

121. Defendant Tao, Defendant First Premiere, Defendant Second Premiere, Defendant Weiss and Defendant Pinehills committed tortious acts, to wit, fraud and fraudulent concealment as more fully alleged in this Complaint in furtherance of their conspiracy.

122. As a direct result of the acts of Defendants' conspiracy Plaintiffs suffered damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00).

WHEREFORE, Plaintiffs request there following relief:

a. The Court enter an Order awarding Plaintiffs compensatory damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars

($725,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

b. The Court enter an Order awarding Plaintiffs punitive damages in the amount of One Million and 00/100 Dollars ($1,000,000.00) against Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally;

c. That Defendants Tao, First Premiere, Second Premiere, Weiss and Pinehills, jointly and severally, be ordered to pay all attorney fees and costs of this action; and

d. Such other and further relief as this Court may deem appropriate.

**COUNT VIII –Aiding and Abetting**
**(As to Defendants Weiss and Pinehills)**

123. Plaintiffs repeat and reallege each and every allegation made in the foregoing numbered paragraphs 1 through 122 as though fully set forth herein.

124. Defendant Tao wrongfully and fraudulently, in breach of her duties to Plaintiffs, and with knowledge and intent, misrepresented to Plaintiffs the condition of the Baltimore Harlem Park Venture as alleged in this Complaint.

125. Defendant Weiss and Defendant Pinehills, by and through its agent, Defendant Weiss, had both actual knowledge of and were active participants in the unlawful and fraudulent conduct of Defendant Tao as alleged hereinabove.

126. Defendant Weiss and Defendant Pinehills aided, abetted and encouraged Defendant Tao's wrongful acts as alleged hereinabove and knowingly provided substantial assistance, aid and encouragement in the commission of Defendant Tao's conduct by participating in the purchase of the Baltimore Harlem Park Venture as evidenced by its obtaining an ownership interest in Defendant BHPI.

127. As a direct result of the acts of Defendant Weiss and Defendant Pinehills, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs request there following relief:

a. The Court enter an Order awarding Plaintiffs compensatory damages in the amount of no less than Seven Hundred Twenty Five Thousand and 00/100 Dollars ($725,000.00) against Defendants Weiss and Pinehills, jointly and severally;

b. The Court enter an Order awarding Plaintiffs punitive damages in the amount of One Million and 00/100 Dollars ($1,000,000.00) against Defendants Weiss and Pinehill's, jointly and severally;

c. That Defendants Weiss and Pinehills, jointly and severally, be ordered to pay all attorney fees and costs of this action; and

d. Such other and further relief as this Court may deem appropriate.

Respectfully submitted,

Larry H. Kirsch, Esquire
402 Long Trail Terrace
Rockville, Maryland 20850
(202) 237-6600
Larry@lkirschlaw.com

*Counsel for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs ZTY Investment, LLC and Haiyi Huang demand a jury trial in this matter.

Larry H. Kirsch, Esquire

# EXHIBIT "A"

STATE OF MARYLAND
DLLR
DEPARTMENT OF LABOR, LICENSING AND REGULATION

## Results for Active Licensed Real Estate: 1

The following results do not include current licensees who are on inactive status.

| Name | Trade Name | Address | City | State | Zip | Expiration | Category | Reg. # |
|---|---|---|---|---|---|---|---|---|
| XIN TAO | PREMIERE REALTY LLC | 7925 JONES BRANCH DR SUITE 4225 | MCLEAN | VA | 22102 | 2017-11-04 | BROKER | 582017 |

[NEW SEARCH FOR ACTIVE LICENSED INDIVIDUALS]

[Home] [Return to Licensing Queries]

# EXHIBIT "B"

MID-ATLANTIC TITLE COMPANY
100 West Road, Suite 215
Towson, Maryland 21204 LIBER 10844 FOLIO 361
08-m-11942

1 of 4

XXX To be recorded among the Land Records of Baltimore City, Maryland

INDEMNITY DEED OF TRUST
AND SECURITY AGREEMENT
AND ASSIGNMENT OF LESSOR'S INTEREST IN LEASES

THIS INDEMNITY DEED OF TRUST AND SECURITY AGREEMENT AND ASSIGNMENT OF LESSOR'S INTEREST IN LEASES ("Deed of Trust") made this 27th day of June, 2008, by and between HP WEST BALTIMORE, LLC, HP BENNETT, LLC, HP EDMONDSON, LLC, and PORTUGAL PROPERTIES, LLC (individually and/or collectively, "Grantor"), all being Maryland limited liability companies, 6718 Holabird Avenue, Baltimore, Maryland 21222, parties of the first part, and MARY BETH TAYLOR and J. DANIEL SADLER, Trustees (collectively, "Trustees"), 6900 York Road, Baltimore, Maryland 21212-1599, parties of the second part, and BRADFORD BANK, a federal stock bank having an address at 6900 York Road, Baltimore, Maryland 21212-1599, party of the third part ("Beneficiary").

WHEREAS, of even date herewith, Grantor has executed in favor of Beneficiary a Guaranty of Payment and Performance (the "Guaranty"), guaranteeing repayment to Beneficiary and performance by DENMARK PROPERTIES, LLC, a Maryland limited liability company (hereinafter "Borrower"), of all of Borrower's obligations pursuant to (i) that certain Promissory Note (as the same may from time to time be extended, amended, restated, supplemented or otherwise modified, the "Note") of even date herewith in the principal sum of THREE MILLION SIX HUNDRED FIFTY THOUSAND DOLLARS ($3,650,000.00), or so much thereof as may be advanced, in lawful money of the United States of America, with interest thereon, and (ii) performance of all of Borrower's obligations under the Loan Documents executed in connection with the Note; and Grantor hereby secures its obligations under the Guaranty by the execution of this Deed of Trust;

WHEREAS, THE MAXIMUM AMOUNT OF PRINCIPAL (exclusive of interest and all other costs and charges hereby secured) TO BE SECURED AT ANY ONE TIME BY THIS DEED OF TRUST SHALL BE **THREE MILLION SIX HUNDRED FIFTY THOUSAND DOLLARS ($3,650,000.00)**.

WHEREAS, Grantor is not primarily liable for the obligations under the Note, but executes this Deed of Trust in order to secure its obligations under the Guaranty in the event of a Default thereunder. In consideration of certain undertakings to Grantor given by Borrower, the receipt and sufficiency of which are hereby acknowledged by Grantor, Grantor guarantees to Beneficiary upon a Default by Borrower (and not before) the full and punctual payment of the "Guaranteed Obligations" (as defined in the Guaranty), including but not limited to principal and interest under the Note, as well as the payment of any and all loan fees, extension fees and other like or similar costs, charges, expenses and fees, and together with any future advances and readvances made to Borrower and evidenced by promissory notes stating that said notes are secured hereby, and the performance of the covenants herein contained, as well as any and all renewals and extensions of the Note, or any part thereof, with interest thereon; and also to secure the reimbursement to Beneficiary or to Trustees, and any purchaser(s) or grantee(s) under any sale or sales under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses (including reasonable attorneys' fees) incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or to the indebtedness or to the property herein described, or in obtaining possession of the Trust Property after any sale which may be made as hereinafter provided for; all of the foregoing set forth in this paragraph being added to and being made part of the principal indebtedness secured hereby (all of the foregoing being sometimes referred to herein as the "Indebtedness").

NOW, THEREFORE, THIS DEED OF TRUST WITNESSETH:

THAT, Grantor, in consideration of the premises herein contained and of One Dollar ($1.00) paid by Trustees, the receipt of which, before the sealing and delivery of these presents, is hereby acknowledged, has GRANTED and CONVEYED, and does hereby GRANT

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0361, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

and CONVEY unto Trustees, in fee simple and/or leasehold (as applicable), that real property situate, lying and being in Baltimore City, Maryland, more particularly described in Exhibit "A" attached hereto and made a part hereof (hereinafter the "Land").

TOGETHER with all right, title and interest of Grantor, including any after-acquired title or reversion in and to the beds of the ways, streets, avenues and alleys adjoining the Land; and

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed in or upon any interest or estate in the Land, and used or usable in connection with any present or future operation of the Land and now owned or hereafter acquired by Grantor, and/or in which Grantor may now have or hereafter acquire rights, and all fixtures including, but not limited to, all gas and electric fixtures, engines and machinery, radiators, heaters, furnaces, heating equipment, steam and hot water boilers, stoves, ranges, elevators, motors, bathtubs, sinks, water closets, basins, pipes, faucets and other plumbing and heating fixtures, mantels, refrigerating plant and refrigerators, or other mechanical or otherwise, cooking apparatus and appurtenances, furniture, shades, awnings, screens, blinds and other furnishings; it being mutually agreed that all the aforesaid property owned by said Grantor and placed by it on the Land shall, so far as permitted by law, be deemed affixed to the realty and covered by this Deed of Trust; and

TOGETHER with all articles of personal property now or hereafter attached to or used in and about the building or buildings now erected or hereafter to be erected on the Land which are necessary to the complete and comfortable use and occupancy of such building or buildings for the purposes for which they were or are to be erected, including all goods and chattels and personal property as are used or furnished in operating a building or the activities conducted therein, and all renewals or replacements thereof or articles and substitutions therefore, whether or not the same are, or shall be attached to said building or buildings in any manner; and

TOGETHER with all building and construction materials and equipment now or hereafter delivered to the Land and intended to be installed therein; and

TOGETHER with all leases, rents, profits, and benefits to the extent they may constitute accounts, including any deposits of tenants to secure payment of the same and performance of the terms and conditions of any oral or written lease, with respect to the leasing of all or any portion of the Land or improvements thereon; and all of the accounts of Grantor, including without limitation, all notes, accounts receivable, drafts, acceptances and similar instruments and documents, and all contract rights related to the Land; and

TOGETHER with all plans and specifications, surveys and surveyor's reports, engineer's and architect's reports, diagrams and drawings; sewer and water taps, allocations and agreements for utilities, bonds, utility deposits, refunds of fees or deposits paid to governmental authorities; licenses, permits, approvals and applications therefore from governmental authorities; contracts, subcontracts, service contracts, books, records, reports, accounting records, invoices, change orders, correspondence, diagrams, drawings, schematics, sales and promotional materials, wherever located and whenever created, compiled or made with respect to the Land or the improvements thereon; and

TOGETHER with all of Grantor's right, title and interest in and to all amounts that may be owing at any time and from time to time by the Beneficiary to Grantor in any capacity, including, but not limited to, any balance or share belonging to Grantor of any deposit or other account with the Beneficiary; and

TOGETHER with all of the proceeds of the voluntary or involuntary conversion of the real and personal property secured by this Deed of Trust or any part of such property into cash or liquidated claims, whether by way of condemnation, insured casualty, judgment or otherwise. (The Land, together with all of the property described above, are herein referred to as the "Trust Property".)



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0362, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

TO HAVE AND TO HOLD the same unto Trustees and the successors in interest of Trustees forever in fee simple and/or leasehold (as applicable).

PROVIDED, HOWEVER, that until a Default is deemed to occur hereunder or under any other document previously, simultaneously or hereafter executed in connection with the Note, Guaranty and/or the Indebtedness (collectively, "Loan Documents"), Trustees shall permit Grantor, its heirs, personal representatives, successors and assigns, to possess and enjoy the Trust Property and to receive the rents, issues and profits thereof; and on full payment of the Indebtedness (including but not limited to all sums due under the Note, and of any extensions or renewals thereof, interest thereon, all sums advanced or expended as herein provided, and all other proper costs, charges, expenses, commissions, and half-commissions) at any time before the sale hereinafter provided for, to release and reconvey unto and at the cost of Grantor, or the party or parties then claiming under it, the aforesaid Trust Property.

ARTICLE 1.
Covenants

To protect the security of this Deed of Trust, Grantor represents, warrants, covenants, promises and agrees to the following, the breach of any one or more of which shall constitute a Default hereunder:

1.1. TITLE TO THE TRUST PROPERTY AND AUTHORITY TO CONVEY. That Grantor is seized of said Trust Property in fee simple and/or leasehold (as applicable) and has the right to convey the same to Trustees; Grantor does hereby warrant specially the Trust Property; Grantor warrants that the Trust Property is free and clear of all encumbrances (except for those encumbrances of which Beneficiary has been advised in writing), and Grantor will execute such further assurances of the Trust Property as may be requisite. Grantor shall take all steps and do all things necessary and proper to establish, protect, preserve and maintain the Trust Property and the intended priority and the legal operation and effect of this Deed of Trust.

1.2. PAYMENT OF INDEBTEDNESS. Upon a Default by Borrower under the Note, Grantor covenants to pay to Beneficiary the principal of and interest on the Indebtedness, at the times and in the manner herein and in the Guaranty provided.

1.3. PAYMENT OF TAXES, LIENS, AND OTHER CHARGES. To promptly discharge or cause to be discharged any mechanics' or materialmen's lien or other statutory liens of every kind filed against the Trust Property; to pay or cause to pay, before delinquency and before any penalty for non-payment attaches thereto, all taxes, assessments, water rates, sewer rentals and other governmental or municipal or public dues, charges, fines or impositions which are or may be levied against the Trust Property or any part thereof, and following any default or delayed payment in any one instance by Grantor of any of such taxes, assessments, and charges, Beneficiary shall have the option to require thereafter deposit with Beneficiary concurrently with the payment of the installments due under the Note, of a sum equal to the amount of such taxes, assessments and charges respectively next due upon the Trust Property (all as estimated by Beneficiary) divided by the number of months to elapse before a date not less than one month prior to the date when such taxes, assessments or charges respectively shall become delinquent, and all such sums shall be held by Beneficiary, without interest thereon, in trust to pay same; and to deliver to Beneficiary at least ten (10) days before delinquency, receipted bills evidencing payment therefore; to pay, in full, under protest and in the manner provided by statute, any tax, assessment, rate, rental, charges, fine or imposition aforesaid which Grantor may desire to contest.

1.4. MAINTENANCE AND REPAIRS, ETC.

1.4.1. That no building or other improvement on the Trust Property shall be altered, removed or demolished, nor shall any fixture or appliances on, in, or about said buildings or improvements be severed, removed, sold or mortgaged without the prior written consent of Beneficiary; Grantor shall not permit, commit or suffer waste, impairment or deterioration of the Trust Property or any part thereof; Grantor shall keep and maintain the Trust Property and every part thereof with buildings, fixtures, machinery and appurtenances in thorough repair and condition; Grantor shall effect such repairs as Beneficiary may reasonably



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0363, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

require and from time to time to make all needful and proper replacements so that said buildings, fixtures, machinery and appurtenances will, at all times, be in good condition, fit and proper for the respective purposes for which they were originally erected or installed; comply with all statutes, orders, requirements or decrees relating to the Trust Property by any Federal, State or Municipal authority; observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including but not limited to zoning variances, special exceptions and non-conforming uses), privileges, franchises and concessions which are applicable to the Trust Property or which have been granted to or contracted for by Grantor in connection with any existing or presently contemplated use of the Trust Property; and Grantor shall permit Beneficiary or its agents, at all reasonable times, to enter upon and inspect the Trust Property.

1.4.2. Beneficiary shall have the right, at any time and from time to time to engage an independent agent to survey the adequacy of the maintenance and security of the Trust Property. If found inadequate, such agent shall determine the estimated cost of such repairs, replacements and/or security necessary to protect and preserve the utility of the Trust Property and Grantor does hereby acknowledge that the security of this Deed of Trust is thereby impaired to the extent of the estimated cost of such repairs, replacements and the cost of providing such security. In such event, at the option of Beneficiary and after written demand therefore, a sum equal to the amount of such estimated cost shall thereupon become due and payable by Grantor to be applied upon the Indebtedness secured hereby unless within such period Grantor, at its own cost and expense, shall have completed or shall have commenced and thereafter, with diligence, completes such repairs and replacements and provides such security. In such event, Grantor shall also reimburse Beneficiary the cost of such survey, the same being secured hereby and considered as a part of the Indebtedness.

1.5. INSURANCE.

1.5.1. That Grantor shall maintain or cause to be maintained the following insurance at its sole cost and expense: (i) Comprehensive general public liability insurance for injuries to persons and damage to property, with limits as are required by Beneficiary from time to time, but in any event, in an amount of not less than $2,000,000.00 per person/$2,000,000.00 per occurrence for Bodily Injury and $500,000.00 per occurrence for Property Damage. The comprehensive general liability insurance shall include contractors' operations, completed operations, broad form property damage, independent contractors' coverage, and contractual liability coverage. Property Damage insurance shall include explosion, collapse, and underground damage (X, C, U) when applicable. Such insurance shall name Beneficiary as certificate holder; and (ii) If at any time the Land is identified as being in an area or community having special flood, mudslide, erosion or other hazards and if participation by the community in the National Flood Insurance Program ("NFIP") is required by federal law or regulation, then flood insurance must be obtained under NFIP in an amount equal to the mortgage balance of the Loan or the maximum amount available, whichever is less. If the Land is not in an area having special flood and mudslide hazards, Grantor shall deliver to Beneficiary upon request a certificate or letter issued by its insurance company or surveyor stating that the Land is not in such a flood or mudslide hazard area; and (iii) Insurance against casualty to the improvements (the "Improvements") upon the Land, under a policy or policies covering all risks. Unless otherwise agreed to in writing by Beneficiary, such insurance shall be for the full insurable value of the Improvements. The deductible amount under such policy or policies shall not exceed Five Thousand Dollars ($5,000.00). No policy of insurance shall be written such that the proceeds thereof will produce less than the coverage required by this section by reason of co-insurance provisions or otherwise; and (iv) Builder's risk insurance (completed value form) with respect to any Improvements being constructed on the Land, with all risk coverage subject to standard exclusions (with standard mortgagee clause to protect Beneficiary's interest), in an amount and with a company satisfactory to Beneficiary, and containing such endorsements as are required by Beneficiary from time to time; and (v) Such other and further insurance as may be required from time to time by Beneficiary.

1.5.2. Grantor covenants to keep the Trust Property insured as set forth above, and to promptly pay or cause to be paid when due any premiums on such insurance. Not less than thirty (30) days prior to the expiration dates of each policy, Grantor shall deliver to Beneficiary a renewal policy or policies marked "premium paid" or accompanied by other



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0364, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

evidence of payment satisfactory to Beneficiary. Certificates of each policy of insurance (and renewals thereof), premiums prepaid, shall (i) be carried with companies approved by Beneficiary and shall be in form and content satisfactory to Beneficiary, (ii) be deposited with and held by Beneficiary and have attached thereto standard non-contributing, non-reporting mortgagee clauses (in favor of and entitling Beneficiary to collect any and all proceeds payable under all such insurance), as well as standard waiver of subrogation endorsements, all to be in form acceptable to Beneficiary, (iii) provide that such policy shall not be cancelled or modified without at least thirty (30) days' prior written notice to Beneficiary, and (iv) provide that any loss otherwise payable thereunder shall be payable notwithstanding any act or negligence of Grantor which might, absent such agreement, result in forfeiture of all or part of such insurance payment. Grantor shall not carry separate insurance, concurrent in kind or form or contributing in the event of loss, with any insurance required hereunder. In the event of a change in ownership or of occupancy of the Trust Property, immediate notice thereof by mail shall be delivered to all insurers. Beneficiary shall not, because of accepting, rejecting, approving or obtaining insurance, incur any liability for the existence, nonexistence, form or legal sufficiency thereof, the solvency of any insurer, or the payment of losses.

1.5.3. In the event of loss, Grantor shall give notice to Beneficiary within twenty-four (24) hours of the event of loss. Grantor hereby authorizes Beneficiary, at its option, to collect, adjust and compromise any losses under any of the aforesaid insurance, and after deducting costs of collection to apply the proceeds at its option as follows: (i) as a credit, in the inverse order of maturity, upon the Indebtedness secured hereby; or (ii) to restoring the improvements, in which event Beneficiary shall not be obligated to see to the proper application thereof nor shall the amount so released or used be deemed a payment on any Indebtedness secured hereby; or (iii) to deliver same to the owner of the Trust Property. In the event of foreclosure of this Deed of Trust, or other transfer of title to the Trust Property in extinguishment of the Indebtedness secured hereby, all right, title and interest of Grantor in and to any insurance policies then in force, shall pass to the purchaser or grantee, and/or Beneficiary is authorized to cancel any insurance policy then in force and the unearned premium shall be applied to the payment of the Indebtedness.

1.6. ASSIGNMENT OF CONDEMNATION AWARDS. That all awards and other compensation heretofore or hereafter to be made to Grantor and all subsequent owners of the Trust Property in any taking by eminent domain, either permanent or temporary, of all or any part of the Trust Property or any easement or any appurtenance thereof, including severance and consequential damages and change in grade of any street, are hereby assigned to Beneficiary, and Grantor hereby appoints Beneficiary as its attorney-in-fact, coupled with an interest, and authorizes, directs and empowers such attorney, at the option of said attorney, on behalf of Grantor, and the heirs, personal representatives, successors and assigns of Grantor, to adjust or compromise the claim for such award and to collect and receive the proceeds thereof, to give proper receipts and acquittances therefore and, after deducting the expenses of collection, to apply the net proceeds as a credit upon any portion, as selected by Beneficiary, of the Indebtedness secured hereby, notwithstanding the fact that the amount owing thereon may not be due and payable or that the Indebtedness is otherwise adequately secured. Grantor further covenants and agrees to give Beneficiary immediate notice of the actual or threatened commencement of any such proceedings under eminent domain and will deliver to Beneficiary copies of any and all papers served in connection with any such proceedings. Grantor further covenants and agrees to make, execute and deliver to Beneficiary at any time or times, upon request, free, clear and discharged of any encumbrances of any kind whatsoever, any and all further assignments and/or other instruments deemed necessary by Beneficiary for the purpose of validly and sufficiently assigning all such awards and other compensation heretofore or hereafter to be made to Beneficiary (including the assignment of any award from the United States Government at any time after the allowance of the claim therefore, the ascertainment of the amount thereof and the issuance of the warrant for payment thereof).

1.7. RESTRICTION ON ALIENATION. That Grantor shall not sell, assign, convey, transfer, or otherwise change the ownership of all or any part of the Trust Property at any time, whether voluntary or involuntary, by operation of law or otherwise. Further, Grantor shall not hereafter voluntarily create or otherwise permit to be created or filed against the Trust Property, any other deed of trust or mortgage lien or other lien or liens of any type inferior or superior to this Deed of Trust without the prior written consent of Beneficiary, and if consent is



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0365, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

so granted, then any default by Grantor under such lien, or default under any such lien in existence on the date hereof, shall automatically be deemed a default hereunder.

1.8. SUBSEQUENT TAX ACTS. In the event of the passage after the date of this Deed of Trust of any law changing in any way the laws for the taxation of deeds of trust or debts secured by deeds of trust, or the manner of collection of any such taxation so as to affect this Deed of Trust, Beneficiary may give thirty (30) days' written notice to Grantor requiring the payment of the Indebtedness. If such notice be given, the Indebtedness shall become due and payable at the expiration of said thirty (30) days; provided, however, that such requirement of payment shall be ineffective and this Deed of Trust and Note shall be and remain in effect if Grantor lawfully may pay for such stamps and similar taxes, including interest and penalties thereon, to or for Beneficiary, and does in fact pay for all such stamps and other taxes, including interest and penalties thereon, prior to the date upon which payment is required by such notice.

1.9. ADDITIONAL SECURITY INSTRUMENTS. That Grantor, upon request from Beneficiary, shall execute, acknowledge and deliver to Beneficiary a chattel mortgage or other similar security instrument, in form satisfactory to Beneficiary, covering all property, of any kind whatsoever owned by Grantor, which, in the sole reasonable opinion of Beneficiary, is essential to the operation of the Trust Property concerning which there may be any doubt whether title to same has been conveyed by and included within this Deed of Trust, under the laws of the State of Maryland, and will further execute, acknowledge and deliver any financing statement, renewal, affidavit, continuation statement, certificate or other document as Beneficiary may request in order to perfect, preserve and maintain, continue and extend the security interest under and the priority of such chattel mortgage or other security instrument. Grantor further agrees to pay to Beneficiary on demand all costs and expenses incurred by Beneficiary in connection with the preparation, execution, recording and filing of any such document.

