Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for Baltimore Harlem Park Investment, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 21-249-ELG |
| | ) | (Chapter 11) |
| BALTIMORE HARLEM PARK | ) | |
| INVESTMENT, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION TO HOLD MILTON ARNOLD**
**POLITZER, ESQ. IN CONTEMPT OF COURT**

Comes now Baltimore Harlem Park Investment, LLC (the "Debtor" or "BHPI"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 2004, Federal Rule of Bankruptcy Procedure 9016, Federal Rule of Civil Procedure 45, and moves this Honorable Court to hold Milton Arnold Politzer, Esq. ("Mr. Politzer") in contempt of court for the willful disobedience of two subpoenas, and in support thereof states as follows:

## I. Introduction

Mr. Politzer, a substitute trustee serving for the benefit of the Debtor's subsidiary and an attorney formerly representing the Debtor, has an unfortunate history of failing to turn over records of his trust account when asked by the Debtor. Now, despite this Honorable Court's clear order compelling him to produce such records (and to appear for examination), and despite being timely served with two lawfully-issued subpoenas pursuant to that order, Mr. Politzer's recalcitrance has evolved to a level of contemptuous disobedience.

It is the Debtor's hope this motion will be partially moot by the time it comes on for hearing. Mr. Politzer has engaged counsel to represent him in this matter and counsel has suggested Mr. Politzer might be able to produce documents after a notable delay and appear for examination at some juncture in time. Regardless, however, the damage of Mr. Politzer's contempt will have already been done: this is a subchapter V case where the Debtor will not have had access to (i) records of any monies Mr. Politzer is holding for the Debtor's benefit; (ii) the files of Mr. Politzer, detailing the status of various assets encumbered by the lien of the Debtor's subsidiary; and/or (iii) the records needed to assess if Mr. Politzer has been timely giving the Debtor notice of the foreclosure of assets against which its subsidiary holds a lien. Perhaps most starkly, the Debtor will now be required to appear at the meeting of creditors herein without the benefit of Mr. Politzer's records or knowledge; such will almost assuredly prove prejudicial to all parties in interest, while no doubt requiring a continuation of that meeting and the incursion of further attorneys' fees by the Debtor and the subchapter V trustee.

For these reasons, and as extrapolated upon *infra*, the Debtor respectfully asks this Honorable Court hold Mr. Politzer in civil contempt and make such contempt purgeable by (i) Mr. Politzer's production of the documents demanded by subpoena; (ii) Mr. Politzer's appearance for examination following his production of the subject documents; and (iii) Mr. Politzer's payment to the Debtor of $3,000.00 plus $250 per day for each day he remains in contempt (being an approximation of the legal fees that will be incurred on account of Mr. Politzer's non-compliant behavior).

## II. Factual and Procedural Background

The Debtor's records indicate that as of December 31, 2014, Mr. Politzer was holding $179,783.33, for the benefit of the Debtor, in an IOLTA account. *See* Balance Sheet, attached

hereto as Exhibit A. Those funds can be partially accounted for through other records; the Debtor knows (i) $5,161.00 was being held by Mr. Politzer for satisfaction of a rental management liability, though it is not clear when or if that liability was paid; and (ii) $23,460.24 was paid over to undersigned counsel for the Debtor, in October 2018, in satisfaction of an open invoice, with the payment coming on check #6560 drawn against Mr. Politzer's trust account.[1]

This, however, leaves $151,162.09 for which Mr. Politzer has not accounted. The sum may actually be greater if his IOLTA account was holding rental income belonging to the Debtor; in the absence of records, such is uncertain. And there is a concerning history of his oft-unusual demurrers when pressed to produce an accounting of his attorney trust account.

In June 2018, a tentative settlement was reached in litigation concerning the Debtor, but conditioned upon the Debtor producing records showing the application of all liquid funds it had processed to date. *See* June 5, 2018 E-mail Thread, attached hereto as Exhibit B. In an effort to produce those records, Mr. Politzer was asked to provide a sub-ledger for his trust account. *Id.* Mr. Politzer responded that he could not do so in the timeline requested:

> Truthfully having that to you by the end of the week is possible but a little challenging. I'm just getting over a pretty unpleasant bout with pneumonia and between the time I lost while I was out and working maybe at half speed right now- I'll do the best I can[.]

