Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Baltimore Harlem Park Investment, LLC and for Ruby Jude City LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 21-249-ELG |
| | ) | Case No. 21-254-ELG |
| BALTIMORE HARLEM PARK INVESTMENT, LLC | ) | (Jointly Administered) |
| | ) | |
| | ) | (Chapter 11) |
| and | ) | |
| | ) | |
| RUBY JUDE CITY LLC | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**THIRD AMENDED BALTIMORE HARLEM PARK INVESTMENT, LLC AND RUBY JUDE CITY LLC CONSOLIDATED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11**

Come now Baltimore Harlem Park Investment LLC ("BHPI") and Ruby Jude City LLC ("RJC") (BHPI and RJC being collectively known as the "Debtors"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A, and provide the following amended plan of reorganization (the "Plan") herein:

**Background for Cases Filed Under Subchapter V**

**a. Description and History of the Debtors' Business**

BHPI is a limited liability company formed pursuant to the laws of the State of Maryland on April 21, 2014. BHPI was created to engage in real estate development and management, with its initial emphasis being on acquiring RJC. In turn, RJC is a limited liability company formed pursuant to the laws of the State of Maryland on February 3, 2014. At all times relevant, RJC held as its sole assets, excepting litigation rights, (i) a defaulted promissory note, secured by numerous individual parcels of real estate in Baltimore City, pursuant to an indemnity deed of trust; and (ii) a judgment for breach of the promissory note, including liability against various third party guarantors.

The initial business plan of BHPI was fairly simple: undertake due diligence with the aid of an attorney, acquire RJC, and strategically foreclose upon the assets encumbered by RJC's lien with the goal of credit bidding the defaulted debt instrument and acquiring fee simple title to myriad residential units.[1] This would give BHPI (directly or through RJC) ownership of numerous rental properties, allow BHPI to work toward revitalizing a blighted neighborhood, and benefit both the community and the Debtors. Unfortunately, however, internal quarrels between and amongst the various members of BHPI, and their respective principals, soon consumed nearly the whole of BHPI's attention and resources.

In 2017, Insight Investment LLC, Dongyun Mao, and Ting Tang filed suit against BHPI for, *inter alia*, securities fraud. With Insight Investment LLC being one of BHPI's three members, this litigation would prove functionally and economically crippling, as it sidelined BHPI from pursuing its business objectives and appeared to drain appreciable capital in the form of attorneys' fees. While the plaintiffs in this action demanded as much as $10 million in closing arguments, a jury ultimately awarded a scant $133,333.33, which was soon paid by another member of BHPI that had been a co-defendant in the action. But despite the satisfaction of the judgment, the damage had seemingly been done: litigation consumed BHPI, a multi-week jury trial became an all-encompassing affair, and legal fees undertook a predicably cruel impact on the business.

If there was to be a post-litigation respite, it was short lived. Scantly half a year after the conclusion of the first major litigation, ZTY Investment LLC ("ZTY") and Haiyi "Nina" Huang ("Ms. Huang") brought their own suit against BHPI, naming as co-defendants the managers of BHPI, another member of BHPI, and two entities ZTY and Ms. Huang maintain to be related. BHPI was, once again, forced to engage counsel and redirect its focus toward a courtroom.

ZTY and Ms. Huang ultimately dismissed their case without prejudice, but once again that proved only a brief recess from the world of litigation. One day after dismissing the case, the litigation was re-filed. And so, in the throes of the COVID-19 pandemic that was already making strategic foreclosure a difficult business unto itself, BHPI was forced back into the legal system.

Near the close of discovery in the second lawsuit brought by ZTY and Ms. Huang, BHPI elected to file a petition for bankruptcy relief, and thereby commenced this case. The goal of BHPI is, and always has been, quite clear: resolve the litigious infighting between and amongst its members, and use whatever resources it can muster to proceed with monetizing the remaining encumbered parcels of real estate that have not either fallen victim to tax deed sales or shown themselves to be prohibitive on account of the presence of lead paint.