1.10. INDEMNIFICATION BY GRANTOR. That Grantor shall protect, indemnify and save harmless Beneficiary and Trustees from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, attorneys' fees and expenses, costs of a title search, continuation of abstract, and preparation of survey) imposed on or incurred by or asserted against Beneficiary or Trustees at any time, before or after the release of this Deed of Trust, by reason of any action, suit, proceedings, hearing, motion or application before any court or administrative body (except an action to foreclose or collect the Indebtedness) in and to which Beneficiary or Trustees may be or become party by reason of this Deed of Trust, including but not limited to, condemnation, bankruptcy, probate and administration proceedings, as well as any other of the foregoing wherein proof of claim is by law required to be filed or in which it becomes necessary to defend or uphold the terms of this Deed of Trust. All sums paid or expended by Beneficiary or Trustees pursuant to the provisions of this paragraph, together with interest thereon from date of such payment at the rate set forth in the Note, shall be additional Indebtedness secured hereby and shall be immediately and without notice due and payable by Grantor.

1.11. STATEMENT OF INDEBTEDNESS. That Grantor, within five (5) days upon request by mail, will furnish to Beneficiary a written statement duly acknowledged of the Indebtedness and whether any offsets or defenses exist against the Indebtedness secured hereby.

1.12. RECORDKEEPING REQUIREMENTS. That Grantor and all subsequent owners of the Trust Property shall keep and maintain full and correct books and records administered in accordance with generally accepted accounting principles consistently applied, showing in detail the earnings and expenses of the Trust Property. Grantor shall permit Beneficiary or its representatives to examine such books and records and all supporting vouchers and data at any time and from time to time on request, at the offices of Grantor hereinbefore identified or at such other location as may be mutually agreed upon; and will furnish to Beneficiary a statement showing in detail all such earnings and expenses since the last such statement, verified by affidavit of Grantor or the then owner, or if the same be a corporation, by an affidavit of its principal executive officer.

1.13. USE VIOLATIONS.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0366, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

1.13.1. That Grantor will not use or occupy the Trust Property or any part thereof, nor will Grantor permit or allow the same to be used or occupied, for any unlawful purpose or in violation of any certificate of occupancy, zoning or other permit or certificate, or in violation of any law, ordinance or regulation, or any covenants, restrictions or reservations affecting the use or occupancy thereof (whether recorded or unrecorded), nor will Grantor suffer any act to be done or any conditions to exist on the Trust Property, or any part thereof or any thing or article to be brought thereon, which may be dangerous, unless safeguarded as required by law, or which may, in fact or in law, constitute a nuisance, public or private, or which may make void or voidable any insurance then in force or required by the terms of this Deed of Trust to be in force with respect thereto.

1.13.2. Grantor agrees that in the event of the enactment of any law or ordinance, the promulgation of any zoning or other governmental regulation, or the rendition of any judicial decree restricting or affecting the use of the Trust Property or rezoning the area wherein the same shall be situate, which Beneficiary believes adversely affects the Trust Property, Beneficiary may, upon at least sixty (60) days' written notice to Grantor, require payment of the Indebtedness at such time as may be stipulated in such notice, and the Indebtedness shall thereupon become due and payable.

1.14. ENVIRONMENTAL MATTERS.

1.14.1. Grantor has investigated the previous ownership and uses of the Trust Property, in a manner consistent with good commercial practice, to determine whether activities have been conducted which might involve Hazardous Materials Contamination (as defined herein). This investigation has taken into account, among other factors, the relationship of the purchase price to the value of the Trust Property if uncontaminated when originally purchased by Grantor, commonly known or reasonably ascertainable information about the Trust Property, and the obviousness of the presence or likely presence of contamination at the Trust Property. Grantor has disclosed to Beneficiary all pending and known threatened litigation regarding Hazardous Materials Contamination on the Trust Property. As used in this Deed of Trust: "Hazardous Materials Contamination" means any hazardous materials, hazardous wastes, toxic substances, oil, petroleum products and their by-products, asbestos, underground storage tanks, urea formaldehyde foam insulation, transformers or other equipment containing PCB's, and any other substance the presence of which on the Trust Property is prohibited by any law similar to those set forth in this definition or which requires special handling in its collection, storage and disposal, which are subject to regulation under the then-current versions of the following federal statutes and the regulations implementing them, as amended from time to time: the Resource Conservation and Recovery Act (42 U.S.C. §6901 et seq.); the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. §9601 et seq.); the Clean Water Act (33 U.S.C. §1251 et seq.); the Clean Air Act (42 U.S.C. §7401 et seq.); the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. §136 et seq.); the Maryland Natural Resources Code Ann. §8-1411(a)(3) et seq.; Maryland Health-General Code Ann., Title 22, Subtitle 5; the Maryland Environmental Code Ann., Title 7, Subtitle 2; and any state statutes and regulations governing hazardous substances, and any local ordinances, including fire codes, governing hazardous substances (collectively the "Environmental Regulations"). At any time prior to release of this Deed of Trust, Grantor shall provide to Beneficiary, at Grantor's sole cost and expense, within twenty (20) days after demand by Beneficiary, with an environmental site assessment or environmental audit report, or an update of the same, in form, content, assessing such conditions and prepared by persons as are satisfactory to Beneficiary.

1.14.2. Grantor represents, warrants and covenants that there is no Hazardous Materials Contamination located on the Trust Property, and Grantor shall not use or allow the Trust Property to be used for any handling, storage and/or use (other than ordinary household use) which would involve Hazardous Materials Contamination; and Grantor shall not dispose of or treat any Hazardous Materials Contamination on the Trust Property. Grantor shall comply with all federal, state and local Environmental Regulations, permits and licensing conditions governing the storage, handling, use, discharge, emission or disposal of any Hazardous Materials Contamination. Grantor shall, immediately upon learning of any noncompliance or violation, notify Beneficiary of the noncompliance or violation, and take all steps necessary to remedy any violation of any such law, code, ordinance, regulation, permit or



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0367, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

license condition whether or not a citation or other notice of violation has been issued by any governmental authority. In addition, within thirty (30) days after demand by Beneficiary, Grantor shall furnish Beneficiary with a bond, letter of credit or similar financial assurance, in amount, form, content and issued by a surety satisfactory to Beneficiary, evidencing to the Beneficiary's satisfaction that the necessary funds are available to pay the cost of removing, treating and disposing of such Hazardous Materials Contamination and to discharge any lien which may be established on the Trust Property as a result thereof. Grantor shall at its own expense promptly contain and remediate any release of Hazardous Materials Contamination arising from or related to the Trust Property and/or the environment and remediate any resultant damage to property, persons, natural resources and/or the environment.

1.14.3. Grantor shall indemnify, hold harmless and (at Beneficiary's and Trustees' option) defend Beneficiary and/or Trustees, their agents, servants and employees, from and against all claims, actions, losses, costs and expenses (including attorneys' and other professional fees), judgments, settlement payments, and, whether or not reduced to final judgment, all liabilities, damages, or fines paid, incurred or suffered by said parties in connection with loss of life, personal injury and/or damage to property or the environment arising, directly or indirectly, wholly or in part from any conduct, activity, act, omission or operation involving the use, handling, generation, treatment, storage, disposal, other management or release of any Hazardous Materials Contamination, at, from or to the Trust Property, whether or not Grantor has acted negligently with respect thereto. Grantor's indemnification and hold harmless obligations under this Paragraph 1.14 shall survive the partial or complete release or other termination of this Deed of Trust or the delivery of a deed-in-lieu of foreclosure of the Deed of Trust. If Grantor shall fail to take such actions as required under this Paragraph 1.14, Beneficiary may in its sole discretion make advances or payments toward performance or satisfaction of the same, and all sums so advanced or paid shall be at once repayable by Grantor, shall bear interest at the rate set forth in the Note, and shall become part of the Indebtedness secured hereby. The fact of any payment made by Beneficiary hereunder shall not be deemed by itself as participation in the management of the situation.

1.15. WARRANTIES. Grantor warrants (i) that it has taken all action necessary to make the Guaranty the valid, binding and legal obligation of Grantor, to make this Deed of Trust a valid, binding and legal instrument for the security of the Guaranty in accordance with its terms, and to authorize, in accordance with all applicable requirements, the execution and delivery of the Guaranty, this Deed of Trust and the other Loan Documents executed by Grantor, and (ii) that the Guaranty, this Deed of Trust and the other Loan Documents executed by Grantor are enforceable against Grantor in accordance with their respective terms.

## ARTICLE 2.
## Default

The following events shall constitute a "Default" hereunder:

2.1. COMPLIANCE WITH COVENANTS CONTAINED HEREIN. Failure by Grantor to comply with all the representations, warranties, covenants, promises and agreements contained in this Deed of Trust.

2.2. OTHER LOAN DOCUMENTS. Any Default under the terms of any of the other Loan Documents executed in connection with this Deed of Trust.

2.3. CROSS DEFAULT. Any event of default or default under any other mortgage or deed of trust on the Trust Property.

2.4. NOTICE OF DEFAULT AND RIGHT TO CURE. Notwithstanding anything to the contrary contained herein or in any of the Loan Documents, Beneficiary shall not be entitled to exercise its rights and remedies under this Deed of Trust or the Loan Documents (i) until such time as Grantor is provided with the "Default Notice", and (ii) the Default has not been cured within the applicable "Cure Period", all as more particularly set forth in the Guaranty.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0368, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2018.

ARTICLE 3.
Rights and Remedies of Beneficiary After Default

In furtherance of Grantor's covenants contained herein, and without intending to limit the remedies available to Beneficiary under applicable law, the following specific rights and remedies are hereby granted to Beneficiary upon the occurrence of a Default under this Deed of Trust:

3.1. ACCELERATION. Upon a Default hereunder or under any of the Loan Documents, the entire Indebtedness secured hereby, together with interest accrued thereon, shall, at the option of Beneficiary, be declared to be immediately accelerated, and become due and payable at the expiration of the Cure Period. Failure to exercise this option shall not constitute a waiver of the right to exercise same in the event of any subsequent Default.

3.2. POSSESSION UPON DEFAULT. That upon Default by Grantor herein, in the Guaranty or under any other Loan Document, Beneficiary may, without notice and without regard to the adequacy of security for the Indebtedness secured, either personally or by attorney or agent without bringing any action or proceeding, or by a receiver to be appointed by the court, enter upon and take possession of the Trust Property or any part thereof, and do any acts which Beneficiary deems proper to protect the security hereof, and either with or without taking possession of the Trust Property, collect and receive the rents, royalties, issues, profits and other income thereof, including rents accrued and unpaid, and apply the same, less costs of operation and collection, upon the Indebtedness secured by this Deed of Trust, said rents, royalties, issues, profits and other income being hereby assigned to Beneficiary as further security for the payment of the Indebtedness. Exercise of rights under this paragraph shall not cure or waive any Default or notice of Default hereunder or invalidate any act done pursuant to such notice, but shall be cumulative to the right and remedy to declare a Default and to foreclose as herein provided, and cumulative to any other right and/or remedy hereunder, or provided by law, and may be exercised concurrently or independently. Expenses incurred hereunder by Beneficiary, including reasonable attorneys' fees, shall be secured hereby.

3.3. RECEIVER. Upon a Default hereunder, Beneficiary and Trustees shall be entitled, without notice to Grantor, to the immediate appointment of a receiver of the Trust Property to operate the same, without regard to the adequacy thereof as security for the Indebtedness, and Grantor shall pay all costs of operation including all fees and commissions. In the event a receiver is appointed, Grantor shall immediately turn over to said receiver all bank accounts, books, records, contracts of sale with deposits thereunder, leases, agreements, tenants' security deposits, and all other material relating to the operation of the Trust Property or the construction of any improvements thereon.

3.4. FORECLOSURE. Trustees, at the option and at the request of Beneficiary, are authorized and shall have the power and duty to sell (and in the case of any default of any purchaser, resell), and Grantor hereby consents to the passage of a decree for the sale of the Trust Property, or any part thereof, at public auction (without regard to the right of any party to the marshalling of assets), and at such time and place, upon such terms and conditions, and after such previous public notice, with such postponement of sale or resale, as Trustees shall deem appropriate; and (the terms of sale being complied with) Trustees shall convey in fee simple and/or leasehold (as applicable) to and at the cost of the purchaser the Trust Property so sold, free and discharged of and from all estate, right, title or interest of Grantor, its successors or assigns at law or in equity, such purchaser being hereby discharged from all liability to see to the application of the purchase money. If one or more Leases are entered into or recorded subsequent to the recording of this Deed of Trust, or are otherwise subordinate to this Deed of Trust, the Trustees, at the direction of Beneficiary, shall sell subject to any one or more of such tenancies that are designated and selected by Beneficiary.

3.5. APPLICATION OF PROCEEDS OF SALE.

3.5.1. After payment of all expenses of sale (including but not limited to a reasonable sum for stenographers' fees, for moneys expended for documentary evidence, the cost of an abstract of title and title report, if required, to the extent permitted by law, all taxes, water rates, and assessments thereon due, all sums advanced as herein provided, a



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0369, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

trustees' commission equal to five percent (5%) of the purchase price, and an attorneys' fee to the attorneys representing Trustees and Beneficiary equal to five percent (5%) of the purchase price), Trustees shall apply the proceeds of sale to the payment of the aforesaid Indebtedness or so much thereof as may then remain unpaid, whether then due or not, and the interest thereon to date of payment (it being agreed that the Note or notes shall, upon such sale, being made before maturity of the Note or notes, or before the maturity of any renewal or extension thereof, be and become immediately due and payable, at the election of Beneficiary), and pay over the surplus, if any, to Grantor, its successors or assigns, upon the surrender and delivery to the purchaser or to the heirs, personal representatives, successors or assigns of purchaser, of the possession of the Trust Property so sold and conveyed, as aforesaid, less the expense, if any, of obtaining possession thereof. Notwithstanding anything to the contrary contained in Section 7-105 of the Real Property Article of the Annotated Code of Maryland, or its successor provisions, which may purport to limit the time period for interest on the Indebtedness, upon foreclosure of the Trust Property, Beneficiary shall be entitled to collect interest on the Indebtedness at the rate set forth in the Note from the date of advance to the date of ratification of the auditor's account in such foreclosure case.

3.5.2. It is specifically understood and agreed that immediately upon the filing in the appropriate Court of foreclosure proceedings under this Deed of Trust, there shall be and become due to the party making such sale all expenses incident to the foreclosure proceedings, all court costs and fees, and the party making such sale and his attorney shall be entitled to receive compensation equal to one-half (1/2) of the aforesaid trustees' commission and attorneys' fee, respectively, computed upon the then outstanding Indebtedness, with accrued interest; and Beneficiary shall not be required to receive the principal and interest of the Indebtedness in satisfaction thereof, prior to the foreclosure sale of the Trust Property, unless the same be accompanied by a tender of the expenses, costs, fees, commissions and half-commissions as herein provided.

3.6. FORECLOSURE OF PERSONALTY. Upon a Default hereunder, should Trustees, as secured party, elect to cause any of the Trust Property to be disposed of as personal property because the same consists of a right in action or is property that can be severed from the Land or the improvements without causing structural damage thereto, Trustees may dispose of all or any part thereof in any manner now or hereafter permitted by the Uniform Commercial Code of the State of Maryland or in accordance with any other remedy provided by law. Upon demand by Beneficiary or Trustees, Grantor shall assemble all such items and make them available to the Trustees or Beneficiary at a place reasonably convenient to all parties to be designated by Trustees or Beneficiary. Any notices required under the Uniform Commercial Code with respect to the sale or other disposition of any of the Trust Property shall be deemed reasonable if mailed by Trustees to Grantor at its last known address at least five (5) days prior to disposition of the Trust Property, and, in the case of a private sale of the Trust Property, need state only that Trustees intend to negotiate such a sale.

3.7. RIGHTS OF TRUSTEES AND BENEFICIARY AT FORECLOSURE. Trustees may act hereunder and may sell and convey the Trust Property under power granted by this instrument, although Trustees have been, may now be and may hereafter be, attorneys or agents of Beneficiary in respect to the loan made by Beneficiary evidenced by the Note, or in respect to any matter of business whatsoever. Upon any sale hereunder, whether pursuant to foreclosure or power of sale or otherwise, Beneficiary may bid for and purchase the Trust Property or any part thereof without forfeiting its rights to collect any deficiency from Grantor. As part of its bid, Beneficiary may use all or part of the Indebtedness as a credit towards the purchase price.

3.8. DEFICIENCY JUDGMENT. That in the event the Trust Property is sold under foreclosure and the proceeds are insufficient to pay the total Indebtedness evidenced and secured by this instrument, Beneficiary will be entitled to a deficiency judgment against Grantor.

3.9. CERTAIN PAYMENTS BY BENEFICIARY OR TRUSTEES.

3.9.1. That upon a Default by Grantor in performance of any of the terms, covenants or conditions herein, in the Guaranty or other Loan Documents contained, Beneficiary may, at its option and whether electing to declare the whole Indebtedness due and



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0370, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

payable or not, perform the same without waiver of any other remedy, and any amount paid or advanced by Beneficiary in connection therewith, or any other costs, charges or expenses incurred in the protection of the Trust Property and the maintenance of this Deed of Trust with interest thereon at the Penalty Rate set forth in the Note shall be repayable by Grantor without demand, shall be a charge upon the Trust Property prior to any right, title to, interest in or claim thereon, attaching or accruing subsequent hereto and shall be secured by this Deed of Trust. Notwithstanding the foregoing, no such advance made by Beneficiary or Trustee shall be considered a waiver of Grantor's Default, and the Beneficiary and Trustees may, upon such Default, exercise any of its rights and remedies as set forth herein.

3.9.2. That Beneficiary, in making any payment herein and hereby authorized, in the place and stead of Grantor, relating to taxes, assessments, water rates, sewer rentals and other governmental or municipal charges, fines, impositions or liens asserted against the Trust Property, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of the bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof; or relating to any apparent or threatened adverse title, lien, statement of lien, encumbrance, claim or charge, shall be the sole judge of the legality or validity of same; or otherwise relating to any other purposes herein and hereby authorized, but not enumerated in this paragraph, may do so whenever, in its judgment and discretion, such advance or advances shall seem necessary or desirable to protect the full security intended to be created by this Deed of Trust, and provided further that in connection with any such advance, Beneficiary, at its option, may and is hereby authorized to obtain a continuation report of title prepared by a title insurance company, the cost and expense of which shall be repayable by Grantor without demand and shall be secured hereby.

3.10. SUBROGATION. That should the proceeds of the loan made by Beneficiary to Borrower, or any part thereof, or any amount paid out or advanced by Beneficiary, be used, directly or indirectly, to pay off, discharge or satisfy, in whole or in part, any prior lien or encumbrance upon the Trust Property, or any part thereof, then in addition to all other remedies available to Beneficiary, Beneficiary shall be subrogated to any additional security held by the holder of such other lien or encumbrance.

3.11. NO WAIVER. That the failure of Beneficiary to exercise the option for acceleration of maturity and/or foreclosure following any Default, or to exercise any other option granted hereunder to Beneficiary in any one or more instances, or the acceptance by Beneficiary of partial payments hereunder shall not constitute a waiver of any such Default, but such option shall remain continuously in force. Acceleration of maturity, once claimed hereunder by Beneficiary, may, at the option of Beneficiary, be rescinded by written acknowledgement to that effect by Beneficiary, but the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

3.12. INDEMNIFICATION BY GRANTOR. In the event Beneficiary acquires the Trust Property after foreclosure sale, Grantor hereby agrees to indemnify and hold Beneficiary harmless from any loss, cost or expense which Beneficiary sustains as a result of (i) selling the Trust Property for less than the Indebtedness, or (ii) any action brought against Beneficiary pursuant to or arising from Section 548 or Section 544 of the United States Bankruptcy Code, as may from time to time be amended, on the basis that the consideration paid for the Trust Property did not constitute "fair equivalent value" within the meaning of the United States Bankruptcy Code or any state fraudulent conveyance statute which may be applicable.

3.13. CUMULATIVE RIGHTS AND REMEDIES; RIGHT TO MAINTAIN SEPARATE ACTIONS. The rights and remedies herein provided are cumulative, and Beneficiary as the holder of every other obligation secured hereby may recover judgment thereon, issue execution therefore and resort to every other right or remedy available at law or in equity, without first exhausting any security and without affecting or impairing the security or any right or remedy afforded by this Deed of Trust, and no enumeration of special rights or powers by any provisions of this Deed of Trust shall be construed to limit any grant of general rights or powers, or to take away or limit any and all rights granted to or vested in Beneficiary by virtue of the laws of the State of Maryland or of the United States of America.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0371, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

3.13. APPRAISALS. Irrespective of whether a Default exists hereunder, Beneficiary shall have the right at any time and from time to time prior to full release of this Deed of Trust to require updated appraisals of the Trust Property, such appraisals to be obtained by Beneficiary at Grantor's sole cost and expense; provided, however, that Grantor shall not be obligated to pay for more than one appraisal per calendar year. Grantor shall, within fifteen (15) days of the date of demand, reimburse Beneficiary for all costs and expenses incurred in the preparation of said appraisal. Failure of Grantor to reimburse Beneficiary within the said fifteen (15) days shall be deemed a Default hereunder, and Beneficiary shall have the right to add the cost of the appraisal to the outstanding Indebtedness, in addition to all other rights and remedies hereunder.

ARTICLE 4.
Miscellaneous Provisions

4.1. SECURITY AGREEMENT. Notwithstanding the agreement and declarations herein that certain articles of property form a part of the Trust Property covered by this Deed of Trust and be appropriated to its use, to the extent that such agreement and declaration may not be effective and that any of said articles may constitute "goods" (as said term is used in the Uniform Commercial Code), Grantor executes this instrument as a "Debtor" under the Maryland Uniform Commercial Code, it being intended that this Deed of Trust shall constitute a security agreement, creating a security interest in such goods, as collateral, in Beneficiary as a secured party, all in accordance with said Uniform Commercial Code.

4.2. RELEASE, MODIFICATION AND WAIVER. Beneficiary and/or Trustees, without notice and without regard to the consideration, if any, paid therefore, and notwithstanding the existence at that time of any inferior deeds of trust or other liens thereon, may (i) release, as aforesaid, any part of the Trust Property described herein or any person liable for the Indebtedness secured hereby, or (ii) grant an extension of time on any payments of the Indebtedness secured hereby, or (iii) take other or additional security for the payment thereof, or (iv) waive or fail to exercise any right granted herein or in the Guaranty, and such acts or omissions shall not release Grantor, subsequent purchasers of the Trust Property or any part thereof, or makers, sureties or guarantors of this Deed of Trust or of the Guaranty under any covenant of this Deed of Trust or of the Guaranty, nor preclude Beneficiary from exercising any right, power or privilege herein granted or intended to be granted upon a Default then made or any subsequent Default. Beneficiary may also agree with any party obligated on the Indebtedness or having any interest in the security described herein to extend the time for payment of any part or all of the Indebtedness secured hereby, and such agreement shall not, in any way, release or impair this Deed of Trust, but shall extend the same as against the title of all parties having any interest in said Trust Property, which interest is subject to this Deed of Trust. Trustees may, at any time or from time to time, without liability therefore and without notice, upon the written request of Beneficiary and presentation of this Deed of Trust and the Note secured hereby for endorsement, execute, consent to, or join in any instrument or agreement in connection with or necessary to effect the foregoing.