*Id.*

A week later, Mr. Politzer sent a follow-up e-mail explaining that he needed "a few more days to make sure" his trust account ledger is accurate. *See* June 11, 2018 E-mail of A. Politzer, attached hereto as Exhibit C.

---

[1] For want of ambiguity, The VerStandig Law Firm, LLC was the recipient of the subject payment, not undersigned counsel individually.

When a “few” days had come and gone, however, and Mr. Politzer was again pressed for his trust records, a new response followed:

> I know I’ve been part of the delay for which I do apologize. Some time ago we finally switched to a new accounting system that was actually designed for use after the 1900’s. Converting our old records to the new system has been fraught with problems that the sales folks for the new system “never envisioned’- be that as it may- I will have the final accounting, with our post 1900 state of the art accounting system ideally by the end of this week.

July 10, 2018 E-mail of A. Politzer, attached hereto as Exhibit D.

Nine days later, Mr. Politzer wrote to promise “I am now back in Baltimore and if for some reason I am unable to complete and send the billing tomorrow, rest assured it WILL go out over the weekend.” July 19, 2018 E-mail of A. Politzer, attached hereto as Exhibit E.

Mr. Politzer never produced a trust sub-ledger in 2018 and, as such, a settlement agreement was never consummated. The Debtor proceeded to trial, where it was forced to incur the fees attendant to defending a multi-week jury trial, and where it was ultimately adjudicated jointly and severally liable on a judgment for more than $130,000.00.

Following trial, there was no focus on the Debtor’s funds being held by Mr. Politzer until this bankruptcy was commenced and the Debtor was, once more, asked to produce records of the status of its cash assets. Accordingly, undersigned counsel sent Mr. Politzer a letter demanding a turnover of his trust records, together with a turnover of pertinent parts of his file, so the Debtor could ensure its schedules do not need amendment and so the Debtor could honestly account to all parties in interest for the details of its affairs. *See* Turnover Demand, attached hereto as Exhibit F.

Mr. Politzer responded by indicating he (i) is retired; (ii) is moving to California on October 20, 2021; and (iii) has “shredded” his files except for computer records. *See* October 11, 2021 E-mail of A. Politzer, attached hereto as Exhibit G.

The Debtor, in turn, moved this Honorable Court for leave to take the examination of Mr. Politzer and to demand his production of records. *See* Motion to Take Examination of Milton Arnold Politzer, Esq. Pursuant to Federal Rule of Bankruptcy Procedure 2004, DE #16. This Honorable Court granted the subject motion. *See* Order Granting Motion to Take Examination of Milton Arnold Politzer, Esq. Pursuant to Federal Rule of Bankruptcy Procedure 2004, DE #19. The Debtor, acting through its undersigned proposed counsel, then caused two subpoenas to be issued to Mr. Politzer. *See* Document Subpoena, attached hereto as Exhibit H; Testimony Subpoena, attached hereto as Exhibit I.

Slightly less than four hours after this Honorable Court granted the Debtor leave to issue the subject subpoenas, both were served on Mr. Politzer through his authorized agent. *See* Proof of Service, attached hereto as Exhibit J.[2]

On October 29, 2021, Irwin Kramer, Esq., an attorney representing Mr. Politzer, contacted undersigned counsel and asked for Xin "Cindy" Tao to waive the attorney/client privilege in connection with Mr. Politzer's production of documents, while also indicating more time was desired. *See* October 29, 2021 Facsimile, attached hereto as Exhibit K.[3] [4]

Later the same day, proposed counsel for the Debtor responded by offering alternative examination dates and indicating a document production can be made sans documents covered by

---

[2] The process server returned a single proof of service for both subpoenas.

[3] Mr. Kramer indicated he had previously endeavored to e-mail his correspondence, but was having issues with his e-mail. The Debtor finds this entirely credible and no part of the relief sought herein is intended to be attributed to a 48-hour delay brought about by Mr. Kramer's technical issues.

[4] Ms. Tao has been advised to seek separate counsel to the extent she wishes to contemplate waiving privilege, and undersigned counsel has made a referral to a well-regarded local bankruptcy attorney. For self-evident reasons, proposed counsel for the Debtor cannot also serve as counsel for Ms. Tao.