During the course of this bankruptcy proceeding, however, BHPI has discovered itself to have been not merely the victim of infighting but, too, the victim of an unscrupulous attorney whose actions doomed BHPI long before any membership disputes were ever extant. Discovery

---

[1] Due to various oddities fairly unique to the Baltimore, Maryland real estate market, "fee simple title" is actually a technical misnomer in many instances, and the "owner" of properties is often the leasehold interest holder who takes such properties subject to a ground rent obligation but with a redeemable ownership interest. The ground lease holder is colloquially understood to "own" the subject property, and generally enjoys nearly all rights attendant to property ownership but, in a purely legal context, is really a mere ground tenant.

undertaken as BHPI has endeavored to quantify its assets and identify the disposition of various monies has, in turn, revealed M. Arnold Politzer, Esq. ("Mr. Politzer") – BHPI's former counsel, and the substitute trustee under the RJC deed of trust – to have misappropriated substantial monies belonging to BHPI, to have manipulated his invoices to BHPI, and to have failed to give either BHPI or RJC notice of certain foreclosure proceedings impacting assets encumbered by the lien of RJC.

**b. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit 1.

**c. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtors' business. The Debtors are providing projected financial information as Exhibit 2. The projections are made on a cash basis, and accordingly do not account for certain obligations (i.e., legal fees) in an accrual format.

The Debtors' financial projections show that the Debtors will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code), remaining after the payment of administrative expenses addressed in § 3.02 below, for the period in § 1191(c)(2), of $174,180.94.[2] [3] [4]

The final plan payment is expected to be paid on February 28, 2024.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

[2] As discussed *infra*, the Debtors' plan is reliant upon (i) settlement of litigation against an attorney; and (ii) profiting off of the sale of properties by a bankruptcy trustee. It accordingly bears notation that while these projections are made in good faith but are extraordinarily speculative in nature.

[3] The projections include projected net receipts from the sale of three properties encumbered by the lien of RJC. These projections are discounted to account for (i) the carve out likely to be paid to a chapter 7 trustee; and (ii) the potential discounted valuation of real property sold through a bankruptcy proceeding. These projections ought not be construed as a valuation of the subject properties, nor as a binding position as to what carve out the Debtors would find agreeable.

[4] The projections include projected legal fees to be incurred in connection with (i) the litigation against M. Arnold Politzer and his law firm; and (ii) certain involuntary bankruptcy proceedings. These projections are a good faith estimate and not a binding cap or flat fee.

**Article 1. Summary**

This Plan of Reorganization (the "Plan") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of Baltimore Harlem Park Investment, LLC from the general cash flow of the Debtors.

The Plan provides for:

0 classes of priority claims;

0 classes of secured claims;

1 class of non-priority unsecured claims; and

1 class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 65 cents on the dollar.[5] The Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2. Classification of Claims and Interests**

| | | |
|---|---|---|
| **Section 2.01** | **Class 1** | All non-priority unsecured claims allowed under § 502 of the Bankruptcy Code. |
| **Section 2.02** | **Class 2** | Equity interests of the Debtors. |

**Article 3. Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

| | | |
|---|---|---|
| **Section 3.01** | **Unclassified Claims** | Under § 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes. |
| **Section 3.02** | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other |

[5] This distribution calculation assumes the claims of Ms. Huang and ZTY to be overlapping in nature. Consistent with this understanding, the claims of Ms. Huang and ZTY will only be allowed in the sum of $250,000.00; Ms. Huang and ZTY may apportion those monies as they see fit.

| | | |
|---|---|---|
| | | terms as may be agreed upon by the holder of the claim and the Debtors. |
| **Section 3.03** | **Priority Tax Claims** | Each holder of a priority tax claim will be paid the total value of said claim, as of the effective date of the plan, over a period of three months commencing on the first day of the seventh month following the effective date of this Plan. |
| **Section 3.04** | **Statutory Fees** | There are no statutory fees due in this case. |
| **Section 3.05** | **Prospective Quarterly Fees** | There are no prospective quarterly fees that will be due in this case. |