4.3. LOAN AGREEMENT. The proceeds of the loan guaranteed and secured by this Deed of Trust shall be advanced pursuant to the terms and provisions of the Loan Agreement of even date between Borrower and Beneficiary, and any Default thereunder or under any of the other Loan Documents shall constitute a Default under the terms of this Deed of Trust.

4.4. FUTURE ADVANCES. Upon request of Borrower, Beneficiary, at Beneficiary's sole option prior to full release of this Deed of Trust, may make future advances to Borrower in addition to all readvances made under the Note. Such future advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

4.5. WAIVERS BY GRANTOR. That to the extent permitted by law with respect to the Indebtedness or any renewals or extensions thereof, Grantor jointly and severally waives and renounces, each for himself and family and/or its successors and assigns (as applicable), any and all homestead and exemption rights, as well as the benefit of all valuation and appraisement privileges, and stay, redemption and moratoriums, and requirements relating to



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0372, MSA_CE164_18987. Date available 07/28/2008. Printed 09/14/2016.

the marshalling of assets, under or by virtue of the constitution and laws of the State of Maryland, or any other state or of the United States, now existing or hereafter enacted.

4.6. JOINT AND SEVERAL AUTHORITY OF TRUSTEES TO ACT. That Trustees accept this Trust, when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. In the event that two or more trustees are named herein, any one or more of the trustees shall be clothed with full power to act when action hereunder is required, and the term "Trustees" shall be construed to mean "Trustee"; in the event that two or more trustees are named herein and the substitution of a trustee shall become necessary for any reason, the substitution of one or more trustees in the place of the two or more named herein shall be sufficient. Trustees shall be protected in acting upon any notice, request, consent, demand, statement, note or other paper or document believed by them to be genuine and to have been signed by the party or parties purporting to sign the same. Trustees shall not be liable for any error of judgment, nor for any act done or step taken or omitted, nor for any mistake of law or fact, nor for anything which they may do or refrain from doing in good faith, nor generally shall a Trustee have any accountability hereunder except for his/her own individual willful default.

4.7. REMOVAL AND SUBSTITUTION OF TRUSTEES. That Beneficiary may from time to time, without notice to Grantor and with or without cause, substitute a successor or successors to any Trustee named herein or acting hereunder to execute this Deed of Trust. Upon such appointment, and without conveyance to the successor Trustee, the latter shall be vested with all title, powers and duties conferred upon any Trustee herein named or acting hereunder. Each such appointment and substitution shall be made by written deed of appointment executed by Beneficiary, containing reference to this Deed of Trust and its place of record, which, when duly filed for record among the Land Records of Baltimore City, Maryland, shall be conclusive proof of proper appointment of the successor trustee. Whenever in this Deed of Trust reference is made to Trustees or Trustee, it shall be construed to mean the trustees or trustee for the time being, whether original or successor or successors in trust. All title, estate, rights, powers, trusts and duties hereunder given, appertaining to or devolving upon Trustees shall be in each of the persons from time to time constituting the Trustees, so that any action hereunder, or purporting to be hereunder by either one of the original or any successor Trustees shall for all purposes be considered to be, and shall be effective as, the action of both Trustees.

4.8. NOTICES. Any notice required or permitted by or in connection with this Deed of Trust (but without implying any duty or obligation to give a notice if not expressly required by the terms of this Deed of Trust or the other Loan Documents) shall be in writing and shall be deemed to be given if sent in accordance with the notice provisions more particularly set forth in the Guaranty and Note.

4.9. APPLICABLE LAWS. That the Trust Property being located in the State of Maryland, the laws of the State of Maryland shall strictly and absolutely govern the rights and obligations of the parties to this Deed of Trust and all other Loan Documents, and the interpretation, construction and enforceability thereof and any and all issues relating to the transactions contemplated herein (without regard to the place of contract or payment). Grantor, by execution of this Deed of Trust, hereby irrevocably consents to the jurisdiction and venue of the courts of any county in the State of Maryland (or the courts of Baltimore City, Maryland), or to the jurisdiction and venue of any United States District Court, in any action or proceeding brought by Beneficiary to enforce, construe, interpret or otherwise act upon this Deed of Trust. Grantor hereby waives trial by jury and acknowledges that any action based hereon or on any other Loan Document shall be tried by judge and not by jury. By execution hereof, Grantor acknowledges that this is a material portion of the agreement between the parties and that Beneficiary would not have entered into the Loan Documents absent this provision.

4.10. COVENANTS RUN WITH THE LAND. That all covenants hereof shall run with the Land as covenants running with the land until this Deed of Trust shall be fully released of record.

4.11. COMMERCIAL LOAN. Grantor acknowledges that the Indebtedness secured hereby is a loan to a business or commercial organization and is transacted solely for the purpose of carrying on or acquiring a business or commercial enterprise.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0373, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

4.12. TIME OF THE ESSENCE. It is specifically agreed that time is of the essence to this contract and that the waiver of the options or obligations secured hereby shall not at any time thereafter be held to be an abandonment of such rights. Notice of the exercise of any option granted to Beneficiary or Trustees herein, or in the Note secured hereby, is not required to be given.

4.13. SEVERABILITY OF PROVISIONS. That if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Deed of Trust in whole or in part, or if any provision (or any part of any provision) contained in this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Deed of Trust, but this Deed of Trust shall be construed as if such invalid, illegal or unenforceable provision (or any part thereof) had never been contained herein, but only to the extent it is invalid, illegal or unenforceable.

4.14. NO RIGHTS IN THIRD PERSONS. No entity or person not a party to this Deed of Trust shall have any benefit hereunder nor have third party beneficiary rights as a result of this Deed of Trust or any other Loan Document, nor shall any person be entitled to rely on any actions or inactions of Beneficiary or Trustees, all of which are done for the sole benefit and protection of Beneficiary.

4.15. WORD FORMS AND CAPTIONS. The captions of the various articles and sections herein are for convenience and reference only and in no way define, limit, or describe the scope or intent of this Deed of Trust.

4.16. SUCCESSORS AND ASSIGNS. All of the covenants herein contained are joint and several and shall also bind, and the benefits and advantages thereof shall also inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto (but this provision does not waive any prohibition of assignment or any requirement of consent to an assignment under the other provisions of this Deed of Trust; and any consent to any assignment shall not be deemed a consent to further assignments, each of which must be specifically obtained in writing). Whenever used, the singular shall include the plural, the plural the singular, and the use of any gender shall include all genders.

4.17. FINAL AGREEMENT. This Deed of Trust, together with all other Loan Documents executed in connection with this transaction, constitute the final and entire agreement and understanding of the parties, and any term, condition, covenant or agreement not contained herein or therein is not a part of the agreement and understanding of the parties. Neither this Deed of Trust, nor any term, condition, covenant or agreement hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

4.18. INTERCREDITOR AGREEMENT. Beneficiary and Grantor acknowledge that the Mayor & City Council of Baltimore acting by and through the Department of Housing and Community Development (the "City"), Beneficiary, and Grantor HP Bennett, LLC, have entered into an Intercreditor and Subordination Agreement dated of even date herewith (the "City Intercreditor Agreement") in order to set forth the respective lien priorities and certain other matters concerning the "Bank Loan" and the "City Loan" in connection with the "City Project" (as such terms are defined in the City Intercreditor Agreement). As such, for so long as the City Intercreditor Agreement remains in effect, Beneficiary and Grantor HP Bennett, LLC hereby agree that in the event of any inconsistency between the terms of the Loan Documents with respect to any matter discussed in the City Intercreditor Agreement, the terms of the City Intercreditor Agreement shall govern and control.

ARTICLE 5.
Assignment of Lessor's Interest in Leases (this "Assignment")

5.1 Assignment of Leases. As a condition of the Note, the Beneficiary has required the Grantor to assign to the Beneficiary each and every lease agreement by and between Grantor and a tenant (hereinafter collectively or individually, as the context may require, referred



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0374, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

to as the "Tenant" or "Tenants") for any portion of the Land, whether currently existing or hereafter entered into (hereinafter collectively or individually, as the context may require, referred to as the "Lease" or "Leases"); and the Grantor is willing to make such an assignment. Accordingly, in consideration of Beneficiary advancing funds under the Note, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby grants, transfers, and assigns to Beneficiary all Leases for all or any portion of the Trust Property, whether currently existing or hereafter entered into, together with all rents, income, and profits arising from the Lease and renewals thereof, if any, and together with all rents, income, and profits due or to become due from the Trust Property, and from all other leases for the use and occupation of the Trust Property which are now in existence or which may be executed in the future during the term of this Assignment.

5.2 Grantor's Warranties and Covenants. Grantor warrants and covenants to Beneficiary:

(1) Grantor is the sole and exclusive owner and possessor of the lessor's interest in the Lease. No rent reserved in the Lease has been anticipated or assigned. Grantor has not executed any other assignment of the Lease, or the rents, income and profits accruing from the Trust Property. Grantor has not and will not perform any acts or omit to do any acts, or execute any other instruments, which will or might prevent Beneficiary from fully exercising Beneficiary's rights under any of the terms, covenants and conditions of this Assignment.

(2) Grantor covenants to Beneficiary to observe and perform all of its obligations imposed upon it under the Lease, and not to do or permit to be done anything to impair the security thereof.

(3) The Lease is (and will be) valid and enforceable in accordance with its terms (subject only to applicable bankruptcy and insolvency laws). Such Lease has not been altered, modified, amended, terminated, nor have any of the terms and conditions thereof been waived in any manner except as heretofore disclosed to Beneficiary in writing. There are no material defaults now existing under any Lease and no state of facts now exists which, with the giving of notice or the passing of time, or both, would constitute a material event of default or default except as heretofore disclosed to Beneficiary in writing. Grantor will give prompt notice to Beneficiary of any material default under the Lease. Grantor, at its sole cost and expense, will enforce, short of termination, the performance and observance of each and every covenant and condition of the Lease by the Tenants thereunder to be kept, observed and performed. Grantor, at its sole cost and expense, will appear in and defend any and all actions growing out of, or in any manner related to, the Lease or the obligations, rights, or liabilities of Grantor or any of the Tenants thereunder.

(4) The form of any Lease hereafter entered into shall be in such form, and under such terms and conditions as shall have been previously approved by Beneficiary. Following approval by Beneficiary, no such Lease will be altered, modified, or amended in any material respect, nor will any material term or condition thereof by the Tenant to be kept, observed or performed be waived, nor will the Tenant be released from the observance and performance of any duties or obligations thereunder, without the prior written approval of Beneficiary.

(5) Grantor will execute and deliver to Beneficiary, at the request of Beneficiary, all such further assurances, assignments, and subordinations, non-disturbance and attornment agreements as Beneficiary shall from time to time require or deem necessary.

(6) Grantor is not prohibited by or under any agreement with any other person or party or under any judgment or decree, from the execution and delivery of this Assignment or from the performance of each and every covenant of Grantor hereunder. No litigation or other action has been brought or threatened by or against Grantor or any person or party claiming by, through or under Grantor, which would interfere with the right of Grantor to execute this Assignment, or to perform any or all of Grantor's duties and obligations hereunder.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0375, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

(7) Grantor shall not, without obtaining the prior written consent of Beneficiary: (i) Alter, modify, or change in any material respect the terms of the Lease, or surrender, cancel, or terminate the same; (ii) Assign the Lease other than pursuant to the provisions of the Lease, provided that Tenant shall in any event remain fully liable under the provisions of the Lease; (iii) Discount any future accruing rents; (iv) Grantor shall not accept any of the rents (other than the first (1st) month's rent) under the Lease for more than one (1) month prior to the accrual thereof. Any such modification, prepayment, assignment, cancellation or termination or other act in violation of this paragraph shall not be binding upon Beneficiary. If Beneficiary consents to any amendment or modification of the Lease or to any Lease, this Agreement shall apply to such amendment, modification or new Lease.

(8) To the best of Grantor's knowledge, no Tenant has any charge, lien or claim of offset under the Lease, or otherwise, against the rents or other charges due or to become due thereunder.

5.3 Further Agreements.

(1) So long as there shall exist no default by Grantor in the payment of any indebtedness secured hereby or in the performance of any obligation, covenant, or agreement herein or in the Note, Deed of Trust or Lease contained, Grantor shall have a license, terminable by the Beneficiary upon a Default hereunder, to collect upon, but not prior to accrual, all rents, income, and profits from the Trust Property and to hold the same in trust for the Beneficiary. Each month, provided that there is no then existing Default under the Loan Documents, Grantor may retain, use, and enjoy the same.

(2) Upon the payment in full of all indebtedness secured hereby, this Assignment shall become and be void and of no effect, but the affidavit, certificate, letter, or statement of any officer, supervisor or attorney of Beneficiary showing any part of said indebtedness to remain unpaid shall be and constitute conclusive evidence (except in an action between Grantor and Beneficiary or its assigns) of the validity, effectiveness, and continuing force of this Assignment, and any person may and is hereby authorized to rely thereon.

(3) Beneficiary shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty, or liability under the Lease, or under or by reason of this Assignment, and Grantor shall and does hereby agree to indemnify Beneficiary for and to hold Beneficiary harmless of and from any and all liability, loss or damage which it may or might incur under the Lease or under or by reason of this Assignment, and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease. Should Beneficiary incur any such liability, loss, or damage under the Lease or under or by reason of this Assignment or in the defense of any such claims or demands, the amount thereof including costs, expenses and reasonable attorneys' fees, shall be secured by the Deed of Trust and hereby, and Grantor shall reimburse Beneficiary therefore immediately upon demand, and upon the failure of Grantor so to do Beneficiary may declare all sums secured hereby immediately due and payable.

(4) Beneficiary may take or release other security; may release any party primarily or secondarily liable for any indebtedness secured hereby; may grant extensions, renewals, or indulgences with respect to such indebtedness and may apply any other security therefore held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

(5) Nothing herein contained and no act done or omitted by Beneficiary pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Beneficiary of its rights and remedies under the Deed of Trust, but this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Beneficiary under the terms thereof. The right of Beneficiary to collect the indebtedness and to enforce any other security therefore owned by it may be exercised by Beneficiary either prior to, simultaneously with, or subsequent to any action taken by it hereunder.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0376, MSA_CE164_19997. Date available 07/28/2006. Printed 09/14/2016.

(6) In the event the Note is transferred by Beneficiary to any other person or entity, Grantor covenants and agrees that all the provisions herein contained shall be applied to and inure to the benefit of the holder of the Note in the same manner and to the same extent as if it were the original assignee of the Lease.

5.4 Default. The following events shall constitute a "Default" hereunder (notwithstanding anything to the contrary contained herein or in any of the Loan Documents, Beneficiary shall not be entitled to exercise its rights and remedies under this Deed of Trust or the Loan Documents (i) until such time as Grantor is provided with the "Default Notice", and (ii) the Default has not been cured within the applicable "Cure Period", all as more particularly set forth in the Guaranty):

(1) If the Grantor fails to keep, observe or perform any covenant, agreement or obligation of Grantor contained in this Assignment; or

(2) If any representation or warranty of Grantor herein contained prove untrue or misleading in any material respect; or

(3) If any Default occurs in or under the Note, Deed of Trust or any other document given in connection with the Loan; or

(4) If, at any time during the term of the Loan, the debt service coverage ratio (defined as NOI/Annual Debt Service) for the Property shall be less than 1.20:1, measured annually based upon fiscal year-end income statements, and as calculated by Lender in Lender's reasonable discretion.

5.5 Rights of Beneficiary Upon Default. If a Default occurs, Beneficiary may at Beneficiary's option, without notice to Grantor and without in any way waiving such Default, do any one or more of the following:

(1) Upon or at any time after the occurrence of a Default, the license granted herein to the Grantor shall be automatically and immediately revoked without any requirement of notice to the Grantor or any party. Upon revocation of such license and following notification to the Tenants under the Leases by the Beneficiary that all rents are to be paid to Beneficiary, all rents shall be paid directly to the Beneficiary and not through the Grantor, it being understood that a demand by Beneficiary on any Tenant under the Leases for the payment of rent following a Default claimed by Beneficiary shall be sufficient to warrant payment by such Tenant of future rents to Beneficiary without the necessity of further consent by Grantor.

(2) Sue for or otherwise collect and receive all rents, issues and profits with respect to all or any portion of the Trust Property, with full power to make from time to time all alterations, renovations, repairs, or replacements thereto as may seem proper to Beneficiary, and to apply such rents, income, and profits to the payment of:

(a) the indebtedness secured hereby, together with all costs and attorneys' fees, in such order of priority as to any of such items as Beneficiary in its sole discretion may determine, any statute, law, custom, or use to the contrary notwithstanding,

(b) the cost of all such alterations, renovations, repairs, replacements, and expenses incident to the taking and retaining possession of the Trust Property and the management and operation thereof and keeping the same properly insured,

(c) all taxes, charges, claims, assessments, water rents, rents, and any other liens which may be prior in lien or payment to the debt hereby secured, and premiums for said insurance with interest on all such items; and

(3) Declare the total indebtedness due from Borrower to Beneficiary, and guaranteed and secured by the Deed of Trust and this Assignment, to be immediately due and payable;



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0377, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

(4) Perform any and all obligations of Grantor under the Lease, and exercise any and all rights of Grantor therein contained, as fully as Grantor could, without regard to the adequacy of security for the indebtedness hereby secured, with or without the bringing of any legal action or the causing of any receiver to be appointed by any court;

(5) Subject at all times to any separate agreement (if any) for subordination, non-disturbance and attornment, fix or modify rent with respect to all or any portion of the Trust Property;

(6) Subject at all times to any separate agreement (if any) for subordination, non-disturbance and attornment, enter upon, take possession of, lease and operate the Trust Property, without becoming a mortgagee in possession; take possession of all personal Trust Property, fixtures, documents, books, records, papers and accounts of Grantor relating thereto, and exclude the Grantor, its agents and servants, therefrom;

(7) Subject at all times to any separate agreement (if any) for subordination, non-disturbance and attornment, make, enforce, modify and/or accept the surrender of any Lease;

(8) Subject at all times to any separate agreement (if any) for subordination, non-disturbance and attornment, obtain and/or evict any Tenant under the Lease;

(9) Do all other acts which Beneficiary may deem necessary or proper to protect Beneficiary's security.

(10) The rights and remedies of Beneficiary under this Assignment are cumulative and are not in lieu of, but are in addition to, all other rights or remedies which Beneficiary shall have under the Note, Guaranty, the Deed of Trust, or any other instrument constituting security for the Note, or in law or equity, all of which rights and remedies may be exercised concurrently.

IN WITNESS WHEREOF, Grantor has signed, sealed and delivered this Deed of Trust, the day and year first hereinabove written.

WITNESS: Mary L. Brauer

HP WEST BALTIMORE, LLC

By Denmark Properties, LLC, sole member

By: [signature] (SEAL)
Name: Robert A. Griffin, Jr.
Title: Authorized Member

WITNESS: Mary L. Brauer

HP BENNETT, LLC

By Denmark Properties, LLC, sole member

By: [signature] (SEAL)
Name: Robert A. Griffin, Jr.
Title: Authorized Member

WITNESS: Mary L. Brauer

HP EDMONDSON, LLC

By Two Baltic Properties, LLC, sole member

By: [signature] (SEAL)
Name: Robert A. Griffin, Jr
Title: Authorized Agent Member



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0378, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

LIBER 10844 PAGE 379

WITNESS: PORTUGAL PROPERTIES, LLC

By: (SEAL)
Name: Robert A. Griffin, Jr.
Title: Authorized Member

STATE OF MARYLAND :
: ss
COUNTY OF Baltimore :

I HEREBY CERTIFY that on this 27th day of June, 2008, before me, the undersigned officer, personally appeared Robert A. Griffin Jr., who acknowledged himself to be the Auth. Member of Denmark Properties, LLC, sole member of HP WEST BALTIMORE, LLC, and that in such capacity, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of such entity by himself in his above-stated capacity. In witness whereof, I hereunto set my hand and official seal.

(SEAL)
Notary Public

My Commission Expires: 3/1/10

MARY L. KNAUER NOTARY PUBLIC BALTIMORE COUNTY, MD.

STATE OF MARYLAND :
: ss
COUNTY OF Baltimore :

I HEREBY CERTIFY that on this 27th day of June, 2008, before me, the undersigned officer, personally appeared Robert A. Griffin Jr., who acknowledged himself to be the Auth. Member of Denmark Properties, LLC, sole member of HP BENNETT, LLC, and that in such capacity, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of such entity by himself in his above-stated capacity. In witness whereof, I hereunto set my hand and official seal.

(SEAL)
Notary Public

My Commission Expires: 3/1/10

MARY L. KNAUER NOTARY PUBLIC BALTIMORE COUNTY, MD.

STATE OF MARYLAND :
: ss
COUNTY OF Baltimore :

I HEREBY CERTIFY that on this 27th day of June, 2008, before me, the undersigned officer, personally appeared Robert A. Griffin Jr., who acknowledged himself to be the Auth. Member of Two Baltic Properties, LLC, sole member of HP EDMONDSON, LLC, and that in such capacity, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of such entity by himself in his above-stated capacity. In witness whereof, I hereunto set my hand and official seal.

(SEAL)
Notary Public

My Commission Expires: 3/1/10

MARY L. KNAUER NOTARY PUBLIC BALTIMORE COUNTY, MD.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0379, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

STATE OF MARYLAND :
: SS
COUNTY OF Baltimore

I HEREBY CERTIFY that on this 27th day of June, 2008, before me, the undersigned officer, personally appeared [illegible], who acknowledged himself to be the [illegible] of PORTUGAL PROPERTIES, LLC, and that in such capacity, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of such entity by himself in his above-stated capacity. In witness whereof, I hereunto set my hand and official seal.

Mary L. Krauer (SEAL)
Notary Public

My Commission Expires: 3/1/10

MARY L. KRAUER NOTARY PUBLIC BALTIMORE COUNTY, MD.

I HEREBY CERTIFY, pursuant to Real Property Article Section 3-104(f), that the within instrument has been prepared by or under the supervision of the undersigned Maryland attorney.

Connie W. Jack (SEAL)
Connie Williams Jack, ESQUIRE

f:\wordfuments work\3680 Denmark Properties, LLC\3680 Deed of Trust (Indemnity).doc



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0380, MSA_CE164_19997. Date available 07/28/2008. Printed 09/14/2016.

LIBER 10844 PAGE 381

EXHIBIT "A"

DESCRIPTION OF PROPERTY

ALL THOSE PROPERTIES situate and lying in Baltimore City, Maryland, and more particularly described as follows:

[See attached nine (9) pages]

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0381, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

Chicago Title Insurance Company

SCHEDULE B – PART I
CONTINUED

File No. 08-M-11742KAN

LEGAL DESCRIPTION

TITLED IN HP WEST BALTIMORE, LLC: 197

1408 WEST BALTIMORE STREET (Tax I.D. No.: 19 14 0197 035)
Beginning for the same at a point on the north side of West Baltimore Street, said point being located westerly 60 feet 2 inches from the intersection formed by the aforementioned north side of Baltimore Street and the west side of Calhoun Street, said point also being on the line of division between 1406 and 1408 West Baltimore Street; thence running and binding along the aforementioned north side of West Baltimore Street westerly 17 feet to the line of division between 1408 and 1410 West Baltimore Street; thence leaving said north side of West Baltimore Street and running and binding along said line of division northerly 90 feet to the south side of a 10 foot alley; thence leaving said line of division and running and binding along the south side of said alley easterly 17 feet to the aforementioned line of division between 1406 and 1408 West Baltimore Street; thence leaving the south side of said alley and running and binding along said line of division southerly 90 feet to the point of beginning.
Being Lot 35, Ward 19, Section 14, Block 197, Baltimore City, Maryland.