Ms. Tao's privilege, *vel non*, in the interim. *See* October 29, 2021 Letter, attached hereto as Exhibit L.

On November 2, 2021, Mr. Kramer, writing on behalf of Mr. Politzer, shared that Mr. Politzer would not be timely making a production of documents:

> Based upon what my client is telling me, I think it may be worthwhile for us to reschedule the deposition for November 15, 2021 or sometime thereafter.
>
> As you know, Mr. Politzer is moving to California this week. His records and computer are in boxes for shipment to his new home. His mover states that his belongings will arrive there "sometime next week." Once unpacked, he will then have to review the materials for production and generate the ledger from the data stored on his computer. I am reluctant to promise that all of that can be accomplished before the 15th of November, but I will ask him for a fair estimate. I would agree that a deposition in advance of that would not be a fruitful.
>
> In the meantime, has Ms. Tao reviewed the waiver and approved it?

November 2, 2021 E-mail of I. Kramer, attached hereto as Exhibit M.

The assertions in Mr. Kramer's e-mail appear to be at odds with those originally made by Mr. Politzer. Specifically, while Mr. Politzer originally indicated he was moving to California on October 20, 2021, Mr. Kramer now shares Mr. Politzer to have been moving at some juncture during the week of November 2, 2021.

Further, records of a deposition of Mr. Politzer conducted on July 27, 2018, at which the Debtor was not represented by counsel, have been informally produced by counsel for two creditors herein, as part of a collaborative effort to advance the Debtor's bankruptcy. The records suggest Mr. Politzer (i) made clear he would not be likely to invoke the attorney/client privilege; and (ii) regarded the Debtor, not Ms. Tao, as his client. *See* Deposition of A. Politzer, attached hereto as Exhibit N, at 7:5-7, 8:10-12:14.

Mr. Politzer has not made any production of documents whatsoever, despite the document subpoena being returnable on November 1, 2021. Mr. Politzer also failed to appear for examination on November 3, 2021, as directed by the correlative subpoena.[5]

As of the filing of this motion, 24 days have passed since the Debtor first asked Mr. Politzer for his trust account sub-ledger and his client file.

**III. Standard**

This Honorable Court derives the power to hold Mr. Politzer in contempt from two sources: (i) Federal Rule of Civil Procedure 45, as incorporated by Federal Rule of Bankruptcy Procedure 9016; and (ii) this Honorable Court's inherent power.

Under the pertinent rule, "The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).[6]

Importantly, this is the sole rule-based remedy for noncompliance with a third-party subpoena:

> The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Civil Rule 45(e), applicable here through Rule 9016. Hence, the only way CML

[5] A video recording of the examination was made, wherein proposed counsel for the Debtor, and counsel for two creditors, appeared and adjourned the examination. Mr. Politzer did not appear and no testimony was elicited. A transcript of this proceeding can be made if this Honorable Court deems such necessary.

[6] The subpoena commanding Mr. Politzer's examination provided for such to be taken via Zoom in light of the COVID-19 pandemic. However, Mr. Politzer was served within 100 miles of Washington, DC and, but for the pandemic, would have been compelled to appear for examination in Washington, DC. Since a Zoom deposition leaves ambiguous the locale for compliance, it is respectfully submitted Washington, DC should be regarded as such locale given that it is (i) the venue of this bankruptcy; (ii) where an in-person examination would have occurred; and (iii) within 100 miles of where Mr. Politzer was served.

> could seek sanctions against Stipp for noncompliance with the subpoenas was to seek to hold him in contempt of court.

*In re Plise*, 506 B.R. 870, 877–78 (B.A.P. 9th Cir. 2014) (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (citing *Fisher v. Marubeni Cotton Corp*., 526 F.2d 1338, 1341 (8th Cir. 1975)); *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992); *Scruggs v. Vance*, 2012 WL 423486 (E.D. Cal. 2012); *In re Nicole Energy Services, Inc*., 356 B.R. 786 (B.A.P. 6th Cir. 2007); *In re Sciaba*, 334 B.R. 524, 526 (Bankr. D. Mass. 2005)). *See also*, *In re Chodiev*, 2020 WL 9439389, at *4 (D.D.C. 2020) ("Rule 45 governs discovery requested from a non-party through a subpoena").