**Article 4. Treatment of Claims and Interests Under the Plan**

| **Class** | **Impairment** | **Treatment** |
|---|---|---|
| Class 1 – Allowed non-priority unsecured claims. | Impaired | The Debtors will make all plan payments, after allowance for the payment of allowed administrative expenses, to the holders of allowed non-priority general unsecured claims, in the sum total of all funds available for such payments. It is projected this will amount to a 65% distribution in the sum of $174,180.94. The claims of Ms. Huang and ZTY shall be regarded as claims based on loans made by Ms. Huang and ZTY, for all purposes. |
| Class 2 – Equity security holders of the Debtors | Impaired (insider) | Insight Investment LLC shall retain a 0.025% interest in BHPI; ZTY shall retain its interest in BHPI of 22.125%; and Pinehills Properties LLC shall retain its interest in BHPI of 77.85%. BHPI shall remain the sole equity holder of RJC. |

**Article 5. Allowance and Disallowance of Claims**

**Section 5.01 Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and either of the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02 Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**Section 5.03 Settlement of Disputed Claims.** The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

**Article 6. Provisions for Executory Contracts and Unexpired Leases**

The Debtors assume the following executory contracts and unexpired leases as of the effective date of this Plan: none.

**Article 7. Means for Implementation of the Plan**

**Section 7.01 Proceedings Concerning M. Arnold Politzer, Esq.**

BHPI and RJC commenced an adversary proceeding against Mr. Politzer and his law firm. The claims brought therein, while delineated as various causes of action, can be readily grouped into four categories: (i) claims to recover misappropriated funds; (ii) claims to recover monies wrongfully billed; (iii) claims for damages stemming from Mr. Politzer's failure to give notice of certain foreclosure proceedings; and (iv) claims for Mr. Politzer's malpractice.

A settlement agreement has been negotiated – and approved by this Honorable Court – whereby Mr. Politzer, his law firm, and/or their insurer will pay $90,000.00 to the BHPI bankruptcy estate.

**Section 7.02 Involuntary Bankruptcy Proceedings**

RJC has caused to be filed involuntary bankruptcy petitions against HP West Baltimore LLC and HP Bennett LLC, pursuant to the allowances of Section 303 of the Bankruptcy Code. These cases are pending in the United States Bankruptcy Court for the District of Columbia, and are assigned case numbers 22-109 and 22-106, respectively.

HP West Baltimore LLC is the title holder of record[6] for, *inter alia*, the real property located at 1510 W. Baltimore Street, Baltimore, Maryland 21223 (the "1510 Property"). HP Bennett LLC is the title holder of record[7] for, *inter alia*, the real property located at 906 Bennett Place, Baltimore, Maryland 21223 (the "906 Property") and the real property located at 903 Bennett Place, Baltimore, Maryland 21223 (the "903 Property"). Good faith estimates as to the saleable value of these assets are set forth in the projections attached hereto; these estimates are inherently speculative in nature but are provided in a sum hoped to be *net* of trustee and other administration fees.

As part of involuntary bankruptcy proceedings, RJC will ask the trustee(s) to sell these assets for the benefit of RJC, and will negotiate an appropriate carve out in favor of the trustee(s)

---

[6] *See, supra,* n. 1.

[7] *See, supra,* n. 1.

for the provision of such services. If the trustee(s) is/are unable to find suitable buyers for these assets, RJC will offer to acquire these properties in exchange for a nominal sum of money, with such sale being subject to the lien of RJC. Otherwise, any sale will be free and clear of all liens, saving and excepting for tax liens (if any).

The Debtors are electing to pursue the involuntary bankruptcy route, in lieu of a traditional foreclosure route, out of concern pursuing a foreclosure in the Baltimore City Circuit Court would prove too lengthy of a process, would invite too much uncertainty, and would potentially be appreciably more costly in terms of money needed upfront (as opposed to a carve out that can be paid from the sales proceeds of the two properties).