197

1410 WEST BALTIMORE STREET (Tax I.D. No.: 19 14 0197 034)
Beginning for the same at a point on the north side of West Baltimore Street, said point being located westerly 77 feet 2 inches from the intersection formed by the aforementioned north side of West Baltimore Street and the west side of north Calhoun Street, said point also being on the line of division between 1408 and 1410 West Baltimore Street; thence running and binding along the aforementioned north side of West Baltimore Street westerly 14 feet to the line of division between 1410 and 1412 West Baltimore Street; thence leaving said north side of West Baltimore Street and running and binding along said line of division northerly 90 feet to the south side of a 10 foot alley; thence leaving said line of division and running and binding along the south side of said alley easterly 17 feet to the aforementioned line of division between 1408 and 1410 West Baltimore Street; thence leaving the south side of said alley and running and binding along said line of division southerly 90 feet to the point of beginning.
Being Lot 34, Ward 19, Section 14, Block 197, Baltimore City, Maryland.

197

1412 WEST BALTIMORE STREET (Tax I.D. No.: 19 14 0197 033)
Beginning for the same at a point on the north side of West Baltimore Street, said point being located westerly 91 feet 2 inches from the intersection formed by the aforementioned north side of West Baltimore Street and the west side of North Calhoun Street, said point also being on the line of division between 1410 and 1412 West Baltimore Street; thence running and binding along the aforementioned north side of West Baltimore Street westerly 16 feet to the line of division between 1412 and 1414 West Baltimore Street; thence leaving said north side of West Baltimore Street and running and binding along said line of division northerly 90 feet to the south side of a 10 foot alley; thence leaving said line of division and running and binding along the south side of said alley easterly 17 feet to the aforementioned line of division between 1410 and 1412 West Baltimore Street; thence leaving the south side of said alley and running and binding along said line of division southerly 90 feet to the point of beginning.
Being Lot 33, Ward 19, Section 14, Block 197, Baltimore City, Maryland.

196

1504 WEST BALTIMORE STREET (Tax I.D. No.: 19 06 0196 044A)
Beginning for the same at a point on the north side of West Baltimore Street, 66 feet wide, 29 feet westerly from the point formed by the intersection of the aforementioned north side of West Baltimore Street and the west side of North Stricker Street, 66 feet wide, said point of beginning being designated as point No. 512 as shown on the plat entitled Final Subdivision Plan, Eubie Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562, said point of beginning also being on the line of division between 1502 and 1504 West Baltimore Street, said line of division being the outside face of wall of the building located on 1502 West Baltimore Street and the extension thereof, thence leaving said point of beginning and running and binding along the aforementioned north side of West Baltimore Street south 86 degrees 49 minutes 43 seconds west 16.38 feet to a point on the line of division between 1504 and 1506 West Baltimore Street, said line of division being the centerline of the partition wall between said properties, continuing along the outside face of wall of the building located on 1506 West Baltimore Street and



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0382, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

Chicago Title Insurance Company

SCHEDULE B – PART I
CONTINUED

File No. 08-M-11742KAN

the extension thereof; thence running and binding along said line of division north 03 degrees 10 minutes 17 seconds west 74.17 feet to a point on the line of division between 1504 West Baltimore Street and 6 North Stricker Street; thence running and binding along said line of division north 87 degrees 59 minutes 32 seconds east 16.38 feet to a point on the aforementioned line of division between 1502 and 1504 West Baltimore Street; thence running and binding along said line of division south 03 degrees 10 minutes 17 seconds east 73.83 feet to the point of beginning.
Containing 1212 square feet of land, more or less.
Being known as 1504 West Baltimore Street as shown on the plat entitled Final Subdivision Plan, Eubie Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City Maryland at Plat No. 3562.

196

**1506 WEST BALTIMORE STREET** (Tax I.D. No.: 19 06 0196 044)
Beginning for the same at a point on the north side of West Baltimore Street, 66 feet wide, 45.38 feet westerly from the point formed by the intersection of the aforementioned north side of West Baltimore Street and the west side of North Stricker Street, 66 feet wide, said point of beginning being south 86 degrees 49 minutes 43 seconds west 16.38 feet from the point designated as Point No. 512 as shown on the plat entitled Final Subdivision Plan, Eubie Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562, said point of beginning also being on the line of division between 1504 and 1506 West Baltimore Street, said line of division being the centerline of the partition wall between said properties, continuing along the outside face of wall of the building located on 1506 West Baltimore Street and the extension thereof; thence leaving said point of beginning and running and binding along the aforementioned north side of West Baltimore Street south 86 degrees 49 minutes 43 seconds west 21.73 feet to a point on the line of division between 1506 and 1508 West Baltimore Street said line of division being the outside face of wall of the building located on 1508 West Baltimore Street and the extension thereof; thence running and binding along said line of division north 03 degrees 10 minutes 17 seconds west 74.61 feet to a point on the line of division between 1506 W. Baltimore Street and 1503 W. Fairmount Avenue; thence running and binding along said line of division north 87 degrees 59 minutes 32 seconds east 21.74 feet to a point on the aforementioned line of division between 1504 and 1506 West Baltimore Street; thence running and binding along said line of division south 03 degrees 10 minutes 17 seconds east 74.17 feet to the point of beginning.
Containing 1617 square feet of land, more or less.
Being known as 1506 West Baltimore Street as shown on the plat entitled Final Subdivision Plan, Eubie Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562.

196

**1508 WEST BALTIMORE STREET** (Tax I.D. No.:19 06 0196 043)
Beginning for the same at a point on the north side of West Baltimore Street, 66 feet wide, 67.11 feet westerly from the point formed by the intersection of the aforementioned north side of West Baltimore Street and the west side of North Stricker Street, 66 feet wide, said point of beginning being south 86 degrees 49 minutes 43 seconds west 38.11 feet from the point designated as Point No. 512 as shown on the plat entitled Final Subdivision Plan, Eubie Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562, said point of beginning also being on the line of division between 1506 and 1508 West Baltimore Street, said line of division being the outside face of wall of the building located on 1508 West Baltimore Street and the extension thereof; thence leaving said point of beginning and running and binding along the aforementioned north side of West Baltimore Street south 86 degrees 49 minutes 43 seconds west 16.49 feet to a point on the line of division between 1508 and 1510 West Baltimore Street, said line of division being the centerline of the partition wall between said properties and the extension thereof; thence running and binding along said line of division north 03 degrees 10 minutes 17 seconds west 74.94 feet to a point on the line of division between 1508 West Baltimore Street and 1505 West Fairmount Avenue; thence running and binding along said line of division and continuing on the line of division between 1508 West Baltimore Street and 1503 West Fairmount Avenue north 87 degrees 59 minutes 32 seconds east 16.49 feet to a point on the aforementioned line of division between 1506 and 1508 West Baltimore Street; thence running and binding along said line of division south 03 degrees 10 minutes 17 seconds east 74.61 feet to the point of beginning.
Containing 1233 square feet of land, more or less.



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0383, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

LIBER 10844 FOLIO 384

Chicago Title Insurance Company

SCHEDULE B – PART I
CONTINUED

File No. 08-M-11742KAN

Being known as 1508 West Baltimore Street as shown on the plat entitled Final Subdivision Plan, Euble Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562.

196

1510 WEST BALTIMORE STREET (Tax I.D. No.: 19 06 0196 042)
Beginning for the same at a point on the north side of West Baltimore Street, 66 feet wide, 83.60 feet westerly from the point formed by the intersection of the aforementioned north side of West Baltimore Street and the west side of North Stricker Street, 66 feet wide, said point of beginning being south 86 degrees 49 minutes 43 seconds west 54.60 feet from the point designated as Point No. 512 as shown on the plat entitled Final Subdivision Plan, Euble Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562, said point of beginning also being on the line of division between 1508 and 1510 West Baltimore Street, said line of division being the centerline of the partition wall between said properties and the extension thereof; thence leaving said point of beginning and running and binding along the aforementioned north side of West Baltimore Street south 86 degrees 49 minutes 43 seconds west 16.59 feet to a point on the line of division between 1510 and 1512 West Baltimore Street, said line of division being the centerline of the partition wall between said properties and the extension thereof; thence running and binding along said line of division north 03 degrees 10 minutes 17 seconds west 75.28 feet to a point on the line of division between 1510 West Baltimore Street and 1509 West Fairmount Avenue; thence running and binding along said line of division and continuing on the line of division between 1510 West Baltimore Street and 1505 West Fairmount Avenue north 87 degrees 59 minutes 32 seconds east 16.60 feet to a point on the aforementioned line of division between 1508 and 1510 West Baltimore Street; thence running and binding along said line of division south 03 degrees 10 minutes 17 seconds east 74.94 feet to the point of beginning.
Containing 1246 square feet of land, more or less.
Being known as 1510 West Baltimore Street as shown on the plat entitled Final Subdivision Plan, Euble Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562.

196

1512 WEST BALTIMORE STREET (Tax I.D. No.: 19 06 0196 041)
Beginning for the same at a point on the north side of West Baltimore Street, 66 feet wide, 100.19 feet westerly from the point formed by the intersection of the aforementioned north side of West Baltimore Street and the west side of North Stricker Street, 66 feet wide, said point of beginning being south 86 degrees 49 minutes 43 seconds west 71.19 feet from the point designated as Point No. 512 as shown on the plat entitled Final Subdivision Plan, Euble Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562, said point of beginning also being on the line of division between 1510 and 1512 West Baltimore Street, said line of division being the centerline of the partition wall between said properties and the extension thereof; thence leaving said point of beginning and running and binding along the aforementioned north side of West Baltimore Street south 86 degrees 49 minutes 43 seconds west 16.29 feet to a point on the line of division between 1512 and 1514 West Baltimore Street, said line of division being the centerline of the partition wall between said properties and the extension thereof; thence running and binding along said line of division north 03 degrees 10 minutes 17 seconds west 75.61 feet to a point on the line of division between 1512 West Baltimore Street and 1511 West Fairmount Avenue; thence running and binding along said line of division and continuing on the line of division between 1512 West Baltimore Street and 1509 West Fairmount Avenue north 87 degrees 59 minutes 32 seconds east 16.30 feet to a point on the aforementioned line of division between 1510 and 1512 West Baltimore Street; thence running and binding along said line of division south 03 degrees 10 minutes 17 seconds east 75.28 feet to the point of beginning.
Containing 1229 square feet of land, more or less.
Being known as 1512 West Baltimore Street as shown on the plat entitled Final Subdivision Plan, Euble Blake Place 1500 West Fairmount Avenue and 1515/1519 West Fairmount Avenue, as recorded among the land records of Baltimore City, Maryland at Plat No. 3562.

213

1521 WEST BALTIMORE STREET (Tax I.D. No.: 19 07 0213 011)
Beginning at a point on the south side of West Baltimore Street, said point being located 120 feet easterly from the intersection formed by the aforementioned south side of West Baltimore Street and the east side of South Gilmor Street, said



BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0384, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

LIBER 10844 PAGE 385

Chicago Title Insurance Company

SCHEDULE B – PART I
CONTINUED

File No. 08-M-11742KAN

point also being on the line of division between 1521 and 1523 West Baltimore Street; thence running and binding along said south side of West Baltimore Street easterly 20 feet to the line of division between 1519 and 1521 West Baltimore Street; thence leaving said south side of West Baltimore Street and running and binding along said line of division southerly 120 feet to the north side of Booth Street; thence leaving said line of division and running and binding along said north side of Booth Street westerly 20 feet to the aforementioned line of division between 1521 and 1523 West Baltimore Street; thence leaving said north side of Booth Street and running and binding along said line of division northerly 120 feet to the point of beginning.
Being Lot 11, Ward 19, Section 7, Block 213, Baltimore City, Maryland.

1527 WEST BALTIMORE STREET (Tax I.D. No.: 19 07 0213 014) 213
Beginning for the same at a point on the south side of West Baltimore Street, said point being located easterly 58 feet from the intersection formed by the south side of West Baltimore Street and the east side of South Gilmor Street, said point also being on the line of division between 1527 and 1529 West Baltimore Street; thence running and binding along the aforementioned south side of West Baltimore Street 20 feet to a point on the line of division between 1525 and 1527 West Baltimore Street; thence leaving said south side of West Baltimore Street and running and binding along said line of division southerly 120 feet to the north side of Booth Street; thence leaving said line of division and running and binding along said north side of Booth Street westerly 20 feet to the line of division between 1527 and 1529 West Baltimore Street; thence leaving said north side of Booth Street and running and binding along said line of division northerly 120 feet to the point of beginning.
Being Lot 14, Ward 19, Section 7, Block 213, Baltimore City, Maryland. 213

1529 WEST BALTIMORE STREET (Tax I.D. No.: 19 07 0213 015)
Beginning for the same at a point on the south side of West Baltimore Street, said point being located easterly 38 feet from the intersection formed by the south side of West Baltimore Street and the east side of South Gilmor Street, said point also being on the line of division between 1529 and 1531 West Baltimore Street; thence running and binding along the aforementioned south side of West Baltimore Street 20 feet to a point on the line of division between 1527 and 1529 West Baltimore Street; thence leaving said south side of West Baltimore Street and running and binding along said line of division southerly 120 feet to the north side of Booth Street; thence leaving said line of division and running and binding along said north side of Booth Street westerly 20 feet to the line of division between 1529 and 1531 West Baltimore Street; thence leaving said north side of Booth Street and running and binding along said line of division northerly 120 feet to the point of beginning.
Being Lot 15, Ward 19, Section 7, Block 213, Baltimore City, Maryland.

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0385, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

LIBER 10844 PAGE 386

TITLED IN HP BENNETT, LLC: 129

903 BENNETT PLACE (Tax I.D. No. 18 01 0129 064)

Beginning for the first on the line of the south side of Bennett Place formerly called George Street at the distance of fourteen feet west from the corner formed by the intersection of the southwest side of Fremont Street and the south side of Bennett Place and running thence westerly binding on the south side of Bennett Place fourteen feet thence southerly at right angles to Bennett Place eighty feet more or less to the south side of an alley ten feet wide laid out for the benefit of the property binding thereon thence easterly binding on the south side of said alley and parallel with Bennett Place fourteen feet and thence northerly by a straight line to the place of beginning. Subject to the annual payment of ground rent of $42.00 payable in semi-annual installments on the 1st days of April and October.

906 BENNETT PLACE (Tax I.D. No. 18 01 0129 116) 129

Beginning for the second on the north side of Bennett Place (formerly known as George Street) at the distance of 66 feet 6 inches westerly from the intersection formed by the intersection of the north side of Bennett Place and the southwest side of Fremont Street and at the southeast corner of the lot of ground which by Indenture dated December 10, 1868, was demised and leased by John Small, Jr. and others, to Daniel Harvey and recorded among the land Records of Baltimore City in Liber G.R. No. 415, folio 68 &c. which place of beginning is designed to be at the center of the partition wall between the house erected on the ground now being described and that adjoining on the west; and running thence northerly and through the center of said partition wall and at right angles with Bennett Place and continuing the same course in all 80 feet more or less to the center of an alley 10 feet wide laid by John Small, Jr. and others for the use and benefit of the property binding thereon; thence easterly pursuing the center of said alley and parallel with Bennett place 10 feet; thence southeasterly and through the center of the partition wall of the house erected on the ground now being described and that adjoining on the east 80 feet more or less to a point on the north side of Bennett Place 16 feet easterly from the place of beginning; thence westerly and binding on the north side of Bennett Place to the place of beginning. Subject to the annual payment of ground rent of $48.00 payable in semi-annual installments on the 1st days of July and January.

925 BENNETT PLACE (Tax I.D. No. 18 01 0129 075) 129

Beginning for the fifth on the line of the south side of Bennett Place formerly called George Street at the distance of one hundred and sixty eight feet westerly from the corner formed by the intersection of the southwest side of Fremont Street and the south side of Bennett Place and running thence westerly bounding on the south side of Bennett Place fourteen feet thence southerly at right angles with Bennett Place eighty feet more or less to the center of an alley ten feet wide and widened to that width by John Small Junior and William A. Dunnington for the benefit of the property binding thereon thence easterly and parallel with Bennett Place and pursuing the center of said alley fourteen feet and thence northerly by a straight line eighty feet more or less to the place of beginning. Subject to the annual payment of ground rent of $42.00 payable in semi-annual installments on the 1st days of April and October.

926 BENNETT PLACE (Tax I.D. No. 18 01 0129 106) 129

Beginning for the sixth on the north side of Bennett Place (formerly called George Street) at the distance of 192 feet 6 inches (said beginning point being sometimes incorrectly mentioned as 190 feet 6 inches) westerly from the corner formed by the intersection of the southwest side of Fremont Avenue and the north side of Bennett Place and running thence westerly binding on the north side of Bennett Place 14 feet thence northerly at right angles with Bennett Place 80 feet more or less to the center of an alley 10 feet wide laid out for the benefit of the property binding thereon thence easterly and parallel with Bennett Place and pursuing the center of the said alley 14 feet and thence southerly by a straight line 80 feet more or less to the place of beginning. Subject to the annual payment of ground rent of $42.00 payable in semi-annual installments on the 5th days of March and September.

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0386, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0387, MSA_CE164_19997. Date available 07/28/2008. Printed 09/18/2016.

129

**943 BENNETT PLACE (Tax I.D. No. 18 01 0129 084)**

Beginning for the ninth on the line of the south side of Bennett (formerly Milton) Place at the distance of two hundred ninety four feet westerly from the corner formed by the intersection of the southwest side of Fremont Avenue and the south side of Bennett Place and running thence westerly bounding on the south side of Bennett Place fourteen feet thence southerly at right angles with Bennett Place eighty feet more or less to the center of an alley ten feet wide and widened to that width by John Small, Jr. and William A. Dunnington for the benefit of the properties bounding thereon thence easterly and parallel with Bennett Place and pursuing the center of said alley fourteen feet and thence northerly by a straight line eighty feet more or less to the place of beginning. Subject to the annual payment of ground rent of $60.00 payable in semi-annual installments on the 5th days of March and September.

129

**948 BENNETT PLACE (Tax I.D. No. 18 01 0129 095)**

Beginning for the same on the line of the north side of Bennett Place at the distance of three hundred and forty-six feet six inches westerly from the corner formed by the intersection of the west side of Fremont Street and the north side of Bennett Place, and running thence westerly binding on the north side of Bennett Place fourteen feet, thence northerly at right angles with Bennett Place eighty feet to the south side of an alley ten feet wide laid out for the use of the properties binding thereon, thence easterly parallel with Bennett Place and pursuing the centre of said alley fourteen feet and thence southerly by a straight line eighty feet to the place of beginning. Subject to the annual payment of ground rent of $42.00 payable in semi-annual installments on the 1st days of April and October.

**955 BENNETT PLACE (Tax I.D. No. 18 01 0129 090)** 129

Beginning for the same on the south side of Bennett Place (formerly George Street) at a distance of 378 feet westerly from the corner formed by the intersection of the Southwest side of Fremont Avenue and South Side of Bennett Place and running thence westerly bounding on the south side of Bennett Place 14 feet thence southerly at right angles with Bennett Place 80 feet more or less to the center of an alley 10 feet wide, and widened to that width by J. Small, Jr., and William Dunnington, thence easterly parallel with Bennett Place and through the center of said alley 14 feet and thence northerly by a straight line 80 feet more or less to the place of beginning. Subject to the annual payment of ground rent of $72.00 payable in semi-annual installments on the 1st days of May and November.

**1020 BENNETT PLACE (Tax I.D. No. 18 02 0128 077)** 128

Beginning for the same on the line of the north side of Milton (now known as Bennett) Place at a point distant one hundred and forty-nine feet one and one-half inches easterly from the corner formed by the intersection of the north side of Milton Place and the east side of Arlington Avenue and running thence easterly and binding on the north side of Milton Place thirteen feet six inches; thence northerly parallel with Arlington Avenue seventy-seven feet eight inches to the south side of an alley 10 feet wide, thence westerly binding on the south side of ten foot alley with the use thereof in common with the property bounding thereon thirteen feet six inches, thence southerly parallel with Arlington Avenue seventy-seven feet eight inches to the place of beginning. Subject to the annual payment of ground rent of $60.00 payable in semi-annual installments on the 1st days of July and January.

**701 NORTH CARROLLTON AVENUE (Tax I.D. No. 16 15 0103 019)** 103

Beginning for the same thereof at the corner formed by the intersection of the east side of Carrollton Avenue and the north side of Harlem Avenue and running thence north binding on the east side of Carrollton Avenue 20 feet thence easterly parallel with Harlem Avenue 125 feet to the west side of an alley 12 feet wide there situate thence southerly binding on the west side of said alley with the use thereof in common 20 feet to the north side of Harlem Avenue 125 feet to the place of beginning.

SAVING AND EXCEPTING so much of the land described herein which was conveyed to the Mayor and City Council by Deed dated March 2, 1962 and was recorded among the Land Records of Baltimore City in Liber JFC 1241, folio 301, containing 660.0 square feet more or less, being the rear 33 foot portion of the lot known as 701 N. Carrollton Avenue.

LIBER 10844 PAGE 388

129

**907 EDMONDSON AVENUE** (Tax I.D. No. 18 01 0129 047)

Beginning for the same on the south side of Edmondson Avenue (formerly called Thompson Street) at the distance of seventy-five feet and six inches westerly from the corner formed by the intersection of the south side of Edmondson Avenue and the westerly side of Fremont Street and running thence westerly bounding on the south side of Edmondson Avenue sixty-six feet and eight inches, more or less, to the center of the division wall of the house erected on the lot now being described and the house on the lot adjoining on the west thence running southerly through the center of said division wall and continuing the same course in all ninety-eight feet nine and one half inches, more or less, to the center of a ten foot alley thence easterly through the center of said alley and parallel with Edmondson Avenue with the use of said alley in common sixty-seven feet and one-half of a foot, more or less, to the line of the west side of an alley four feet wide and thence northerly bounding on the west side of said four foot alley as now laid out and continuing the same course in all about ninety-eight feet, more or less, to the place of beginning.

**905 HARLEM AVENUE** (Tax I.D. No. 16 14 0116 025) 116

Beginning on the south side of Harlem Avenue at the distance of twenty-eight feet ten inches west from the southwest corner of Harlem Avenue and Fremont Street and at the centre of the partition wall there situate and running thence west on the south side of Harlem Avenue fourteen feet four inches to the centre partition wall there situate thence south at right angles to Harlem Avenue and through the centre of said last mentioned partition wall eighty-five feet six inches to the north side of an alley three feet wide thence northeasterly bounding on said three foot alley with use thereof and of the nine foot alley with which it communicates in common fourteen feet ten and one-fourth inches thence northerly at right angles to Harlem Avenue and through the centre of the first mentioned partition wall eighty-one feet nine inches to the place of beginning.

**907 HARLEM AVENUE** (Tax I.D. No. 16 14 0116 026) 116

Beginning on the south side of Harlem Avenue at the distance of 43'2" west from the southwest corner of Harlem Avenue and Fremont Street and at the centre of the patrician wall of the house on the lot now being described and that on the lot adjoining on the east and running thence west binding on the south side of Harlem Avenue 14'4" to the center of the partition wall of the house on the lot now being described and that on the lot next adjoining on the west thence south at right angles to Harlem Avenue and through the center of the last mentioned partition wall 82'6" to the north side of an alley 9' wide which communicates with another alley 3' wide running northeasterly into Fremont Street at a point distant 72' southeast from Harlem Avenue thence east binding on said 9' alley with the use in common both said alley 14'4" and thence north at right angles to Harlem Avenue and through the center of first mentioned partition wall 82'6" to the place of beginning.