In assessing whether or not to hold a third party in contempt for disobeying a subpoena, case law instructs:

> The moving party must demonstrate the respondent's noncompliance by "clear and convincing evidence." The moving party need not demonstrate that the respondent acted in bad faith, because "unlike a criminal contempt proceeding, a civil contempt action is a remedial sanction used ... to compensate for damage sustained as a result of noncompliance."

*In re Chodiev*, 2020 WL 9439389, at *3 (quoting *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 70 (D.D.C. 2009); *Food Lion, Inc. v. United Food and Commercial Workers Intern. Union, AFL-CIO-CLC*, 103 F.3d 1007, 1016 (D.C. Cir. 1997)).

Separately, this Honorable Court is also empowered to enter a contempt citation pursuant to its own inherent powers. *See, e.g., Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) ("'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); citing *Ex parte Robinson*, 19 Wall. 505

(1874); quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). *See also, Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1553 (11th Cir. 1996) ("In a nutshell: Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to 'achieve the orderly and expeditious disposition of cases.' Under § 105, Congress expressly grants court's independent statutory powers in bankruptcy proceedings to 'carry out the provisions of' the Bankruptcy Code through 'any order, process, or judgment that is necessary or appropriate.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); 11 U.S.C. § 105(a)).

## IV. Argument: Mr. Politzer Should be Held in Contempt Under Rule 45

Quite plainly, Mr. Politzer was served with two subpoenas – one commanding the production of documents on or before November 1 and one commanding his testimony on November 3. He has complied with neither. And as an attorney, he ought to know better (not that a lay person should be held to any lesser standard).

If Mr. Politzer wished to object to either subpoena, he could have opposed the motion seeking leave to take his examination or followed the procedure for objecting to the subpoenas. *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); Local Rule 2004-1 advisory committee's note ("When a motion seeks to compel the debtor to appear for an examination and to produce records, any defenses to the examination of the debtor or to the production of the debtor's records should be raised in response to the motion because the order will adjudicate the parties' rights and will be subject to enforcement by the Court's contempt powers, with the propriety of the order no longer at issue except on appeal.").

Given that the motion to take his examination was granted on shortened notice, his failure to oppose the motion may well be deemed explainable. But there is no such explanation for his

failure to object, in writing, within the time for compliance. To the contrary, in lieu of any formal objection he has simply had his counsel (i) request a waiver of a third party's privilege, even though Mr. Politzer has previously testified without such a waiver and has previously suggested he does not represent that third party in her personal capacity;[7] and (ii) indicated a need for more time due to a move to California that Mr. Politzer previously asserted to be occurring two weeks prior.

The *Bilzerian* Court and its progeny require a showing of non-compliance by "clear and convincing evidence," while expressly *not* requiring a showing of bad faith. It is amply clear, on this record, that Mr. Politzer has not been compliant – the times for his compliance have come and gone, yet nary a document has been produced and no testimony has been offered.

Moreover, to state what is no doubt obvious: an attorney should not need a month to produce records of his trust account. If Mr. Politzer had produced a trust sub-ledger and the digital parts of his client file, promising to supplement other client file components later, we would not be here. But, alas, for the second time in three years, Mr. Politzer has utterly failed to produce a trust account record, and it is accordingly growing increasingly-difficult to credit his ever-evolving excuses for non-compliance.

## V. Argument: Contempt is also Appropriate Pursuant to this Honorable Court's Inherent Powers

Since the non-compliance at issue herein stems not merely from two subpoena but, rather, two subpoenas issued per an express order of this Honorable Court, so-called "inherent power" contempt is also instantly merited. This is the critical distinction between a subpoena issued under

[7] It bears notation that if Mr. Politzer did, in fact, serve as counsel to both the Debtor and Ms. Tao, he had an obligation to keep separate trust account sub-ledgers and separate files, as well as an obligation to ensure the absence of any conflict under governing rules. No person or entity should ever have to convince a third party to waive the attorney/client privilege in order for that person or entity to obtain its attorney's client file or its attorney's trust account sub-ledger. The very request in this case is cause for enormous concern unto itself.

Federal Rule of Bankruptcy Procedure 2004 and a garden variety subpoena; but for this added layer of enforceability, the foregoing rule would be less impactful.