**Section 7.03 [Intentionally Omitted]**

**Section 7.04 Anticipated Payment to General Unsecured Creditors and Equity**

The Debtors anticipate the litigation discussed in Section 7.01 hereof and the involuntary bankruptcies discussed in Section 7.02 hereof will, cumulatively produce funds sufficient to make all payments called for in Article 4 hereof. The Debtors reasonably believe such payments can be made within 11 months of the date on which this Plan is confirmed.

If all such payments set forth in Article 4 are made in full, following the retirement of post-confirmation administrative expenses, excess monies (if any, and none are projected hereunder) shall be applied to the payment of equity.

**Section 7.05 Liquidation**

While this is not expressly a liquidating plan of reorganization, the Plan does call for the exhaustion and/or sale of all assets of the Debtors reasonably believed to be valuable in nature. It is reasonably anticipated that, following the making of a final payment to equity holders in accord with the projections attached hereto, the Debtors will file articles of cancellation with the Maryland State Department of Assessments and Taxation.

**Article 8. General Provisions**

**Section 8.01 Administrative Fees.** Any applications for payment of administrative fees or expenses must be filed not later than the twentieth (20th) business day following the Effective Date or such claims shall be disallowed hereunder, *except* administrative expenses incurred after the Effective Date may be petitioned for within a reasonable period of time.

**Section 8.02 Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.

**Section 8.03 Effective Date.** The effective date of this Plan is the first business day following the date this is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Section 8.04 Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.05 Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

**Section 8.06 Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Section 8.07 Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws and rules of the District of Columbia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.08 Corporate Governance.** For the duration of this Plan, the Debtors shall be prohibited from issuing nonvoting equity securities and the equity holders of the Debtors shall be prohibited from selling, transferring, diluting, alienating, or otherwise altering such interest without leave of this Honorable Court.

**Section 8.09 Retention of Jurisdiction.** The United States Bankruptcy Court for the District of Columbia shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**Section 8.10 Disbursing Agent.** The Subchapter V trustee, Lawrence Katz, Esq., shall serve as disbursing agent under this Plan and shall be paid his usual and customary hourly rate of $620.00 for the performance of such services.

**Section 8.11 Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including Section 1112 thereof) as well as the right to seek recourse for breach of contract. A default hereunder shall be deemed to occur if the Debtor fails to make any payment provided for by this Plan, in the full amount so provided, and does not cure such failure within thirty (30) days of being given written notice of said failure by a party in interest.

## Article 9. Discharge

**Section 9.01 Discharge Pursuant to § 1191(a).** If the Debtors' Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the effective date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtors will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6) of the Bankruptcy Code.

**Section 9.02 Discharge Pursuant to § 1191(b).** If the Debtors' Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code.

**Section 9.03 Debt Not Discharged.** The Debtors will not be discharged from any debt: (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192 of the Bankruptcy Code; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Section 9.04 [Intentionally Omitted]**

**Section 9.05 Scope of Discharge.** The discharge will be consistent with that provided for by Title 11 of the United States Code.

**Section 9.06 Limitations on Discharge.** This discharge will not be effective against any party not receiving notice – actual or constructive – of this bankruptcy.

## Article 10. Limited Non-Debtor Discharge; Retention of Certain Assets; Stay

**Section 10.01 [Intentionally Omitted]**

**Section 10.02** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, BHPI's interest in RJC shall remain an asset of BHPI's bankruptcy estate – and shall, accordingly, remain subject to the protections of Section 362(c)(1) of the Bankruptcy Code – for a period of two years from the date of confirmation of this Plan, at which time said interest shall revest in BHPI.

**Section 10.03** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, the Debtors' litigation rights against M. Arnold Politzer and his law firm, together with the Debtors' right to bring a claim with the Maryland Client Protection Fund, shall remain assets of the Debtors' bankruptcy estates for a period of four years and eleven months from the date of confirmation of this Plan, at which time said interest shall revest in the Debtors.

**Section 10.04** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, RJC's rights under the aforementioned deed of trust shall remain an asset of RJC's bankruptcy estate for a period of two years from the date of confirmation of this Plan, at which time said interest shall revest in RJC.

**Section 10.05** [Intentionally Omitted]

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Baltimore Harlem Park Investment, LLC and Ruby Jude City LLC*