**909 HARLEM AVENUE** (Tax I.D. No. 16 14 0116 027) 116

Beginning on the south side of Harlem Avenue at the distance of 57 feet 6 inches west from the southwest corner of Harlem Avenue and Fremont Street and at the center of the partition wall between the house erected on the lot now being described and the house next adjoining thereto on the east and running thence west binding on the south side of Harlem Avenue 14 feet 4 inches to the center of the partition wall between the house erected on the lot now being described and the house next adjoining on the west thence south at right angles to Harlem Avenue and through the center of the last mentioned partition wall 82 feet 6 inches to the north side of an alley 9 feet wide which communicates with another alley 3 feet wide running northeasterly into Fremont Street at a point distant 72 feet southeast from Harlem Avenue and thence east binding on said 9 foot alley with the use of both of said alley in common with others 14 feet 4 inches and thence north at right angles to Harlem Avenue and through the center of the first mentioned partition wall 82 feet 6 inches to the place of beginning.

**911 HARLEM AVENUE** (Tax I.D. No. 16 14 0116 028) 116

Beginning on the south side of Harlem Avenue at the distance of 71 feet 10 inches west from the southwest corner of Harlem Avenue and Fremont Street and at the centre of the partition wall there erected; and running thence west binding on the south side of Harlem Avenue 14 feet 4 inches to the centre of the partition wall there situate; thence south at right angles to Harlem Avenue and through the centre of the last mentioned partition wall 82 feet 6 inches to the north side of an alley 9 feet wide which communicates with another alley 3 feet wide; running northeasterly to Fremont Street at a point distant 72 feet southeasterly from Harlem Avenue, thence easterly binding on said 9 foot alley, with the use of both of said alleys in common with others, 14 feet 4 inches, thence north at right angles to

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0388, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0389, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

Harlem Avenue and through the centre of the first mentioned partition wall 82 feet 6 inches to the place of beginning.

**1101 HARLEM AVENUE (Tax I.D. No. 16 14 0114 001)** 114

Beginning for the same at the southwest corner or intersection of Harlem Avenue and Arlington Avenue and running thence westerly on the south side of Harlem Avenue 16 feet, 1 ½ inches, more or less to the center of the partition wall between the house on the lot now being described and the house on the lot of ground adjoining on the west and running thence southerly through the center of said partition wall in all 86 feet, 5 inches to an alley 8 feet wide there situate, extending from Arlington Avenue to Carlton Street and thence running easterly binding on said alley with the use and benefit in common 16 feet, 1 ½ inches to Arlington Avenue, and thence running northerly on Arlington Avenue, 86 feet, 5 inches to the place of beginning.

**1105 HARLEM AVENUE (Tax I.D. No. 16 14 0114 003)** 114

Beginning for the same on the line of the south side of Harlem Avenue at the distance of 32 feet 1 ½ inches westerly from the corner formed by the intersection of the south side of Harlem Avenue with the west side of Arlington Avenue and at the center of the partition wall between the house erected on the lot of ground now being described and the house erected on the lot of ground next adjoining thereto on the east, and running thence westerly binding on the south side of Harlem Avenue 16 feet to the center of the partition wall between the house erected on the lot of ground now being described and the house erected on the lot of ground next adjoining thereto on the west, thence southerly parallel with Arlington Avenue and passing through the center of the last mentioned partition wall, in all 86 feet 5 inches, to the north side of an alley 8 feet wide, thence easterly parallel with Harlem Avenue and binding on the north side of said alley, with the use thereof in common 16 feet, and thence northerly parallel with Arlington Avenue and passing thorough the center of the partition wall in this description first mentioned 86 feet 5 inches to the place of beginning. Subject to the annual payment of ground rent of $108.00 payable in semi-annual installments on the 12[th] days of June and December, which includes original annual rent of $80.00, plus an annual sub-rent in the amount of $28.00.

**1106 HARLEM AVENUE (Tax I.D. No. 16 15 0103 025)** 103

Beginning for the same on the north side of Harlem Avenue at the distance of one hundred eleven feet westerly from the corner formed by the Intersection of the north side of Harlem Avenue and the west side of Arlington Avenue and at the centre of a partition wall there being and running thence westerly binding on the north side of Harlem Avenue fourteen feet to an alley twelve feet wide thence northerly binding on said alley with the use thereof in common seventy-nine and two-sevenths feet thence easterly parallel to Harlem Avenue fourteen feet and thence southerly binding on the end of a three foot alley presently mentioned in a right angle to Harlem Avenue and through the centre of said wall so as to make the same a party wall seventy-nine and two-sevenths feet to the place of beginning. Together with the use in common of an alley three feet wide and of another alley four feet wide mentioned in a lease from James W. Knowles and wife to Henry W. Carlyle of the lot of ground adjacent to the lot of ground above described on the east said lease being dated December 18, 1874 and recorded among the Land Records of Baltimore City in Liber G.R. No. 684, folio 208. Subject to the annual payment of ground rent of $84.00 payable in semi-annual installments on the 1[st] days of May and November.

**1114 HARLEM AVENUE (Tax I.D. No. 16 15 0103 021)** 103

Beginning for the same on the line of the north side of Harlem Avenue at a point distant 177 feet 1 inch westerly from the corner formed by the intersection of the west side of Arlington Avenue and the north side of Harlem Avenue and running thence westerly binding on the north side of Harlem Avenue 13 feet 4 inches, thence parallel with Arlington Avenue 85 feet to an alley 4 feet wide, said alley running parallel with Harlem Avenue, thence easterly and binding on the south side of said alley with the use thereof in common 13 feet 4 inches, and thence southerly parallel with Arlington Avenue 85 feet to the place of beginning. Subject to the annual payment of ground rent of $60.00 payable in semi-annual installments on he 1[st] days of January and July.

TITLED IN HP EDMONDSON, LLC: 129

LIBER 10844 PAGE 390

951 BENNETT PLACE (Tax I.D. No. 18 01 0129 088)
Beginning for the same on the south side of Bennett (formerly Milton) Place at the distance of three hundred fifty feet westerly from the corner of the intersection of the southwest side of Fremont Avenue and the south side of Bennett Place and running thence westerly bounding on the south side of Bennett Place fourteen feet thence southerly at right angles with Bennett Place eighty feet more or less to the center of an alley ten feet wide and widened to that width by John Small, Jr. and William A. Dunnington for the benefit of the properties bounding thereon thence easterly and parallel with Bennett Place and pursuing the center of said alley fourteen feet and thence northerly by a straight line eighty feet more or less to the place of beginning.

1017 – 1019 EDMONDSON AVENUE (Tax I.D. No. 18 02 0128 009) 128
Beginning for the first, at a point on the south side of Edmondson Avenue said point being 128 feet 4 inches westerly from the corner formed by the intersection of the south side of Edmondson Avenue and the west side of Schroeder Street, and running thence southerly through the center of the partition wall there erected and at right angles to Edmondson Avenue, 95 feet to the north side of an alley 10 feet wide, with the use thereof in common, thence westerly parallel to Edmondson Avenue, binding ton the north side of said 10 foot alley, 15 feet 6 inches, thence northerly parallel to the first line of this description and through the center of the partition wall there erected 95 feet to the south side of Edmondson Avenue, thence easterly binding on the south side of Edmondson Avenue 15 feet 6 inches to the place of beginning.

Beginning for the second, at a point on the south side of Edmondson Avenue said point being one hundred and forty-three feet and ten inches westerly from the corner formed by the intersection of the south side of Edmondson Avenue and the west side of Schroeder Street and running thence southerly at right angles to Edmondson Avenue ninety-five feet to the north side of an alley ten feet wide with the use thereof in common thence westerly parallel to Edmondson Avenue and binding on the north side of said ten foot alley fifteen feet six and one-half inches thence northerly parallel to the first line of this description ninety-five feet to the south side of Edmondson Avenue thence easterly binding on the south side of Edmondson Avenue fifteen feet six and one-half inches to the place of beginning.

ALTA Commitment – Schedule B1-B Continued

000390

TITLED IN PORTUGAL PROPERTIES, LLC:

944 BENNETT PLACE (Tax I.D. No. 18 01 0129 097) 129
Beginning for the same on the line of the North side of Bennett Place at the distance of 318 feet, 6 inches Westerly from the corner formed by the intersection of the Southwest side of Fremont Avenue and the North side of Bennett Place; and running thence Westerly bounding on the North side of Bennett Place 14 feet; thence Northerly at right angles with Bennett Place 80 feet to the center of an alley 10 feet wide; thence Easterly parallel with Bennett Place 14 feet and passing through the center of said alley with the use thereof in common; thence Southerly by a straight line to the place of beginning.

The improvements thereon being known as 944 Bennett Place. Tax Account #18-01-0129-097.
Subject to the annual ground rent of $42.00, payable in equal semi-annual installments on the 1st days of April and October in each and every year. Lease at GR 418/84.

935 BENNETT PLACE (Tax I.D. No. 18 01 0129 080) 129
Beginning for the same on the South side of Bennett Place (formerly George Street) at the distance of two hundred thirty-eight feet Westerly from the corner formed by the South side of Bennett Place and the Southwest side of Fremont Avenue and running thence Westerly on Bennett Place fourteen feet, thence Southerly at right angles with Bennett Place eighty feet more or less to the center of a ten foot alley, thence Easterly along the center of said alley with the use thereof in common fourteen feet, and thence Northerly eighty feet more or less to the place of beginning.

The improvements thereon being known as 935 Bennett Place. Tax Account #18-01-0129-080.
Subject to the annual ground rent of $42.00, payable in equal semi-annual installments on the 1st days of April and October in each and every year. Lease at GR 398/453.

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0390, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0391, MSA_CE164_19987. Date available 07/28/2008. Printed 09/16/2016.

2008 JUL 10 AM 9:57

000126

LIBER 10844 PAGE 391

# State of Maryland Land Instrument Intake Sheet

☒ Baltimore City ☐ County:

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*

(Type or Print in Black Ink Only—All Copies Must Be Legible)

LIBER 0844 PAGE 392

| | | | |
|---|---|---|---|
| 1 Type(s) of Instruments | ☐ (Check Box if addendum Intake Form is Attached.) Deed / Deed of Trust | Mortgage / Lease | 1 Other DOT · 2 Sub Agent · 3 Other Agmt · 4 Intrcrd Agmt |
| 2 Conveyance Type Check Box | Improved Sale Arms-Length [1] | Unimproved Sale Arms-Length [2] | Multiple Accounts Arms-Length [3] · Not an Arms-Length Sale [9] |
| 3 Tax Exemptions (if applicable) Cite or Explain Authority | Recordation | | |
| | State Transfer | | |
| | County Transfer | | |

**4 Consideration and Tax Calculations**

| Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ .00 | Transfer Tax Consideration | $ |
| Any New Mortgage | $ 3,650,000.00 | X ( ) % = | $ |
| Balance of Existing Mortgage | $ | Less Exemption Amount - | $ |
| Other: | $ | Total Transfer Tax = | $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | X ( ) per $500 = | $ |
| Full Cash Value: | $ | TOTAL DUE | $ |

**5 Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|
| Recording Charge | $ 95.00 | $ 95.00 | |
| Surcharge | $ | $ | Tax Bill: |
| State Recordation Tax | $ | $ | |
| State Transfer Tax | $ | $ | C.B. Credit: |
| County Transfer Tax | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

**6 Description of Property** — SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| | See attached list | See attached list | | | ☐ (5) |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| | | | | | |

Location/Address of Property Being Conveyed (2): 34 Properties, Baltimore City, Maryland

Other Property Identifiers (if applicable): | Water Meter Account No.:

Residential ☒ or Non-Residential ☐ | Fee Simple ☒ or Ground Rent ☐ | Amount: N/A

Partial Conveyance? ☐ Yes ☒ No | Description/Amt. of SqFt/Acreage Transferred: N/A

If Partial Conveyance, List Improvements Conveyed: N/A

| | Doc. 1 | Doc. 2 |
|---|---|---|
| **7 Transferred From** — Grantor(s) Name(s) | HP West Baltimore, LLC, et al | Harlem Park Revitalization Corporation |
| Owner(s) of Record, if Different from Grantor(s) | | |
| **8 Transferred To** — Grantee(s) Name(s) | Bradford Bank | Bradford Bank |
| New Owner's (Grantee) Mailing Address | c/o 6718 Holabird Avenue, Baltimore, MD 21222 | |
| **9 Other Names to Be Indexed** — Additional Names to be Indexed (Optional) | Denmark Properties, LLC | |

**10 Contact/Mail Information** — Instrument Submitted By or Contact Person

Name: D. Sweeney
Firm: Mid-Atlantic Title Company
Address: 100 West Road, Suite 215
Towson, MD 21204 Phone: (410) 321-6075

☒ Return to Contact Person ☐ Hold for Pickup ☐ Return Address Provided

**11 IMPORTANT: BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER**

Assessment Information

☐ Yes ☒ No Will the property being conveyed be the grantee's principal residence?

☐ Yes ☒ No Does transfer include personal property? If yes, identify:

☐ Yes ☒ No Was property surveyed? If yes, attach copy of survey (if recorded, no copy required).

**Assessment Use Only – Do Not Write Below This Line**

Terminal Verification | Agricultural Verification | Whole | Part | Tran. Process Verification

Transfer Number | Date Received: | Deed Reference: | Assigned Property No.:

| Year | 20 | 20 | Geo. | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Space Reserved for County Validation

Distribution: ☐ Clerk's Office ☐ Office of Finance ☐ SDAT ☐ Preparer AOC-CC-300 (5/2007)

08-M-11742KAN

BALTIMORE CITY CIRCUIT COURT (Land Records) FAC 10844, p. 0392. MSA_CE164_13697. Date available 07/28/2008. Printed 09/14/2016.

## Addendum

State of Maryland Land Instrument Intake Sheet LIBER 10844 PAGE 393

☒ Baltimore City ☐ County: ______

*The addendum form should be used when one transaction involves more than two instruments. Each instrument should be itemized in accordance with Section No. 1 of the Intake Sheet.*

(Type or Print in Black Ink Only--All Copies Must Be Legible)

| 5 (Continued) Fees | Amount of Fees | Doc. 3 | Doc. 4 | Doc. 5 | Doc. 6 |
|---|---|---|---|---|---|
| | Recording Charge | $ 40.00 | $ 95.00 | $ | $ |
| | Surcharge | $ | $ | $ | $ |
| | State Recordation Tax | $ | $ | $ | $ |
| | State Transfer Tax | $ | $ | $ | $ |
| | County Transfer Tax | $ | $ | $ | $ |
| | Other | $ | $ | $ | $ |
| | Other | $ | $ | $ | $ |

| | | |
|---|---|---|
| 7 (Continued) Transferred From | Doc. 3 – Grantor(s) Name(s) | Doc. 4 – Grantor(s) Name(s) |
| | Harlem Park Revitalization Corporation | HP Binnell, LLC |
| | Doc. 5 – Grantor(s) Name(s) | Doc. 6 – Grantor(s) Name(s) |
| | | |
| | Doc. 3 – Owner(s) of Record, if Different from Grantor(s) | Doc. 4 – Owner(s) of Record, if Different from Grantor(s) |
| | | |
| | Doc. 5 – Owner(s) of Record, if Different from Grantor(s) | Doc. 6 – Owner(s) of Record, if Different from Grantor(s) |
| | | |
| 8 (Continued) Transferred To | Doc. 3 – Grantee(s) Name(s) | Doc. 4 – Grantee(s) Name(s) |
| | Mayor and City Council of Baltimore | Mayor and City Council of Baltimore |
| | Doc. 5 – Grantee(s) Name(s) | Doc. 6 – Grantee(s) Name(s) |
| | | |
| 9 (Continued) Other Names to be Indexed | Doc. 3 – Additional Names to be Indexed (Optional) | Doc. 4 – Additional Names to be Indexed (Optional) |
| | | |
| | Doc. 5 – Additional Names to be Indexed (Optional) | Doc. 6 – Additional Names to be Indexed (Optional) |
| | | |
| Special Instructions | Special Recording Instructions (If any) | |
| | | |

Distribution: ☐ White – Clerk's Office ☐ Pink – Office of Finance AOC-CC-300 (5/2007) ☐ Canary – SDAT ☐ Goldenrod – Preparer

08-M-11742KAN

BALTIMORE CITY CIRCUIT COURT (Land Records) FMC 10844, p. 0393, MSA_CE164_19997. Date available 07/28/2008. Printed 09/16/2016.

EXHIBIT "C"

# Harlem Park Portfolio

BALTIMORE, MD



## OFFERING MEMORANDUM



Marcus & Millichap
Real Estate Investment Services

# Harlem Park Portfolio

BALTIMORE, MD

## CONFIDENTIALITY AND DISCLAIMER

The information contained in the following Marketing Brochure is proprietary and strictly confidential. It is intended to be reviewed only by the party receiving it from Marcus & Millichap and should not be made available to any other person or entity without the written consent of Marcus & Millichap. This Marketing Brochure has been prepared to provide summary, unverified information to prospective purchasers, and to establish only a preliminary level of interest in the subject property. The information contained herein is not a substitute for a thorough due diligence investigation. Marcus & Millichap has not made any investigation, and makes no warranty or representation, with respect to the income or expenses for the subject property, the future projected financial performance of the property, the size and square footage of the property and improvements, the presence or absence of contaminating substances, PCB's or asbestos, the compliance with State and Federal regulations, the physical condition of the improvements thereon, or the financial condition or business prospects of any tenant, or any tenant's plans or intentions to continue its occupancy of the subject property. The information contained in this Marketing Brochure has been obtained from sources we believe to be reliable; however, Marcus & Millichap has not verified, and will not verify, any of the information contained herein, nor has Marcus & Millichap conducted any investigation regarding these matters and makes no warranty or representation whatsoever regarding the accuracy or completeness of the information provided. All potential buyers must take appropriate measures to verify all of the information set forth herein.

ALL PROPERTY SHOWINGS ARE BY APPOINTMENT ONLY. PLEASE CONSULT YOUR MARCUS & MILLICHAP AGENT FOR MORE DETAILS.

Marcus & Millichap
Real Estate Investment Services

# Harlem Park Portfolio

BALTIMORE, MD

## TABLE OF CONTENTS

| | |
|---|---|
| Section 1 | PRICING AND FINANCIAL ANALYSIS |
| Section 2 | PROPERTY DESCRIPTION |
| Section 3 | RENT COMPARABLES |
| Section 4 | RECENT SALES |
| Section 5 | MARKET OVERVIEW |
| Section 6 | DEMOGRAPHIC ANALYSIS |

Marcus & Millichap
Real Estate Investment Services

PRICING AND FINANCIAL ANALYSIS

# Harlem Park Portfolio

BALTIMORE, MD

Marcus & Millichap
Real Estate Investment Services

# Harlem Park Portfolio

BALTIMORE, MD

PRICING AND FINANCIAL ANALYSIS

## OFFERING SUMMARY



| | |
|---|---|
| Price | $3,000,000 |
| Down Payment | 20% / $600,000 |
| Price/Unit | $38,961 |
| Price/SF | $54.55 |
| Number of Units | 77 |
| Rentable Square Feet | 55,000 |
| Year Built | 1920 |
| Lot Size | Varies |

### Vital Data

| | |
|---|---|
| CAP Rate - Expired HUD | 9.11% |
| GRM - Expired HUD | 4.92 |
| Net Operating Income - Expired HUD | $273,401 |
| Net Cash Flow After Debt Service - Expired HUD | 13.6% / $81,794 |
| Total Return - Expired HUD | 17.7% / $106,173 |
| CAP Rate - Mark to Market | 11.97% |
| GRM - Mark to Market | 4.22 |
| Net Operating Income - Mark to Market | $359,116 |
| Net Cash Flow After Debt Service - Mark to Market | 27.9% / $167,509 |
| Total Return - Mark to Market | 32.0% / $191,888 |

### Unit Mix

| No. of Units | Unit Type | Approx. Square Feet |
|---|---|---|
| 22 | 1 Bdr 1 Bath | |
| 48 | 2 Bdr 1 Bath | |
| 5 | 3 Bdr 1 Bath | |
| 2 | 3 Bdr 2 Bath | |
| 77 | Total | 55,000 |

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

Marcus & Millichap
Real Estate Investment Services

## UNIT MIX

| No. of Units | Unit Type | Approx. Square Feet | Expired HUD Rents | Monthly Income | Mark to Market Rents | Monthly Income |
|---|---|---|---|---|---|---|
| 22 | 1 Bdr 1 Bath | | $403 - $695 | $12,788 | $850 | $15,290 |
| 48 | 2 Bdr 1 Bath | | $492 - $795 | $32,464 | $1,000 | $38,160 |
| 5 | 3 Bdr 1 Bath | | $695 - $795 | $3,775 | $1,000 | $3,975 |
| 2 | 3 Bdr 2 Bath | | $800 - $937 | $1,738 | $1,300 | $1,674 |
| 77 | TOTAL | 55,000 | | $50,765 | | $59,299 |







**Comments**

Square footage is not available
Please note: the units mix shown here does not include the office building.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

# Harlem Park Portfolio

BALTIMORE, MD

PRICING AND FINANCIAL ANALYSIS

## INCOME & EXPENSES

**Total Number of Units:** 77
**Total Rentable Area:** 55,000 SF

| Income | Expired Hud | Per Unit | Mark to Market | Per Unit |
|---|---|---|---|---|
| GROSS POTENTIAL INCOME | $609,180 | $7,911 | $711,588 | $9,241 |
| Vacancy/Collection Allowance (GPR) | 10.0% / $60,918 | $791 | 10.0% / $71,159 | $924 |
| EFFECTIVE GROSS INCOME | $548,262 | $7,120 | $640,429 | $8,317 |
| **Expenses** | | | | |
| Real Estate Taxes* | $47,473 | $617 | $47,473 | $617 |
| Insurance**** | $23,100 | $300 | $23,100 | $300 |
| Utilities** | $36,960 | $480 | $36,960 | $480 |
| Contract Services | $7,700 | $100 | $7,700 | $100 |
| Repairs & Maintenance*** | $53,900 | $700 | $53,900 | $700 |
| Payroll(Added) | $25,000 | $325 | $25,000 | $325 |
| Management Fee | 7.0% / $38,378 | $498 | 7.0% / $44,830 | $582 |
| General & Administrative | $11,550 | $150 | $11,550 | $150 |
| Reserves & Replacements | $30,800 | $400 | $30,800 | $400 |
| TOTAL EXPENSES | $274,861 | $3,570 | $281,913 | $3,653 |
| Expenses per SF | $5.00 | | $5.11 | |
| % of EGI | 50.1% | | 43.9% | |
| NET OPERATING INCOME | $273,401 | $3,551 | $359,116 | $4,664 |

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

Marcus & Millichap
Real Estate Investment Services

# Harlem Park Portfolio

BALTIMORE, MD

PRICING AND FINANCIAL ANALYSIS

## FINANCIAL OVERVIEW

### Location

943 Bennett Place
Baltimore, MD 21223

| | |
|---|---|
| Price | $3,000,000 |
| Down Payment | 20% / $600,000 |
| Number of Units | 77 |
| Price/Unit | $38,961 |
| Rentable Square Feet | 55,000 |
| Price/SF | $54.55 |
| CAP Rate - Expired HUD | 9.11% |
| CAP Rate- Mark to Market | 11.97% |
| GRM - Expired HUD | 4.92 |
| GRM- Mark to Market | 4.22 |
| Year Built | 1920 |
| Lot Size | Varies |
| Type of Ownership | Fee Simple |

### Annualized Operating Data

| Income | Expired Hud | Mark to Market |
|---|---|---|
| Gross Potential Rent | $609,180 | $711,588 |
| Gross Potential Income | $609,180 | $711,588 |
| Less: Vacancy/Deductions (GPR) | 10.0% / $60,918 | 10.0% / $71,159 |
| Effective Gross Income | $548,262 | $640,429 |
| Less: Expenses | $274,861 | $281,313 |
| Net Operating Income | $273,401 | $359,116 |
| Net Cash Flow Before Debt Service | $273,401 | $359,116 |
| Debt Service | $191,607 | $191,607 |
| Debt Coverage Ratio | 1.43 | 1.87 |
| Net Cash Flow After Debt Service | 13.6% / $81,794 | 27.9% / $167,509 |
| Principal Reduction | $24,379 | $24,379 |
| Total Return | 17.7% / $106,173 | 32.0% / $191,888 |