In considering a request for someone to be held in civil contempt under the "inherent powers" doctrine, a three prong test applies:

> A party moving for a finding of civil contempt must show, by clear and convincing evidence, that: (1) there was a court order in place; (2) the order required certain conduct by the defendant; and (3) the defendant failed to comply with that order.

*Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) (citing *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993); *Secs. & Exch. Comm'n v. Bilzerian*, 112 F.Supp.2d 12, 16 (D.D.C. 2000)).

Here, there was a court order in place. *See* Order Granting Motion to Take Examination of Milton Arnold Politzer, Esq. Pursuant to Federal Rule of Bankruptcy Procedure 2004, DE #19. And that order expressly permitted the commanding of a document production by subpoena as well as the taking of an examination by subpoena. *Id.* Mr. Politzer, in turn, failed to comply with those subpoenas.

To be sure, the order expressly references the underlying motion which, in turn, expressly sets forth the files to be produced (Motion, DE #16, at p. 7), the time for production (*Id.*), the manner of examination (*Id.* at p. 8) and the date of examination (*Id.*). In fact, the motion even sets forth the Zoom access code and password for the examination. *Id.*

Yet Mr. Politzer has not appeared at the time and place indicated, nor has he produced documents by the deadline indicated, nor has he seemingly availed himself of the Zoom codes indicated. He has, rather, insisted on moving at a snail's pace, without any regard to this Honorable Court's order or the Debtor's temporal needs, and he persists in so doing as of the filing of this

motion. Such is no doubt contemptuous, and thusly well punishable by this Honorable Court's inherent powers.

## VI. Conclusion

It is beyond concerning that a member of the Maryland bar cannot seem to produce a sub-ledger for his trust account. In 2018, this inability forced the Debtor to incur the expenses of a trial and forced the Debtor to ultimately suffer a judgment in lieu of a settlement. Now, this inability threatens the Debtor's ability to locate critical assets and reorganize in bankruptcy.

Moreover, to state the otherwise-implicit: the Debtor is assessing whether or not to bring an adversary claim against Mr. Politzer. If Mr. Politzer has been receiving foreclosure notices as a substitute trustee, and not passing them along to the Debtor or its subsidiary, the same would seem actionable on one or more theories of recovery. Similarly, if Mr. Politzer has spent the Debtor's monies without authorization, or on improper purposes, the same is equally actionable. But before rushing to bring such a claim, the Debtor wants to ensure it does its pre-filing due diligence.[8]

At core, Mr. Politzer's non-compliance is not merely suspicious and outrageous – it is, too, contemptuous. And the Debtor accordingly petitions for this extraordinary variety of relief.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) hold Mr. Politzer in contempt of court; (ii) direct Mr. Politzer purge said contempt by (a) producing the documents

---

[8] For the avoidance of doubt, there already exists a good faith basis sufficient to bring suit compliant with Federal Rule of Bankruptcy Procedure 9011. The Debtor does not *need* these records to bring suit; the Debtor simply wishes to give Mr. Politzer an opportunity to explain his actions – or, as it is, inactions – before such a suit is brought, as the Debtor is surely not interested in wasting time or resources pursuing litigation that may not be ultimately meritorious. That Mr. Politzer seems to not have the variety of records every attorney is bound to keep does, suffice it to posit, not promote any appreciable faith in whatever explanation he may offer being particularly meritorious.

called for in the correlative subpoena; (b) sitting for an examination after producing such documents; and (c) paying the Debtor the sum of $3,000.00 plus $250 per day for each day Mr. Politzer remains in contempt; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: November 6, 2021 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for the Debtor*

**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of November, 2021, a copy of the foregoing was served electronically upon filing via the ECF system, with copies also being sent via US Mail, postage prepaid, to:

M. Arnold Politzer, Esq.
Totten Law Firm
8850 Standard Boulevard
Suite 2300
Columbia, Maryland 21045

Irwin R. Kramer, Esq.
Kramer & Connolly
465 Main Street
Reisterstown, Maryland 21136

I FURTHER CERTIFY that while not required by governing rules, I have also sent a copy of the foregoing to Irwin R. Kramer, Esq., via electronic mail, to irk@kramerslaw.com.

/s/ Maurice B. VerStandig
Maurice B. VerStandig