### Financing

FIRST TRUST DEED

| | |
|---|---|
| Loan Amount | $2,400,000 |
| Loan Type | Proposed New |
| Interest Rate | 7.0% |
| Amortization | 30 Years |

Loan information is time sensitive and subject to change. Contact your local Marcus & Millichap Capital Corporation representative.

| Expenses | | |
|---|---|---|
| Real Estate Taxes* | $47,473 | $47,473 |
| Insurance**** | $23,100 | $23,100 |
| Utilities** | $36,960 | $36,960 |
| Contract Services | $7,700 | $7,700 |
| Repairs & Maintenance*** | $53,900 | $53,900 |
| Payroll(Added) | $25,000 | $25,000 |
| Management Fee | $38,378 | $44,830 |
| General & Administrative | $11,550 | $11,550 |
| Reserves & Replacements | $30,800 | $30,800 |
| Total Expenses | $274,861 | $281,313 |
| Expenses/unit | $3,570 | $3,653 |
| Expenses/SF | $5.00 | $5.11 |
| % of EGI | 50.13% | 43.93% |

### Scheduled Income

| No. of Units | Unit Type | Approx. Square Feet | Expired HUD Rents | Monthly Income | Mark to Market Rents | Monthly Income |
|---|---|---|---|---|---|---|
| 22 | 1 Bdr 1 Bath | | $403 - $695 | $12,798 | $650 | $15,290 |
| 48 | 2 Bdr 1 Bath | | $492 - $795 | $32,464 | $1,000 | $38,160 |
| 5 | 3 Bdr 1 Bath | | $695 - $795 | $3,775 | $1,000 | $3,975 |
| 2 | 3 Bdr 2 Bath | | $800 - $937 | $1,738 | $1,300 | $1,874 |
| 77 | Total/Wtd. Avg. | 55,000 | | $50,765 | | $59,299 |

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

Marcus & Millichap
Real Estate Investment Services

## PORTFOLIO LIST

### Portfolio I

| Address | City | State | Zip | # of Units |
|---|---|---|---|---|
| 1408 West Baltimore St. | Baltimore | MD | 21223 | SFH |
| 1410 West Baltimore St. | Baltimore | MD | 21223 | 3 |
| 1412 West Baltimore St. | Baltimore | MD | 21223 | SFH |
| 1504 West Baltimore St. | Baltimore | MD | 21223 | SFH |
| 1506 West Baltimore St. | Baltimore | MD | 21223 | 3 |
| 1508 West Baltimore St. | Baltimore | MD | 21223 | 3 |
| 1510 West Baltimore St. | Baltimore | MD | 21223 | 3 |
| 1512 West Baltimore St. | Baltimore | MD | 21223 | 3 |
| 1521 West Baltimore St. | Baltimore | MD | 21223 | 3 |
| 1527 West Baltimore St. | Baltimore | MD | 21223 | 4 |
| 1529 West Baltimore St, | Baltimore | MD | 21223 | 4 |
| Properties: | 11 | Units: | | 29 |

### Portfolio II

| Address | City | State | Zip | # of Units |
|---|---|---|---|---|
| 903 Bennett Place | Baltimore | MD | 21223 | 2 |
| 906 Bennett Place | Baltimore | MD | 21223 | 2 |
| 925 Bennett Place | Baltimore | MD | 21223 | 2 |
| 926 Bennett Place | Baltimore | MD | 21223 | 2 |
| 935 Bennett Place | Baltimore | MD | 21223 | SFH |
| 943 Bennett Place | Baltimore | MD | 21223 | 2 |
| 944 Bennett Place | Baltimore | MD | 21223 | SFH |
| 948 Bennett Place | Baltimore | MD | 21223 | 2 |
| 951 Bennett Place | Baltimore | MD | 21223 | 2 |
| 955 Bennett Place | Baltimore | MD | 21223 | 2 |
| 1020 Bennett Place | Baltimore | MD | 21223 | 2 |
| 907 Edmondson Av. | Baltimore | MD | 21223 | 8 |
| 1017 Edmondson Av. | Baltimore | MD | 21223 | Office Bldg |
| Properties: | 13 | Units: | | *28 |

***Total not including office building**

### Portfolio III

| Address | City | State | Zip | # of Units |
|---|---|---|---|---|
| 905 Harlem Av. | Baltimore | MD | 21217 | 2 |
| 907 Harlem Av. | Baltimore | MD | 21217 | 2 |
| 909 Harlem Av. | Baltimore | MD | 21217 | 2 |
| 911 Harlem Av. | Baltimore | MD | 21217 | 2 |
| 1101 Harlem Av. | Baltimore | MD | 21217 | 3 |
| 1105 Harlem Av. | Baltimore | MD | 21217 | 2 |
| 1106 Harlem Av. | Baltimore | MD | 21217 | 2 |
| 1114 Harlem Av. | Baltimore | MD | 21217 | 2 |
| 701 North Carrollton Av. | Baltimore | MD | 21217 | 3 |
| Properties: | 9 | Units: | | 20 |

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

PROPERTY DESCRIPTION

# Harlem Park Portfolio

BALTIMORE, MD

Marcus & Millichap
Real Estate Investment Services

## INVESTMENT OVERVIEW

### Investment Highlights

- 78 Separately Metered Units
- 34 Properties
- Renovated Kitchens and Bathrooms
- Located Along Major Bus Lines
- Less than Two Miles from Downtown



Harlem Park is a 34-property portfolio located in the historic neighborhoods of Baltimore City. The Properties are situated in the high-density residential areas of Harlem Park and Franklin Square neighborhoods with easy access to downtown via several major arteries such as W. Franklin Street and W. Mulberry Street.

Harlem Park Portfolio consists of 77 apartment units and one office unit across 34 properties most of which are small multi-family dwellings. The office space located at 1017 Edmondson Avenue, would serve an ideal space for a management headquarters. Office space is not included in Income and Expense calculations.

Five properties are single family houses, one of which is a one-bedroom/one bath unit and the other four are three-bedroom houses: two with one bedroom and two with two bedrooms each. The rest of the properties in portfolio have unit mixes including 21 one-bedroom/one-bath units, 48 two-bedroom/one-bath units and three three-bedroom/one-bath units. One-bedroom apartments currently yield $404-$670 each, two-bedroom apartments yield $551-$795 each, and three-bedroom apartments yield $695-$800 each.

The current owner has completely renovated the properties which are currently 100 percent lead-free. All units have been updated with new kitchens and baths as well as new plumbing and electricity. Units are separately metered for electricity and gas, leaving the owner to pay for water and trash removal.

The new owner with strong managerial skills and desire has a great opportunity to bring Harlem Park properties to the new level of performance as well as stabilize within the property and increase asking rents as they are below those of the surrounding comparable properties.

Harlem Park Portfolio is a great opportunity for an investor to acquire these greatly performing recently renovated properties in the up-and-coming neighborhoods of Baltimore City. The properties can be purchased together, separately, or in offered combinations.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## PROPERTY SUMMARY

### The Offering

| | |
|---|---|
| Property | Harlem Park Portfolio |
| Property Address | 943 Bennett Place<br>Baltimore, MD 21223 |

### Site Description

| | |
|---|---|
| Number of Units | 77 |
| Year Built | 1920 |
| Rentable Square Feet | 55,000 |
| Lot Size | Varies |
| Type of Ownership | Fee Simple |

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## PROPERTY PHOTOS





This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## PROPERTY PHOTOS









This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270054

## HARLEM AVENUE









This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## BENNETT PLACE









This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## W BALTIMORE ST









This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## 8 UNIT CONVERTED SCHOOLHOUSE





This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

# Harlem Park Portfolio

BALTIMORE, MD

PROPERTY DESCRIPTION




Local Map

Regional Map




This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

Marcus & Millichap
Real Estate Investment Services

# Harlem Park Portfolio

**BALTIMORE, MD**

**PROPERTY DESCRIPTION**




**Local Map**

**Regional Map**




This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T02/0094

Marcus & Millichap
Real Estate Investment Services

# Harlem Park Portfolio

**BALTIMORE, MD**

**PROPERTY DESCRIPTION**




This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

Marcus & Millichap
Real Estate Investment Services

RENT COMPARABLES

# Harlem Park Portfolio

BALTIMORE, MD

Marcus & Millichap
Real Estate Investment Services

## RENT COMPARABLES MAP




| | |
|---|---|
| ★ | Harlem Park Portfolio |
| 1) | 906 W Franklin Street |
| 2) | 522 N Fremont Avenue |
| 3) | 1010 Edmondson Avenue |
| 4) | 502 N Arlington Avenue |
| 5) | 526 N Carrollton Avenue |
| 6) | 518 N Carrollton Avenue |
| 7) | 800 Murphy Lane |
| 8) | 645 N Calhoun Street |

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap TC270094

## AVERAGE RENTS

**Average Rents - 1 Bedroom**




This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## AVERAGE RENTS

**Average Rents - 2 and 3 Bedrooms**




This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## RENT COMPARABLES

★



Subject Property

| | |
|---|---|
| No. of Units | 77 |
| Occupancy: | |
| Year Built: | 1920 |

**Harlem Park Portfolio**
943 Bennett Place
Baltimore, MD 21223

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 1 Bdr 1 Bath | 22 | | $403 - $695 | |
| 2 Bdr 1 Bath | 48 | | $492 - $795 | |
| 3 Bdr 1 Bath | 5 | | $695 - $795 | |
| 3 Bdr 2 Bath | 2 | | $800 - $937 | |
| Total/Avg | 77 | 55,000 | $702 | $0.92 |

---

1



| | |
|---|---|
| No. of Units | 1 |
| Occupancy: | N/A |
| Year Built: | 1920 |

906 W Franklin Street
Baltimore, MD 21223

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 3 Bdr 1.5 Bath | 1 | 1,800 | $1,400 | $0.78 |
| Total/Wtd. Avg. | 1 | 1,800 | $1,400 | $0.78 |

**Comments**
Three-bedroom/one-and-a-half-bath townhouse in Baltimore City minutes from Harbor. House features new kitchen appliances, washer and dryer, cable and phone hook up, finished basement and private yard.

---

2



| | |
|---|---|
| No. of Units | 1 |
| Occupancy: | N/A |
| Year Built: | 1999 |

522 N Fremont Avenue
Baltimore, MD 21201

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 3 Bdr 2 Bath | 1 | 1,300 | $1,500 | $1.15 |
| Total/Wtd. Avg. | 1 | 1,300 | $1,500 | $1.15 |

**Comments**
Three-bedroom/two-bath end unit townhouse in a Community Heritage Crossing. House features unfinished basement, central HVAC, open floor plan, seperate family and dining rooms.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap TO270094

## RENT COMPARABLES

3



| | |
|---|---|
| No. of Units | 3 |
| Occupancy: | N/A |
| Year Built/Renovated: | 1900 |

1010 Edmondson Avenue
Baltimore, MD 21223

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 1 Bdr 1 Bath | 1 | 1,100 | $850 | $0.77 |
| Total/Wtd. Avg. | 1 | | $850 | $0.77 |

Comments
One-bedroom/one-bath condo unit in a townhouse. Apartment features fireplace.

4



| | |
|---|---|
| No. of Units | 3 |
| Occupancy: | N/A |
| Year Built/Renovated: | 1920 |

502 N Arlington Avenue
Baltimore, MD 21223

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 3 Bdr 2 Bath | 1 | 1,200 | $1,000 | $0.83 |
| Total/Wtd. Avg. | 1 | | $1,000 | $0.83 |

Comments
Three-bedroom/two-bath unit in a townhouse.

5



| | |
|---|---|
| No. of Units | 3 |
| Occupancy: | N/A |
| Year Built/Renovated: | 1920 |

526 N Carrollton Avenue
Baltimore, MD 21223

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 1 Bdr 1 Bath | 2 | 825 | $800 | $0.97 |
| 2 Bdr 1 Bath | 1 | 900 | $1,000 | $1.11 |
| Total/Wtd. Avg. | 3 | | $900 | $1.02 |

Comments
One-bedroom/one-bath and two-bedroom/one-bath units for rent in a townhouse. Apartments feature washer and dryer in unit, refrigerator, stove and open floor plans.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap TD270004

## RENT COMPARABLES

6



518 N Carrollton Avenue
Baltimore, MD 21223

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 1 Bdr 1 Bath | 1 | 725 | $750 | $1.03 |
| Total/Wtd. Avg. | 1 | | $750 | $1.03 |

No. of Units 3
Occupancy: N/A
Year Built/Renovated: 1920

Comments
One-bedroom/one-bath unit in a townhouse.

---

7



800 Murphy Lane
Baltimore, MD 21201

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 3 Bdr 2 Bath | 1 | 1,408 | $1,400 | $0.99 |
| Total/Wtd. Avg. | 1 | 1,408 | $1,400 | $0.99 |

No. of Units 1
Occupancy: N/A
Year Built/Renovated: 2002

Comments
Traditional style three-bedroom/two-bath townhouses built in 2002 on the former site of The Murphy Homes Public Housing Projects.

---

8



645 N Calhoun Street
Baltimore, MD 21217

| Unit Type | Units | SF | Rent | Rent/SF |
|---|---|---|---|---|
| 2 Bdr 1 Bath | | 1,000 | $900 | $0.90 |
| 2 Bdr 1 Bath | | 1,100 | $1,000 | $0.91 |
| Total/Wtd. Avg. | | | $950 | |

No. of Units
Occupancy: N/A
Year Built/Renovated: 1920

Comments
Updated units in a multifamily townhouse.' Apartments are renovated and now feature hardwood floors, full kitchens with new dishwashers, washer and dryer in unit.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

RECENT SALES

# Harlem Park Portfolio

BALTIMORE, MD

Marcus & Millichap
Real Estate Investment Services

## RECENT SALES MAP




- ★ Harlem Park Portfolio
- 1) 717-719 N Carrollton Avenue
- 2) 201 N Carey Street
- 3) 1913 Druid Hill Avenue
- 4) 15 W Madison Street
- 5) 797 Carroll Street
- 6) 211 W Lanvale Street

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## PRICE PER SF AND PRICE PER UNIT

### Average Price per Square Foot




### Average Price per Unit




This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## RECENT SALES

★ 

Subject Property

**Harlem Park Portfolio**
943 Bennett Place
Baltimore, MD 21223

| | |
|---|---|
| No. of Units: | 77 |
| Year Built: | 1920 |
| Sale Price: | $3,000,000 |
| Price/Unit: | $38,961 |
| Price/SF: | $54.55 |
| CAP Rate: | 9.11% |
| GRM: | 4.92 |

| Units | Unit Type |
|---|---|
| 22 | 1 Bdr 1 Bath |
| 48 | 2 Bdr 1 Bath |
| 5 | 3 Bdr 1 Bath |
| 2 | 3 Bdr 2 Bath |

---

1 

Close of Escrow: 08/22/2011

717-719 N Carrollton Avenue
Baltimore, MD 21217

| | |
|---|---|
| No. of Units: | 6 |
| Year Built: | 1920 |
| Sale Price: | $490,000 |
| Price/Unit: | $81,667 |
| Price/SF: | $59.50 |

| Units | Unit Type |
|---|---|
| 6 | 1 Bdr 1 Bath |

Comments
Two three-story townhomes next to each other were sold for a redevelopment project.

---

2 

Close of Escrow: 5/14/2012

201 N Carey Street
Baltimore, MD 21223

| | |
|---|---|
| No. of Units: | 3 |
| Year Built: | 1900 |
| Sale Price: | $41,000 |
| Price/Unit: | $13,667 |

| Units | Unit Type |
|---|---|
| 1 | 1 Bdr 1 Bath |
| 2 | 2 Bdr 1 Bath |

Comments
Three-unit townhouse in Franklin Square. Each unit occupies separate floor, fourth unit could be arranged in a basement. Property is located near major commuter routes.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## RECENT SALES

3



Close of Escrow: 6/06/2012

1913 Druid Hill Avenue
Baltimore, MD 21217

| | |
|---|---|
| No. of Units: | 3 |
| Year Built: | 1920 |
| Sale Price: | $90,000 |
| Price/Unit: | $30,000 |
| Price/SF: | $39.03 |

| Units | Unit Type |
|---|---|
| 3 | 2 Bdr 1 Bath |

**Comments**
Renovated row house with three-bedroom/one bath units and full storage basement. Units feature new paint and new flooring. Utilities are separately metered; tenant pays all utilities including electricity, gas, water, sewer and trash removal.

4



Close of Escrow: 4/02/2012

15 W Madison Street
Baltimore, MD 21201

| | |
|---|---|
| No. of Units: | 8 |
| Year Built: | 1900 |
| Sale Price: | $376,000 |
| Price/Unit: | $47,000 |
| Price/SF: | $46.89 |

| Units | Unit Type |
|---|---|
| 3 | Studio 1 Bath |
| 5 | 1 Bdr 1 Bath |

**Comments**
The building is an eight-unit multi-family property. Units feature hardwood floors, high ceilings, many preserved details from original building. Electric and gas are separately metered and paid by the tenant.

5



Close of Escrow: 3/28/2012

797 Carroll Street
Baltimore, MD 21230

| | |
|---|---|
| No. of Units: | 5 |
| Year Built: | 1900 |
| Sale Price: | $220,966 |
| Price/Unit: | $44,193 |
| Price/SF: | $76.72 |

| Units | Unit Type |
|---|---|
| 5 | 1 Bdr 1 Bath |

**Comments**
Five-unit multi-family property features central air conditioning, electric heated hot water, electric operated heat pumps. Tenants pay separately metered utilities.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap T0270094

## RECENT SALES

6



Close of Escrow: 11/08/2011

211 W Lanvale Street
Baltimore, MD 21217

| | |
|---|---|
| No. of Units: | 8 |
| Year Built: | 1900 |
| Sale Price: | $250,000 |
| Price/Unit: | $31,250 |
| Price/SF: | $38.88 |

| Units | Unit Type |
|---|---|
| 8 | 1 Bdr 1 Bath |

**Comments**

Eight-unit multi-family property comprised of all one-bedroom/one-bath units in Bolton Hill. Property hasTen off-street parking spaces are available.

This information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information. References to square footage or age are approximate. Buyer must verify the information and bears all risk for any inaccuracies. Marcus & Millichap Real Estate Investment Services is a service mark of Marcus & Millichap Real Estate Investment Services of Washington, D.C. © 2012 Marcus & Millichap TB270094

EXHIBIT "D"

# CORPORATE CHARTER APPROVAL SHEET

** EXPEDITED SERVICE** ** KEEP WITH DOCUMENT **

DOCUMENT CODE 4D BUSINESS CODE ______

\# ______________

Close ______ Stock ______ Nonstock ______

P.A. ______ Religious ______

Merging (Transferor) ______________

1000362006354478

ID # W15823255 ACK # 1000362006354478
PAGES: 0003
BALTIMORE HARLEM PARK INVESTMENT LLC

04/21/2014 AT 10:30 A WO # 0004294475

Surviving (Transferee) ______________

New Name ______________

FEES REMITTED

| | |
|---|---|
| Base Fee: | 100 |
| Org. & Cap. Fee: | |
| Expedite Fee: | 50 |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| ____ Certified Copies | |
| Copy Fee: | |
| ____ Certificates | |
| Certificate of Status Fee: | |
| Personal Property Filings: | |
| Mail Processing Fee: | |
| Other: | |
| TOTAL FEES: | 150 |

____ Change of Name
____ Change of Principal Office
____ Change of Resident Agent
____ Change of Resident Agent Address
____ Resignation of Resident Agent
____ Designation of Resident Agent and Resident Agent's Address
____ Change of Business Code

____ Adoption of Assumed Name

____ Other Change(s)

Credit Card ✓ Check ______ Cash ______

______ Documents on ______ Checks

Approved By: [signature]

Keyed By: ______________

COMMENT(S):

Code ______________

Attention: ______________

Mail: Name and Address
Barry Cui
2841 Hartland Rd
#201
Falls Church VA 22043

CUST ID:0003077895
WORK ORDER:0004294475
DATE:04-24-2014 05:46 PM
AMT. PAID:$150.00

N

# BALTIMORE HARLEM PARK INVESTMENT LLC

## A MARYLAND LIMITED LIABILITY COMPANY

## ARTICLES OF ORGANIZATION

The undersigned, with the intention of creating a Maryland Limited Liability Company files the following Articles of Organization:

FIRST: The name of the Limited Liability Company (which is hereinafter called the "LLC") is:

**BALTIMORE HARLEM PARK INVESTMENT LLC**

SECOND: The purpose for which the LLC is filed is as follows:

To engage in real estate investment and management.

To acquire and trade the good will, properties, rights, franchises, contract and assets of other persons, firms, associations or corporations, and to pay for the same in cash, capital interests or bonds, of the LLC, or otherwise.

To borrow money for any of the purposes of the LLC and to issue bonds, notes or other obligations or any nature, and to secure payment of monies borrowed by mortgage or pledge or conveyance or assignment in trust of the whole or any part property of the LLC, real and personal, and to sell, pledge or otherwise dispose of such bonds, notes or other obligations of the LLC for its LLC's purposes.

To do any activity not prohibited by law for a LLC in Maryland.

THIRD: The address of the LLC in Maryland is 9912 WILLOW TREE TER, ROCKVILLE, MD 20850.

FOURTH: The resident agent of the LLC in Maryland is HAIYI HUANG, whose address is 9912 WILLOW TREE TER, ROCKVILLE, MD 20850.

CUST ID:0003077895
WORK ORDER:0004294475
DATE:04-24-2014 05:46 PM
AMT. PAID:$150.00

FIFTH: The initial members of the LLC are:

| NAME | ADDRESS |
|---|---|
| PINEHILLS PROPERTIES LLC | 1960 Gallows Rd #110, Vienna, VA 22182 |
| ZTY INVESTMENT LLC | 1960 Gallows Rd #220B, Vienna, VA 22182 |
| 495 PROPERTIES LLC | 8800 Mirador Pl, McLean, VA 22102 |
| SGL HOLDINGS LLC | 2 Wisconsin Cir #700, Chevy Chase, MD 20815 |

Haiyi Huang, Authorized Person

Haiyi Huang, Resident Agent
I hereby consent to my designation in this document.

Filing party's return address:
Barry P. Cui, CFP, EA
2841 Hartland Rd, Ste 201
Falls Church, VA 22043
Phone: (703) 620-0977
Fax: (888) 502-3934

EXHIBIT "E"

LOAN PROJECT:
HARLEM PARK PORTFOLIO:

# PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALES AGREEMENT ( "Agreement") is entered into and is effective as of April 23, 2014, by and between Ruby Jude City, LLC, A Maryland Limited Liability Company, ("Seller") with its principal place of business at 5208 Westwood Drive, Bethesda, Maryland 20816, and Baltimore Harlem Park Investment, LLC a Maryland Limited Liability Company with its principal place of business at 2 Wisconsin Circle Suite 700, Chevy Chase, Maryland 20815 (the "Purchaser"), for the sale of all rights, title and interest in a Maryland Limited Liability Company better known as Ruby Jude City, LLC, (the "Company") and more specifically the assets of said Company including but not limited to the following:

(1) The Indemnity Deed of Trust and Security Agreement and Assignment of Lessor's Interest in Leases as more specifically set forth in Exhibit A attached hereto and incorporated by reference herein and found in the Land Records of Baltimore City in Libber 10844 folio 361 et seq.;

(2) An Inter-creditor and Subordination Agreement found in the Land Records of Baltimore City in Libber 10844, folio 416 et seq. and more specifically set forth in Exhibit B attached hereto and incorporated by reference herein.

(3) A Promissory Note initially characterized as a Rehabilitation Loan and then at the expiration of the rehab period as specified in said Note, Note was thenceforth converted to a Permanent Loan. The documents and the interests they create shall henceforth be referred to as "the loan instruments" and are more specifically set forth in Exhibit C attached hereto and incorporated by reference herein.

(4) A Construction Loan and Security Agreement and as are more specifically set forth in Exhibit D attached hereto and incorporated by reference herein.

(5) A Guaranty of Payment and Performance Agreement as is more specifically set forth in Exhibit E attached hereto and incorporated by reference herein.

(6) A Subordination Agreement as is more specifically set forth in Exhibit F attached hereto and incorporated by reference herein.

(7) Aforesaid Note and Indemnity Deed of Trust is secured by a portfolio of residential properties located in Baltimore Maryland and better identified as the "Harlem Park Portfolio". This portfolio of residential properties purports to consist of 71 residential units (30 properties or houses) that are currently owned and controlled by the Mortgagor as specified herein in the Indemnity Deed of Trust. An undetermined number of the residential properties are vacant at the time of this Agreement's ratification. Said portfolio is more specifically set forth in Exhibit G attached hereto and incorporated by reference herein.

(8) Not specifically named but included in said sale is all right, title and interest in any other liens, judgments, debts, or obligations of any nature or kind that are currently owned by or subject to the rights of the Seller.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants herein contained and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto mutually agree as follows:

Section 1. Sale and Consideration. Seller hereby agrees to sell and assign to Purchaser upon payment by Purchaser of the Purchase Price (as defined in below), and Purchaser hereby agrees to purchase from Seller, on the Closing Date (as defined in Section 2 below), all right, title and interest in Ruby Jude City LLC, a Maryland Limited Liability Company. In addition to said rights, title and interest in the assets of Ruby Jude City LLC and as more fully specified in items (1) thru (8) above; are the servicing rights, assignment of rents, and all other benefits incident to the ownership of the assets of said Ruby Jude City, LLC. The Purchase Price for the purchase of Ruby Jude City LLC as specifically defined above, shall be Seven Hundred and Fifty Thousand Dollars ($ 750,000.00) (the "Purchase Price").

EARNEST MONEY DEPOSIT: The Purchaser shall pay an earnest money deposit in the amount of Ten Thousand Dollars ($ 10,000.00) which, per the instruction of the Seller, has been placed in the Attorney Trust Account of M. Arnold Politzer, Attorney for the Purchaser. Proof of said funds on hand shall be made available to the Seller upon request.

Section 2. Closing and Due Diligence End Date. The Due Diligence End Date for the Sale shall be as of close of business on May 6, 2014. **However, should the seller provide the Buyer with a reasonable degree of disclosure, the fact that it has received a bona fide competing offer that it finds acceptable on but not before Friday May 2, 2014, The Buyer shall have till 12:00 p.m. noon on Monday May 5th, to terminate the remainder of the due diligence period and either terminate the contract at that point or agree to complete the purchase on or before May 6th, with no remaining contingencies. The Closing Date for the Sale shall be the date on which the balance of said Purchase Price is paid to Seller; said payment must be made by a wire transfer which must be received and cleared on or before May 6th, 2014. In the event that the Seller does not put the Buyer on notice within the time specified that it has received an acceptable offer from a third party, then the due diligence period shall otherwise end by close of business on May 6th, and closing shall occur on or before May 9th.**

Section 3. Due Diligence Period The Loan Instruments are being sold " As is" effective upon the expiration of the due diligence period but subject to the rights of the Purchaser to conduct a due diligence analysis of all the loan documents being presented and assigned herein; additionally to be reviewed and where necessary provided within a reasonable time during the due diligence period is: all information provided to date regarding the collateral for the loan, which is believed to be a total of 71 rental units (30 houses or properties) in Baltimore, Maryland in various locations. Said collateral is better identified in the " Harlem Park Portfolio Offering Memorandum" which is offered for sale through Marcus and Millichap Realtors; records of construction draws and disbursements; the full payment records maintained by the lender throughout the history of the loan detailing all payments made on said loan; All charges of any nature assessed by the lender against the borrower and/or the guarantors including all matters in any way related to the loan documents specified herein or the collateral securing said loan instruments; copies of any and all legal filings and pleadings initiated to date as well as any answers or responses made by or on behalf of the borrower and guarantors. Further; to the reasonable extent that the Seller is able to secure from either Bradford Federal Savings and Loan; M and T Bank; and /or FDIC any and all records of disbursements made to the borrower; the nature of said disbursements; and any documentation available to accompany those disbursements including but not limited to draw schedule; request for specific draws, reports of the bank's inspector whose job it was to inspect work prior to approving the draw; and any other data or information which may be helpful to the purchaser in evaluating the collateral which secures the loan documents referenced herein.

Further, it is understood that at the current time the day to day operation of the 71 units (30 properties or houses) representing collateral for the loan is managed by Robert Griffin, the guarantor on the loan and principal owner of Progressive Property Incorporated. Progressive Property

Incorporated is believed to be the assignee of the ownership of the properties representing the Harlem Park Property Portfolio. To the extent possible, the Seller will provide purchaser's counsel with a summary of the transactions that have taken place in regard to the referenced collateral to better enable counsel to identify and be aware of any individuals and/or entities who may have some interest in either the properties, or the liens and judgments against the properties, or other interests such as City Agencies that have been or are currently involved in actions related to the properties themselves.

The seller will make available to the Purchaser and/or its agents at reasonable times and with reasonable notice such information or access to appropriate individuals who can provide such information as the Purchaser reasonably has the right to review prior to the end of the due diligence period. Prior to but no later than the expiration of the due diligence period which has been previously defined as the close of business on May 6, 2014, **(subject to the conditions stated above as to Notice being given by the Seller to the Buyer of an Acceptable competing bona fide offer)** the Purchaser shall either inform the Seller that it is satisfied with the results of its due diligence and will proceed to settlement which must be on or before May 9, 2014; or, the Purchaser no later than the expiration of the due diligence period must convey to the Seller, or its duly appointed agent, in writing it's intent to withdraw from said Agreement and in doing so the Agreement shall then be considered null and void and of no further import. In that event, the Seller shall agree to release the Purchaser's funds held in Escrow by the Purchaser's Counsel.

Should the Purchaser indicate in writing to the Seller or its agent on or before the expiration of the due diligence period that it will proceed with settlement, or should it not make any response at all to the Seller, then in either event the Purchaser shall have been considered to waive any rights it may have in rescinding the contract and the deposit is considered non-refundable and due the seller in the event that the property is not purchased within the time period specified herein.

Section 4. Representations, Warranties and Covenants of Seller. Seller represents, covenants and warrants to Purchaser, the following with respect to the aforesaid Assets of the Seller as of the Closing Date:

(a) As of the Closing Date, no Evidence of Indebtedness or Security Instrument is assigned or pledged, and Seller is the owner of record thereof and has good and marketable title thereto, without any basis for forfeiture thereof, and Seller is the sole owner and holder of the Loan free and clear of any and all liens, pledges, charges, or security interests of any nature and has full right and authority, subject to no interest or participation of, agreement with, or approval of any other party, to sell, assign and transfer the same pursuant to this Agreement. The transfer, assignment and delivery of all documents in accordance with the terms and conditions of this Agreement shall vest in Purchaser all rights as owner free and clear of any and all claims, charges, defenses, offsets and encumbrances of any kind or nature whatsoever, including but not limited to those of Seller.

(b) Seller is duly organized and in good standing under the laws of the state of its organization. Seller has all requisite organizational power and authority to own the Loan and to enter into and perform its obligations under this Agreement.

(c) This Agreement was executed by an officer of Seller duly authorized to do so.

(d) No consent, approval, authorization or order of any court or governmental agency, instrumentality or body is required for the execution, delivery and performance by Seller of, or compliance by Seller with, this Agreement or the transactions contemplated hereby, or if required, such approval has been obtained prior to the date of execution hereof.

(e) Seller is solvent at the time of transfer of the Loan pursuant hereto, and will not be rendered insolvent by such transfer. The Purchase Price is fair consideration, and Seller is not making the sale with the intention of hindering, delaying or defrauding any of its creditors.

(f) There is no litigation, proceeding, claim, demand or governmental investigation pending or, to the knowledge of Seller, threatened, nor is there any order, injunction or decree outstanding against or relating to Seller which could materially impair the ability of Seller to

perform its obligations hereunder; nor does Seller know of any material basis for any such litigation, proceeding, claim or demand or governmental investigation. Seller is not in default in any material respect with respect to any order of any court, governmental authority or arbitration board or tribunal to which Seller is a party or is subject, and to Seller's knowledge, Seller is not in violation of any laws, ordinances, governmental rules or regulations to which it is subject, which such default or violation might materially and adversely affect any of its assets or result in material cost or liability to Purchaser.

Section 5. Representations, Warranties and Covenants of Purchaser. Purchaser represents, covenants and warrants to Seller the following as of the Closing Date:
(a) Purchaser is duly organized and in good standing under the laws of the state of its organization. Purchaser has all requisite organizational power and authority to own the Loan and to enter into and perform its obligations under this Agreement.
(b) This Agreement was executed by an officer of Purchaser duly authorized to do so.
(c) No consent, approval, authorization or order of any court or governmental agency, instrumentality or body is required for the execution, delivery and performance by Purchaser of or compliance by Purchaser with this Agreement or the transactions contemplated hereby, or if required, such approval has been obtained prior to the date of execution hereof.
(d) Purchaser is solvent at the time of transfer of the Loans pursuant hereto, and will not be rendered insolvent by such transfer. The Purchase Price is fair consideration, and Purchaser is not purchasing the Loans with the intention of hindering, delaying or defrauding any of its creditors.
(e) There is no litigation, proceeding, claim, demand or governmental investigation pending or, to the knowledge of Purchaser, threatened, nor is there any order, injunction or decree outstanding against or relating to Purchaser which could materially impair the ability of Purchaser to perform its obligations hereunder; nor does Purchaser know of any material basis for any such litigation, proceeding, claim or demand or governmental investigation. Purchaser is not in default in any material respect with respect to any order of any court, governmental authority or arbitration board or tribunal to which Purchaser is a party or is subject, and to Purchaser's knowledge, Purchaser is not in violation of any laws, ordinances, governmental rules or regulations to which it is subject, which such default or violation might materially and adversely affect its purchase of the Loans or result in material cost or liability to Seller.

Section 6. Deliverables. With respect to the loans which are included among the assets of the Seller, the Seller shall deliver to Purchaser, or its designee as applicable, the following items:
(a) The original note endorsed without recourse (except as set forth herein or in any amendment or addenda hereto), and any modifications or amendments thereto and all intervening endorsements and allonges, or lost note affidavits;
(b) A copy of the Security Instruments with evidence of recording thereon; and
(c) The original unrecorded assignments of the Security Instruments in recordable form along with copies of assignments of record with evidence of recording thereon, or lost assignment affidavits, for any intervening assignments of the Security Instrument.

If any of the above items ("(a)"through "(c)") are in the physical possession of a bailee, the requirements of this Section as to those items shall be deemed met by a written communication to the bailee by Seller informing said bailee that the items are held for the benefit of Purchaser from and after the Closing Date.

Section 7. Servicing of Mortgage Loan(s). Seller shall undertake, or with Purchaser's consent, cause a sub-servicer to undertake, the servicing of the Loans from the Closing Date to the date of servicing transfer date for and on behalf of Purchaser in accordance with all applicable federal, state and local laws, rules and regulations using the same standard of care Seller would exercise for Loans owned for Seller's own account. Any payments on the Loans or proceeds from the Assignment of Rents received by Seller on or after the Settlement Date shall be



BM | [illegible]
[illegible]

forwarded to the Purchaser no later than five (5) business days after receipt thereof. Purchaser acknowledges and agrees that any amounts listed as "Suspense" funds (or any other designation for unapplied funds) on the Loan accounting documentation provided to Purchaser will be regarded as funds received from the borrowers, Purchaser will reflect those sums as a credit to the borrowers, and Purchaser or its designated servicer or sub-servicer will actually apply those sums to the borrowers account if an event, including without limitation, reinstatement or full payoff of the loan, by operation of law or contract requires the application of these sums. Both Purchaser and Seller agree that any funds received by or on behalf of the borrowers and held for the purpose of paying future insurance premiums or taxes are funds held for the benefit of the borrowers on the Loans and will be treated as such. After such servicing transfer date, the servicing of the Loans shall be undertaken for and on behalf of Purchaser by ______________________ (the "Servicer") with its principal place of business at ______________________ Purchaser shall be solely responsible for the actions and compliance of the Servicer while servicing the Loan, including but not limited to, delivery of the Notice of Service of Transfer ("Hello Letter") pursuant to the Federal Real Estate Settlement Procedures Act. Purchaser shall, at its cost, immediately after the Closing Date, (i) notify the appropriate court officer and all counsel of record in each pending proceeding (which proceedings include, but are not limited to, actions for foreclosure or proceedings in bankruptcy) of the transfer of the Loans from Seller to Purchaser, (ii) file pleadings to substitute counsel (unless said counsel has agreed to represent Purchaser in the proceedings at Purchaser's expense), and (iii) remove Seller as a party in pending proceedings and substitute Purchaser as the real party in interest. Purchaser shall not, after Closing Date, continue or commence any pending proceeding in the name of Seller for any period of time whatsoever, and shall indemnify, defend and hold harmless Seller for any and all liability, costs and damages arising from, or related to, Purchaser's failure to comply with this obligation. On and after the Closing Date, Purchaser shall have the sole responsibility for the direction and strategy of pending proceedings, at Purchaser's expense.

Section 8. Time and Binding Effect. Time shall be of the essence with regard to this Agreement. This Agreement shall inure to and be binding upon the respective heirs, representatives, successors and assignees of the parties hereto.

Section 9. Governing Law, Venue and Jurisdiction. THIS AGREEMENT SHALL BE CONSTRUED AND GOVERNED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MARYLAND. VENUE FOR ANY LITIGATION ARISING UNDER THIS AGREEMENT OR ITS SUBSEQUENT PERFORMANCE SHALL BE BALTIMORE CITY, MARYLAND. ANY LITIGATION BETWEEN THE PARTIES ARISING FROM THIS AGREEMENT SHALL ONLY BE BROUGHT IN BALTIMORE CITY, MARYLAND AND THE PARTIES HEREBY AGREE TO SUCH JURISDICTION IN BALTIMORE CITY, MARYLAND.

Section 10. Notices. All notices required to be made hereunder should be addressed to the party at the address listed on the first page hereof, by postage prepaid certified mail, return receipt requested, or by recognized overnight delivery service (e.g., Federal Express). Seller and Purchaser agree to provide each other with written notice of any change of address.

Section 11. Costs. Purchaser shall pay all costs associated with the preparation and recording of the documents and assignments contemplated by this Agreement.

Section 12. WAIVER OF TRIAL BY JURY. EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

BM / Al / HH

Section 13. Confidentiality. Except as required by law or regulation, or by court order, Purchaser shall keep confidential and shall not divulge to any party, without Seller's prior written consent, the terms of this Agreement and the proposed transactions contemplated hereunder; except that either party may disclose such terms to its employees, officers, directors, shareholders, financial advisors, consultants, partners, affiliates, lenders and attorneys who need to know such information for purposes of effectuating the proposed transaction.

Section 14. Entire Agreement. This Agreement and the exhibits attached hereto constitute the entire agreement between the parties hereto pertaining to the subject matter hereof and, upon execution by all parties, supersedes all prior or contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties in connection with the subject matter hereof, except as specifically set forth herein. No supplements, modifications, waivers, or terminations of this Agreement shall be binding unless executed in writing by the parties to be bound thereby.

Section 15. No Waiver. A waiver of any provision of this Agreement shall not constitute or be deemed to constitute a waiver of any other provision herein (whether or not similar), nor shall such waiver constitute a continuing waiver, unless otherwise expressly provided.

Section 16. Further Action. The parties hereto agree to execute and deliver such additional documents and instruments and to take such further actions as may reasonably be necessary, to carry out fully the intent and purposes of this Agreement.

Section 17. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement. In order to be deemed an original, this Agreement and any counterpart(s) must be executed by original signature only, no photocopied or electronic

FOR THE SELLER:

By: ____________________
Authorized Signer for Ruby Jude City, LLC

____________________
Witnessed By:

FOR THE PURCHASER,

By: ____________________
Authorized Signer for Baltimore Harlem Park Investment LLC

Witnessed By: ____________________

Date

EXHIBIT A

INDEMNITY DEED OF TRUST AND SECURITY AGREEMENT AND ASSIGNMENT OF LESSOR'S INTEREST IN LEASES

See Attached

EXHIBIT B

Inter-creditor and Subordination Agreement

See Attached

EXHIBIT C

Promissory Note

See Attached

EXHIBIT D

Construction Loan and Security Agreement

See Attached

EXHIBIT E

GUARANTY OF PAYMENT AND PERFORMANCE

EXHIBIT F

SUBORDINATION AGREEMENT

EXHIBIT G

DESCRIPTION OF THE PROPERTIES

EXHIBIT H

# PURCHASE AND SALE AGREEMENT ADDENDUM

## Addendum Number One

This is Addendum Number One to the Purchase and Sale Agreement dated April 23, 2014, by and between Ruby Jude City, LLC a Maryland Limited Liability Company, (Seller) and Baltimore Harlem Park Investment LLC, a Maryland Limited Liability Company (Buyer) for the sale of all assets owned by the Seller, Ruby Jude City LLC and as better described in above said Purchase and Sale Agreement.

The Seller and Purchaser have agreed that the close of the due diligence period as specified in Section 2 of said Purchase and Sale Agreement shall be extended so that the due diligence period shall end as of the close of business on Wednesday May 7, 2014.

All other terms and conditions of aforesaid Purchase and Sale Agreement shall remain unchanged and specifically the closing date for this Purchase and Sale Agreement shall remain as the close of business on Friday May 9, 2014.

Seller
By: Ben Maldonado
Authorized Signer for
Ruby Jude City, LLC

Witnessed By

05/06/14
Seller Signature Dated

Purchaser
By: Cindy Tao
Authorized Signer for
Baltimore Harlem Park Investment, LLC

Witnessed By

5/6/14
Purchaser Signature Dated

# PURCHASE AND SALE AGREEMENT ADDENDUM

## Addendum Number Two

This is Addendum Number Two to the Purchase and Sale Agreement dated April 25, 2014, by and between Ruby Jude City, LLC a Maryland Limited Liability Company, (Seller) and Baltimore Harlem Park Investment LLC, a Maryland Limited Liability Company (Buyer).

The Seller and Purchaser have agreed that the purchase price as specified in Section 1 of said Agreement shall be changed and the Purchase Price shall be Six Hundred and Sixty Thousand Dollars ($ 660,000.00).

The Seller and Purchaser have agreed that the date of closing for this transaction as specified in Section 2 of said Agreement shall be changed and the settlement date now agreed to by the Seller and Buy is the close of business and more specifically 5:00 p.m. Wednesday May 14, 2014; subject however to the following stipulation:

An important and material part of this transaction is that the real properties which are the collateral securing the Deed of Trust and Note shall be duly registered with the Maryland Department of the Environment ("MDE") as has having taken and passed the lead modification test standards as they are specified in the Maryland Code and Comar; and by MDE having in its possession the required documentation which is to be provided by a Certified Lead Inspection Company. The intent of this provision is to relieve the current owners of said properties as well as the Buyer specified in the Purchase and Sale Agreement of any responsibility direct or indirect for the imposition of fines or other enforcement actions that typically result from the failure of affected properties to be compliant with the Certification Requirements of the Environmental and Health Articles of the Maryland Code and applicable sections of COMAR. Specifically as those Articles relate to this Addendum Number 2 and underlying Purchase and Sale Agreement, certification that all requirements as to the testing for lead paint and registering of " affected properties" have been met and satisfy MDE guidelines. "Affected Properties" as defined by the applicable Code Sections are those properties which are residential in nature and are considered compliant with all applicable Codes and Ordinance, both State and Local, to the extent that they are in 'rentable condition' and in fact are ready to be held out for rental. Commercial properties are not considered to be "affected properties". Nor are properties constructed after 1978, nor are residential properties that are currently vacant, and not held out for rental and/or not having a current Use and Occupancy Permit.

Subject to the changes to the Purchase and Sale Agreement executed on April 25, 2014 as specified herein, all other terms and conditions of aforesaid Purchase and Sale Agreement shall remain unchanged.

Seller
By: Ben Maldonado
Authorized Signer for
Ruby Jude City, LLC

Witnessed By

05/14/14
Seller Signature Dated

Purchaser
By: Cindy Tao
Authorized Signer for
Baltimore Harlem Park Investment, LLC

Witnessed By

5/14/14
Purchaser Signature Dated

EXHIBIT "F"

To: Sharon Ricciardi 703 481 4568

MainStreetBank

## Domestic Wire Transfer Request

Date: 05/13/2014

**MainStreet Bank is authorized to execute the following wire transfer:**

Amount: 160,000.00

Nina

MainStreet Bank Customer Account #: 5509

MainStreet Bank Customer Name: ZTY Investment LLC

MainStreet Bank Customer Address: 1960 Gallows Rd Suite 220B, Vienna, VA 22182

**BENEFICIARY INFORMATION (FOR CREDIT TO):**

Beneficiary's Account: 970199655

Beneficiary's Name: M. Arnold Politzer, Attorney LLC, Attorney Trust Account

Beneficiary's Address: 40 W. Chesapeake Ave Suite 212, Towson, 21204
(Must be physical address)

**RECEIVING BANK INFORMATION:**

Bank Name: M & T Bank

Bank ABA/Routing Number: 052000113

Bank Address: 405 Washington Ave, Towson, MD 21204
(Include City, State, and Zip)

**If an Intermediary Bank is needed to complete this wire, please complete the sections below:**

Intermediary Bank Name: ______

Intermediary Bank SWIFT Code: ______

Intermediary Bank Address: ______
(City, State)

**SPECIAL INSTRUCTIONS:**

Baltimore Halem Park.

**CUSTOMER ACKNOWLEDGES THAT:**

- This request is governed by the provisions concerning wire transfers contained in MainStreet Bank's current Rules and Regulations.
- Any domestic wire request received after 4:00 PM will not be processed until the following business day.
- MainStreet Bank cannot guarantee that the receiving bank will actually receive and/or act upon any wire transfer in a timely manner.
- MainStreet Bank is authorized by the customer to debit his/her account for the amount of the wire transfer and any fees and expenses incurred in connection with the execution of this request.
- The information above is correct and complete.

Daiji Huang

Customer Authorization

301-281-5966

Daytime Phone #

**For Bank Use Only:**

Fee Amount: $______ Request Received By: ☐ In Person ☐ Fax ☐ NetTeller

Available Balance: $______ OFAC Cleared: ☐ Originator ☐ Beneficiary

Accepted By: ______ Approved by: ______

**For Wire Transfer Requests received by Fax, please complete the following:**

Customer contacted and wire transfer verified via telephone on ____ / ____ / ____ at ______ AM / PM Initial: ______

Revised August 2013

MainStreetBank

To: Sharon Ricciardi 7034814568

## Domestic Wire Transfer Request

Date: 05/13/2014

MainStreet Bank is authorized to execute the following wire transfer:

Amount: 500,000.00

Ning

MainStreet Bank Customer Account #: 3067

MainStreet Bank Customer Name: Haiyi Huang

MainStreet Bank Customer Address: 9912 Willow Tree Ter, Rockville, MD 20850

**BENEFICIARY INFORMATION (FOR CREDIT TO):**

Beneficiary's Account: 970199655

Beneficiary's Name: M. Arnold Politzer, Attorney LLC, Attorney Trust Account

Beneficiary's Address: 40 W. Chesapeake Ave Suite 212, MD 21204
(Must be physical address)

**RECEIVING BANK INFORMATION:**

Bank Name: M & T Bank

Bank ABA/Routing Number: 052000113

Bank Address: 405 Washington Ave, Towson, MD 21204
(Include City, State, and Zip)

**If an Intermediary Bank is needed to complete this wire, please complete the sections below:**

Intermediary Bank Name: ____

Intermediary Bank SWIFT Code: ____

Intermediary Bank Address: ____
(City, State)

**SPECIAL INSTRUCTIONS:**

Baltimore Halem Park.

**CUSTOMER ACKNOWLEDGES THAT:**

- This request is governed by the provisions concerning wire transfers contained in MainStreet Bank's current Rules and Regulations.
- Any domestic wire request received after 4:00 PM will not be processed until the following business day.
- MainStreet Bank cannot guarantee that the receiving bank will actually receive and/or act upon any wire transfer in a timely manner.
- MainStreet Bank is authorized by the customer to debit his/her account for the amount of the wire transfer and any fees and expenses incurred in connection with the execution of this request.
- The information above is correct and complete.

Haiyi Huang
Customer Authorization

301-281-5966
Daytime Phone #

**For Bank Use Only:**

Fee Amount: $____ Request Received By: ☐ In Person ☐ Fax ☐ NetTeller

Available Balance: $____ OFAC Cleared: ☐ Originator ☐ Beneficiary

Accepted By: ____ Approved by: ____

**For Wire Transfer Requests received by Fax, please complete the following:**

Customer contacted and wire transfer verified via telephone on ____ / ____ / ____ at ____ AM / PM Initial: ____

Revised August 2013

EXHIBIT "G"

Ruby Jude City LLC

## Assignment of LLC Membership Rights and Substitution of Members

THIS ASSIGNMENT OF Ruby Jude City LLC, a Maryland Limited Liability Company, MEMBERSHIP INTERESTS (this "Assignment) is made this 15th day of May, 2014, by and between Ruby Jude City, LLC., ("Assignor") having an address of 5208 Westwood Drive, Bethesda, Maryland 20816 and Baltimore Harlem Park Investment, LLC, a Maryland Limited Liability Company ("Assignee") having an address at 9912 Willow Tree Terrace, Rockville, Md. 20850, (the "Assignee").

EXPLANATORY STATEMENT

WHEREAS, Ben Maldonado is the managing member and authorized signer for the Assignor specific to the conveyance of 100% of the Membership Rights (the" Membership Right") in Ruby Jude City, LLC; and

WHEREAS, the Assignor is the legal and equitable owner of all rights title and interest in that Certain Indemnity Deed of Trust, Promissory Note, Security Instrument and Assignment of Lessor's interest in leases all dated on or about June 27 2008 and recorded in the Land Records of Baltimore City in Liber 10844 and starting at Folio 361.

WHEREAS, Assignor has agreed to transfer its Membership Interest to Assignee, upon the following conditions:

Payment to the Assignor of Six Hundred and Sixty Thousand Dollars ($ 660,000.00).

WHEREAS, the Assignor does have a written Operating Agreement; and

WHEREAS, Ben Maldonado is the Managing Member of the Assignor and has the requisite authority as provided in Section 5 paragraph 2 of the Assignor's Operating Agreement to sign and bind the Assignor on any and all documents that in any way relate to the business, policies, property or any other acts or activities of the Assignor ; and

WHEREAS, there are no funds in Assignor's Capital Account and no funds owing by Assignor to the Capital Account of Ruby Jude City LLC; and

WHEREAS, IT IS THE INTENTION OF THE PARTIES HERETO THAT Ben Maldonado shall resign both as the managing member, and member of Ruby Jude City LLC; that Ben Maldonado on behalf of the Leonardo August Maldonado Irrevocable Trust shall have that Trust resign as a member of Ruby Jude City LLC; and

WHEREAS simultaneously therewith, the Assignee shall be admitted as a member and managing member of Ruby Jude City LLC, to the end and intent that Assignee be substituted for Assignor as the sole member of Ruby Jude City LLC; and

WHEREAS, the Assignor desires by this Assignment to assign to the Assignee all of the Membership Rights, and the Assignee desires by this Assignment to accept the same,

NOW, THEREFORE, FOR AND IN GOOD AND VALUABLE CONSIDERATION and the mutual covenants of each of the parties and payment by the Assignee to the Assignor of the sum of Six Hundred and Sixty Thousand Dollars ($ 660,000.00), the receipt and adequacy of which are acknowledged by each party, the parties agree as follows:

1. ASSIGNMENT

1.1 Substitution of Member. Assignee is hereby admitted as a member of Ruby Jude City LLC, Ben Maldonado and the Leonardo August Maldonado Irrevocable Trust hereby withdraw as members of Ruby Jude City, LLC, to the end and intent that Assignee is hereby substituted for Ben Maldonado and the Leonardo August Maldonado Irrevocable Trust as the sole member of Ruby Jude City LLC, upon satisfaction of the conditions set forth in paragraph 1.3.

1.2 This Assignment of Membership Rights shall be considered effective as of the Date of receipt by the Assignor of the Full Payment of the Assignment Fee ($ 660,000.00) the assignor assigns to the Assignee and the Assignee accepts and assumes from the Assignor (a) the Membership right (so that from and after the Effective Date, the Assignee shall have a 100% Membership right), and (b) any and all right, title and interest which the Assignor has under the provisions of the Operating Agreement, or in and to any of Ruby Jude City LLC's assets, with respect to the Membership Rights so assigned, upon satisfaction of the conditions set forth in paragraph 1.3.

2. REPRESENTATIONS

2.1 By Assignor. To induce the Assignee to accept the delivery of this Assignment, Assignor hereby represents and warrants the following to the Assignee that, on the date hereof and at the time of such delivery;

2.2 Ben Maldonado as Managing Member of the Assignor has full and complete authority to assign all Membership Rights of all the Members of Ruby Jude City, LLC to the Assignee. The Managing member and all members of Ruby Jude City LLC swear and affirm that they have not sold, transferred, or encumbered any or all of the Membership Rights that they have in Ruby Jude City LLC

2.3 Subject to the provisions of the Operating Agreement, the Managing Member has the full and sufficient right at law and in equity to transfer and assign all the Membership Rights of Ruby Jude City LLC, and is transferring and assigning the Membership Rights to the Assignee free and clear of any and all right and title, or interest of any person whatsoever.

2.4 The required consent of any member in Ruby Jude City LLC to this Assignment has been obtained.

2.5 Assignor represents that the capital account balance as of the Effective Date is Zero Dollars ($0.00).

2.6 Assignor represents that Ruby Jude City LLC has not previously made an election under Section 754 of the Internal Revenue Code of 1986.

2.7 By Assignee. The Assignee covenants, warrants and represents to Ruby Jude City LLC and the Managing Manager (a) that the Assignee has read the Operating Agreement and agrees to be bound by the Operating Agreement, including but not limited to, the appointment of the Manager as the attorney-in-fact for the Members.

2.8 By Each Party. Each party represents and warrants to the other that it has been duly authorized to execute and deliver this Assignment, and to perform its obligations under this Assignment.

3. NOTICES. Any notice, demand, consent, approval, request or other communication or document to be provided hereunder to a party hereto shall be (a) in writing and (b) deemed to have been provided (i) forty- eight (48) hours after being sent as certified or registered mail in the United States mail, postage prepaid, return receipt requested to the address of the

party set forth in this Agreement or to any other address in the United States of America as the party may designate from time to time by notice to the other party, or (ii) upon being given by hand or other actual delivery to the party.

4 N/A

5. OTHER CONDITIONS AND REPRESENTATIONS

5.1 Effectiveness. This Assignment shall become effective on and only on its execution and delivery by each party

5.2 Complete Understanding. Subject to the provisions of the Operating Agreement, this Assignment represents the complete understanding between the parties as the subject matter hereof, and supercedes all prior negotiations, representations, guarantees, warranties, promises, statements or agreements, either written or oral, between the parties hereto as to the same.

5.3 Amendment. This Assignment may be amended by and only by an instrument executed and delivered by each party.

5.4 Waiver. No party shall be deemed to have waived any right which it holds hereunder unless the waiver is made expressly and in writing (and, without limiting the generality of the foregoing, no delay or omission by any party in exercising any such right shall be deemed a waiver of its future exercise). No waiver shall be deemed a waiver as to any other instance or any other right.

5.5 Applicable Law. The internal law, not the law of conflicts, of the State of Maryland, shall govern all questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed hereby. If any action or proceeding involving such questions arises under the Constitution, laws, or treaties of the United States of America, or if there is a diversity of citizenship between the parties thereto, so that it is to be brought in a United States District Court, it shall be brought in the United States District Court for the District of Maryland.

5.6 Headings. The headings of the Sections, subsections, paragraphs and subparagraphs hereof are provided herein for and only for the convenience of reference, and shall not be considered in construing their contents.

5.7 Construction. As used herein (a) the term "person" means natural person, a trustee, a corporation, a partnership, and any other form of legal entity; and (b) all reference made (i) in the neuter, masculine, or feminine gender shall be deemed to have been made in all genders, (ii) in the singular or plural number shall be deemed to have been made, respectively, in the plural or singular number as well, and (iii) to any Section, subsection, paragraph or subparagraph shall, unless therein expressly indicated to the contrary, be deemed to have been made to such Section, subsection, paragraph or subparagraph of this Assignment.

5.8 Assignment. This Assignment shall be binding upon and shall inure to the benefit of the parties hereto and there respective heirs, personal representatives, successors and assigns hereunder.

5.9 Severability. No determination by any court, governmental body, or otherwise that any provision of this Agreement or any amendment hereof is invalid or unenforceable in any instance shall effect the validity or enforceability of (a) any other provision thereof, or (b) that provision in any circumstance not controlled by the determination. Each such provision shall be valid and enforceable to the fullest extent allowed by and shall be construed wherever possible as being consistent with applicable law.

5.10 Further Assurances. The parties shall cooperate with each other and shall execute and deliver, or cause to be delivered, all other instruments and shall take all other actions, as either party hereto may reasonably request from time to time in order to effectuate the provisions hereof.
5.11 Assumption and Indemnification. From and after the Effective Date, the Assignee shall (a) be bound by the provisions of the Operating Agreement as if the Assignee were a party there to and a Member of Ruby Jude City LLC and (b) indemnify Ruby Jude City LLC against and expense incurred by it in connection with the Assignee's admission and substitution as Member (including, by way of example rather than of limitation, any expense incurred in preparing and filing for record any amendment of the [Operating Agreement] or the Assignor's Articles of Organization], and any other instrument, if necessitated by admission and substitution.

IN WITNESS WHEREOF, each party hereto has executed and ensealed this Assignment or caused it to be executed and ensealed on its behalf by its duly authorized representatives, the day and year first written.

WITNESS/ATTEST

____________________

By: ____________________
Ben Maldonado
Managing Member Ruby Jude City LLC
(Assignor)

____________________

By: ____________________
Sean Leonce
Manager/Member Baltimore Harlem Park Investment LLC
(Assignee)

____________________
Date

EXHIBIT "H"

# BALTIMORE HARLEM PARK INVESTMENTS, LLC

## CONSENT OF MAJORITY IN INTEREST OF MEMBERS

The undersigned, being the owner of a majority in interest of the Membership Interests in Baltimore Harlem Park Investments, LLC, a Maryland limited liability company (the "Company"), pursuant to the Company's Operating Agreement dated December 9, 2014 (the "Operating Agreement"), hereby approves and adopts, effective as of September 1, 2017 (the "Effective Date"), the following resolutions by written consent:

WHEREAS, in April 2017, Xin "Cindy" Tao, a Manager of the Company (herein, "Manager Tao"), acting pursuant to Sections 3 and 4 of the Operating Agreement, determined that it was a Necessity (as defined in Section 3(c) of the Operating Agreement) that the Company obtain Additional Capital Contributions from its Members to raise funds needed to prevent the loss of one of the real estate assets owned by the Company to a tax foreclosure sale; and

WHEREAS, Manager Tao further determined after consultation with appropriate professionals that Additional Capital Contributions in the aggregate amount of $30,000.00 were required of the Members to be paid to the Company in accordance with each Member's ownership percentage. As such, Manager Tao issued a written "Capital Call" notice to the Members on April 22, 2017; and

WHEREAS, Pinehills Properties, LLC ("Pinehills") was the only Member to make its proportional share Additional Capital Contribution in response to the Capital Call, within the time frame required under the Operating Agreement (and stated in the Capital Call notice); and

WHEREAS, the other Members, ZTY Investments, LLC and Insight Investment, LLC (collectively, the "Non-Contributing Members"), failed to make their respective proportional share Additional Capital Contributions in response to the Capital Call, within the time frame required under the Operating Agreement (and stated in the Capital Call notice); and

WHEREAS, on or about May 23, 2017, Pinehills, pursuant to Section 3(d) of the Operating Agreement, elected to make the respective proportional share Additional Capital Contributions on behalf of the Non-Contributing Members; and

WHEREAS, on May 31, 2017, Pinehills further elected, pursuant to Section 3(d) of the Operating Agreement, to treat its Additional Capital Contributions made on behalf of the Non-Contributing Members as a Capital Contribution and not as a loan to the Company or a loan to either Non-Contributing Member; and

WHEREAS, pursuant to Section 3(d)(2) of the Operating Agreement, the foregoing events have caused the ownership of the Non-Contributing Members to be reduced by the metrics set forth therein, with the new ownership percentages of the Company being as follows, effective as of May 31, 2017:

Pinehills Properties, LLC: 77.85%
ZTY Investments, LLC: 22.125%
Insight Investment, LLC: 0.025%; and

WHEREAS, Section 4(c) of the Operating Agreement states that the Members owning a majority in interest of the Membership Interests in the Company have the power to compel the Managers of the Company to take any specific action, without regard to whether the Managers agree or disagree with any such action,

NOW THEREFORE, be it,

RESOLVED: That, pursuant to Section 5 of the Operating Agreement, the majority Member of the Company, Pinehills, hereby replaces Haiyi Huang as a Manager of the Company with William Weiss, who shall be a Manager of the Company, serving together with Manager Tao, from the Effective Date forward.

RESOLVED: That the Managers of the Company shall update Schedule A of the Operating Agreement to reflect the respective ownership percentages of the Members of the Company as set forth in the final "Whereas" paragraph above, effective as of May 31, 2017, and shall administer the business of the Company in accordance therewith.

RESOLVED: That the Managers of the Company shall immediately utilize the $30,000.00 in Company funds obtained through the April 22, 2017 Capital Call to attempt, diligently, to redeem the Company's real property located at 1101 Harlem Avenue from tax sale.

RESOLVED: That the Managers of the Company shall retain the law offices of Maurice VerStandig as the Company's counsel, who shall answer to the Managers and advise, counsel, represent and defend the Company in any and all such legal matters as the Managers may deem reasonably necessary and appropriate in the Company's interest, including without limitation any current or future lawsuits against the Company, and any current or future lawsuits against any "Indemnified Parties" as defined in Section 4(h) of the Operating Agreement (including without limitation the undersigned Member and the two Managers named herein), whom the Company is obligated to indemnify, defend and hold harmless in accordance with the terms thereof.

*[Signature page follows.]*

The undersigned, being the majority Member of the Company, hereby consents to the above action and resolutions.

MEMBER – Pinehills Property, LLC:

By: Xin "Cindy" Tao as Manager of
Pinehills Properties, LLC

ACKNOWLEDGMENT BY MANAGERS:

The undersigned Managers of the Company hereby confirm that, pursuant to Section 4(c) of the Operating Agreement, they shall take all actions in the management of Company business that are reasonably necessary and appropriate to effectuate the foregoing resolutions of the Member owning a majority in interest of the Membership Interests in the Company.

________________ (SEAL)
Xin "Cindy" Tao, Manager

________________ (SEAL)
William Weiss, Manager

EXHIBIT "I"

LAW OFFICES
LARRY H. KIRSCH
402 LONG TRAIL TERRACE
ROCKVILLE, MD 20850

(202) 237-6600 | (240) 205-7265
TELECOPIER (202) 293-1364 | (240) 428-1266
E-MAIL Larry@LKirschlaw.com

MEMBER OF DISTRICT OF COLUMBIA
AND MARYLAND BARS

FOR SETTLEMENT PURPOSES ONLY

April 5, 2019

BY EMAIL - tcv@youngandvalkenet.com
Thomas C. Valkenet, Esquire
Young & Valkenet
600 Wyndhurst Avenue, Suite 230
Baltimore, Maryland 21210

BY EMAIL - mac@mbvesq.com
Maurice "Mac" VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
mac@mbvesq.com

Re: Baltimore Harlem Park Investment, LLC ("BHPI")

Gentlemen:

As you may recall the tolling agreement expires on May 31, 2019.

I am writing to both of you as I want to make sure that counsel (or former counsel) for all parties involved in the recent litigation receive this letter.

This letter is of limited scope.

During the course of the recent trial, Ms Xin ("Cindy") Tao testified that the contribution made by ZTY Investment, LLC ("ZTY") to BHPI was a loan. It is my understanding Ms. Tao's testimony related to the initial $660,000.00 contribution, evidenced by the two (2) wires sent to Arnold Politzer, copies of which are attached to this letter as Exhibit "A" (the "Initial Payment"). Other than giving this testimony, Ms. Tao was unclear about the terms of the loan or whether the loan included contributions made by Nina Huang after the Initial Payment was made to BHPI.

By this letter I am requesting that BHPI confirm the following:

Thomas C. Valkenet, Esquire
Maurice "Mac" VerStandig, Esq.
April 5, 2019
Page Two

i that the Initial Payment or any portion was a loan by ZTY to BHPI. If less than the full amount was a loan; the amount BHPI considers a loan to BHPI;

ii. that the additional monies paid by ZTY or its principal Nina Huang was a loan to BHPI.

iii. if BHPI considers any portion of the Initial Payment of additional monies a loan to BHPI, the repayment terms.

I request that you advise me by close of business on Monday, April 8, 2019, whether BHPI is willing to provide this information and if so, by what date.

With regard to the renewed legal action, it is my intention to refile the Complaint by the end of this month. If Defendants in the case are interested in discussing a resolution of this matter prior to my refiling the Complaint, then we will need to engage in discussions immediately.

If I am required to refile the suit, I ask that you agree to accept service of process on behalf of your clients.

Very truly yours,

Larry H. Kirsch, Esquire

LHK:tbl
Also sent by US Mail postage prepaid
cc: Client

EXHIBIT "A"

To: Sharon Ricciardi 7034814568

MainStreetBank

## Domestic Wire Transfer Request

Date: 05/13/2014

**MainStreet Bank is authorized to execute the following wire transfer:**

Nina

Amount: 500,000.00

MainStreet Bank Customer Account #: 3067

MainStreet Bank Customer Name: Haiyi Huang

MainStreet Bank Customer Address: 9912 Willow Tree Ter, Rockville, MD 20850

BENEFICIARY INFORMATION (FOR CREDIT TO):

Beneficiary's Account: 970199655

Beneficiary's Name: M. Arnold Politzer, Attorney LLC, Attorney Trust Account

Beneficiary's Address: 40 W. Chesapeake Ave Suite 212, MD 21204
(Must be physical address)

RECEIVING BANK INFORMATION:

Bank Name: M & T Bank

Bank ABA/Routing Number: 052000113

Bank Address: 405 Washington Ave, Towson, MD 21204
(Include City, State, and Zip)

**If an Intermediary Bank is needed to complete this wire, please complete the sections below:**

Intermediary Bank Name: ______

Intermediary Bank SWIFT Code: ______

Intermediary Bank Address: ______
(City, State)

SPECIAL INSTRUCTIONS:

Baltimore Halem Park.

CUSTOMER ACKNOWLEDGES THAT:

- This request is governed by the provisions concerning wire transfers contained in MainStreet Bank's current Rules and Regulations.
- Any domestic wire request received after 4:00 PM will not be processed until the following business day.
- MainStreet Bank cannot guarantee that the receiving bank will actually receive and/or act upon any wire transfer in a timely manner.
- MainStreet Bank is authorized by the customer to debit his/her account for the amount of the wire transfer and any fees and expenses incurred in connection with the execution of this request.
- The information above is correct and complete.

Haiyi Huang (signature)
Customer Authorization

301-281-5966
Daytime Phone #

**For Bank Use Only:**

Fee Amount: $______

Request Received By: ☐ In Person ☐ Fax ☐ NetTeller

Available Balance: $______

OFAC Cleared: ☐ Originator ☐ Beneficiary

Accepted By: ______

Approved by: ______

**For Wire Transfer Requests received by Fax, please complete the following:**

Customer contacted and wire transfer verified via telephone on ____/____/____ at ______ AM / PM Initial: ______

Revised August 2013

To: Sharon Ricciardi 703 481 4568

MainStreetBank

## Domestic Wire Transfer Request

Date: 05/13/2014

**MainStreet Bank is authorized to execute the following wire transfer:**

Amount: 460,000.00

Nina

MainStreet Bank Customer Account #: ... 5509

MainStreet Bank Customer Name: ZTY Investment LLC

MainStreet Bank Customer Address: 1960 Gallows Rd Suite 220B, Vienna, VA 22182

**BENEFICIARY INFORMATION (FOR CREDIT TO):**

Beneficiary's Account: 970199655

Beneficiary's Name: M. Arnold Politzer, Attorney LLC, Attorney Trust Account

Beneficiary's Address: 40 W. Chesapeake Ave Suite 212, Towson, 21204
(Must be physical address)

**RECEIVING BANK INFORMATION:**

Bank Name: M & T Bank

Bank ABA/Routing Number: 052000113

Bank Address: 405 Washington Ave, Towson, MD 21204
(Include City, State, and Zip)

*If an Intermediary Bank is needed to complete this wire, please complete the sections below:*

Intermediary Bank Name: ____________________

Intermediary Bank SWIFT Code: ____________________

Intermediary Bank Address: ____________________
(City, State)

**SPECIAL INSTRUCTIONS:**

Baltimore Halem Park.

**CUSTOMER ACKNOWLEDGES THAT:**

- This request is governed by the provisions concerning wire transfers contained in MainStreet Bank's current Rules and Regulations.
- Any domestic wire request received after 4:00 PM will not be processed until the following business day.
- MainStreet Bank cannot guarantee that the receiving bank will actually receive and/or act upon any wire transfer in a timely manner.
- MainStreet Bank is authorized by the customer to debit his/her account for the amount of the wire transfer and any fees and expenses incurred in connection with the execution of this request.
- The information above is correct and complete.

Dongji Huang

Customer Authorization

301-281-5966

Daytime Phone #

**For Bank Use Only:**

Fee Amount: $ ____________ Request Received By: ☐ In Person ☐ Fax ☐ NetTeller

Available Balance: $ ____________ OFAC Cleared: ☐ Originator ☐ Beneficiary

Accepted By: ____________ Approved by: ____________

**For Wire Transfer Requests received by Fax, please complete the following:**

Customer contacted and wire transfer verified via telephone on ____/____/____ at ________ AM/PM Initial: ______

Revised August 2013

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

ZTY INVESTMENT LLC. :
9912 Willow Tree Terrace :
Rockville, MD 20850 :

and :

HAIYI HUANG :
9912 Willow Tree Terrace :
Rockville, MD 20850 :

Plaintiffs, :

vs. :

XIN TAO :
9416 Atwood Rd, :
Vienna, VA 22182 :
Serve: :
Maurice VerStandig, Esquire :
9812 Falls Road #114-160 :
Potomac, Maryland 20854 :

and :

PINEHILLS PROPERTIES, LLC :
6888 Elm St, Suite 100 :
McLean, VA 22101 :
Serve: :
Maurice VerStandig, Esquire :
9812 Falls Road #114-160 :
Potomac, Maryland 20854 :

and :

WILLIAM WEISS :
9416 Atwood Road :
Vienna, VA 22182 :
Serve: :
Maurice VerStandig, Esquire :
9812 Falls Road #114-160 :
Potomac, Maryland 20854 :

and :